EXHIBIT 1

# Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

## I. Introduction

Defendant's "cherry-picked" deposition testimony from four declarants in order to mislead the Court into believing these declarants impeached themselves. A complete and objective review of the declarants' deposition testimony reveals they did not impeach themselves, but confirmed their original testimony.

### A. Deposition of Eric Noriega

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Rounding Time Violation* | "I would usually and regularly arrive minutes before my scheduled shift and accurately clock in to receive briefing from nurses completing the prior shift. I would also regularly leave minutes after my scheduled shift to debrief the nurses relieving me."<br><br>*Noriega Dec. ¶4.* | Q  So would you agree that this in inaccurate to the extent that it implies that you had to either arrive early or stay late —<br><br>A  Yes.<br><br>Q  — to debrief the nurses?<br><br>A  It is inaccurate, yes.<br><br>*Noriega Dep. 89:17-22.* | Q  So what's your understanding of how … [rounding] worked?<br><br>A  From what I understand is that -- and this is based off of the time log sheet that you had mentioned earlier. If we would clock in at, say, 6:53, there's an area in the paper that clocks when we actually swipe the badge —<br><br>Q  Uh-huh.<br><br>A  — and then it was adjusted to 7:00.<br><br>Q  Okay. |

## Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Rounding Time Violation* | "I was not aware that Corona was rounding my actual time punches to avoid overtime." <br><br> *Noriega Dec.* ¶4. | Q  So what's the first thing that you have noted that's inaccurate or untrue in the declaration? <br><br> A  The rounding time. <br><br> Q  Okay. And what about that is inaccurate? | A  And so that I understand going from 6:53 to 7:00, but then at the end of our shift, if we were to, say, clock out 4 minutes after 7:30, it would round backwards. It wouldn't round forward like it would normally do if you clocked in at like 6:53, it would round up to 7:00. So the progression of round-up is going forward, but when you clock out after 7:30 but it's not before the 7:45, it rounds backwards. So I think that's what I understand. <br><br> *Noriega Dep. 33:11- 34:3, Ex. 5 to Beligan Decl.* <br><br> Q  And would you swipe in when you arrived at work? <br><br> A  If I had arrived early before 6 -- I'm sorry, 18:53, no. We would get written up for clocking in early. |

2

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Short Shift Violations* | "I do not believe I was paid overtime for all hours I was 'flexed' off after 8 hours of work, but before completing my 12-hour shift."<br><br>*Noriega Dec. ¶7.* | *Noriega Dep. 87:21-88:1.*<br><br>A That it is -- just my statement now after looking at the policy, it's misleading basically.<br><br>Q Okay. And then what's the next thing that you notice that is inaccurate?<br><br>A Flexing, the policy that -- basically -- yeah. Just that we do get compensated for it.<br><br>Q Okay. So you would agree now that you are compensated when you --<br><br>A Yeah.<br><br>Q -- are flexed off after eight hours?<br><br>A Uh-huh.<br><br>Q And, in fact, you were compensated after being flexed off | *Noriega Dep. 29:19- 22, Ex. 5 to Beligan Decl.*<br><br>Q And did you understand that you were supposed to receive additional pay when you were flexed off over eight hours in a day when you worked -- when you were flexed off and it was past the eighth hour?<br><br>A I do not, no. I don't think I -- I didn't know that, that after the eighth hour, you would get an additional compensation, no.<br><br>*Noriega Dep. 81:14-20, Ex. 5 to Beligan Decl.* |

3

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Meal Period Waiver* | "I do not believe I signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work." <br><br> *Noriega Dec.* ¶8. | for eight hours? <br><br> A Yes. <br><br> **** <br><br> Q And to the best of your knowledge, you were, in fact, paid when you were flexed off -- <br><br> A Yes. <br><br> Q -- correct? <br><br> A Uh-huh. <br><br> *Noriega Dep.* 90:23-91:9; 91:24-92:9. <br><br> Q What else do you believe is inaccurate in this declaration? <br><br> A The meal waiver. <br><br> Q And what's inaccurate about that? <br><br> A That we had the option to elect to have a secondary meal but to | Q Did you want to stay for 13 hours and take two meal periods? <br><br> **A I just didn't realize what the advantage would be if we did stay for 13 hours because based on how things work on the unit, there's a 30-minute** |

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | stay for 13 hours. That I chose to -- I wasn't forced to basically waive my second meal. It was an option. | overlay -- |
| | | | Q  Uh-huh. |
| | | Q  Okay. So you would agree now that you did have the option to not waive your meal period; correct? | A  -- and usually that's between 7:00 and 7:30. So if I were to stay an additional 30 minutes, I wouldn't be doing much 'cause I would have already given -- |
| | | A  That is correct, yes. | |
| | | Q  And would you agree that you voluntarily chose to waive one of your meal periods? | Q  Right. |
| | | A  Yes. | A  -- the care. |
| | | Q  So to the extent this says that you did not believe you signed the meal period waiver voluntarily, would you agree that that's inaccurate? | *Noriega Dep. 65:20- 66:5, Ex. 5 to Beligan Decl.* |
| | | A  It is inaccurate. | |
| | | *Noriega Dep. 92:10-93:2.* | |
| *Rest Break* | "I do not believe I was | Q  Okay. Is there anything else in | Q  And if you scroll down to the |

5

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Violations* | authorized or permitted to take 10-minute, uninterrupted rest breaks because I was never fully relieved of all my duties. I had to constantly be on my toes, ready to respond to patient calls or emergencies."<br><br>*Noriega Dec. ¶10.* | this declaration that you believe is inaccurate?<br><br>A Yeah, the lack of break or relief nurse.<br><br>Q And what's inaccurate about that?<br><br>A That we are entitled to 10 -- three 10-minutes of uninterrupted rest meals, that it is voluntary to waive it or that we need to notify the charge nurse if we are going to be taking our rest [] breaks.<br><br>****<br><br>Q So you would say that this is inaccurate to the extent that it says that you were not entitled to take such breaks?<br><br>A It is inaccurate.<br>*Noriega Dep. 93:3-10; 93:16-19.* | fourth sentence, do you see where it says, "Employees working a 12-hour shift are entitled to three 10 minute breaks. These breaks are duty free"?<br><br>A Uh-huh.<br><br>Q And is that consistent with your understanding of Corona's policy?<br><br>A No. It states here, but **it's not enforced, that we take three 10-minute breaks, which then, I guess, falls on us to log it in the missed meal.**<br><br>*Noriega Dep. 68:17 – 69:2, Ex. 5 to Beligan Decl.*<br><br>Q Okay. And is that simply because you didn't read it closely enough? |

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | A  That, and it's not the — it's basically not how things are done on the unit. I know that we were supposed to have 10-minute breaks, but it just never happened.<br><br>*Noriega Dep.* 71:12-17, Ex. 5 to *Beligan Decl.*<br><br>Q  Is it simply that you didn't ask your supervisors if you could take a rest break?<br><br>A  Actually, usually on those days when the supervisor would be super busy, we would just ask the other nurse that was around us that, "Hey, you know, we're going to take a break really quick. Can you just kind of watch for our patients?"<br><br>Q  And was that okay for you to do? |

7

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | A Technically, no –

Q Okay.

A -- because that puts the nurse out of ratio for 10 minutes. They would be taking care of six patients as opposed to three.

Q So how would you normally take a rest break?

A Normally we would just let either the relief or the charge know. Most days that's how we would do it. We would just say -- tell our charge nurse like, "Hey, we're gonna go -- go, downstairs and grab, you know, a bite to eat. Be back in like 10 minutes." Usually they'll be able to cover the 10 minutes that we're off the floor, but there are some instances sometimes where it's just a busy day and |

8

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | then everybody just decides they all want to take a break all at the same time, and unfortunately, the charge can't do that, so then we kind of just take a break while we're working.<br><br>*Noriega Dep. 74:6 - 75:5, Ex. 5 to Beligan Decl.*<br><br>Q  And did you ever have a charge nurse -- it sounds like maybe you weren't aware that you should fill out the form, but did you ever have a charge nurse tell you that they wouldn't fill out your missed meal or rest period sign-in sheet if you didn't get a rest break?<br><br>A  Actually, I'm not going to lie. The -- the feel on the floor typically is that if you were to fill out a missed meal, it's really frowned upon, and they |

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | don't encourage it, and that if -- if they did -- if you did let them know that, hey, I missed a meal period or, hey, you know, I didn't get my rest break, they would kind of just say, "Well, why didn't you do that?" or "Why didn't you -- why didn't you, you know, take your break or take your meal?" Not take your break because usually there's a relief that calls you out for that, but like for your rest meal -- for your rest periods, "Why didn't you just go take it?" or "Why didn't you let me know?" but honestly, it's just that we are so busy sometimes that even if we wanted to take a 10-minute, it's sometimes not feasible. Q Okay. *Noriega Dep. 77:1-21, Ex. 5 to Beligan Decl.* |

# Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

## B. Deposition of Traci Rancier

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Rounding Time Violation* | "I would usually and regularly arrive minutes before my scheduled shift and accurately clock in to receive briefing from nurses completing the prior shift. I would also regularly leave minutes after my scheduled shift to debrief the nurses relieving me."<br><br>*Rancier Dec.* ¶ 4. | Q And did you ever feel that you were you ever pressured to work before then, before the start of your shift?<br><br>A The nurses that were trying to get me to take over, they wanted to leave. And they said, "No. It's not time." So I would go into the break room or get away. I thought, okay, let's, you know, let me take a breaths. What is my day going to be like if this is how it is already. Let's be fair here.<br><br>Q So were you -- would you say that you were pretty good about you would start at 7:00 o'clock if your shift started at 7:00 o'clock?<br><br>A Yes, I was.<br><br>Q If they were pushing you to do anything before then you felt | Q Okay. But to the extent that this implies that you had to do the debriefing either before your scheduled shift or after your scheduled shift would you agree--<br><br>A That's not how I read this. **But you're right I would do the debriefing if I was clocked in we did the debriefing.** I didn't do it before I was clocked in.<br><br>*Rancier Dep. 66:21- 67:2, Ex. 6 to Beligan Decl.* |

11

# Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| Short Shift Violation | "I was not given any written policies on short shifts or 'short-shift' penalties." Rancier Dec. ¶7. | comfortable saying, "No, I'm not starting until 7:00"? A Yes. I would say that. *Rancier Dep. 27:25-28:17.* Q And the flexing off policy, do you see where it says at the bottom, we're on page three, section 16 or line 16. Do you see where it says, "I was not given any written policies on short shifts or short shift penalties." Do you see where it says that? A Yes. Q Would you agree now that that's inaccurate? A Yes. *Rancier Dep. 68:22-69:5.* | Q And do you remember receiving a policy titled meal periods, rest breaks and short shifts? **A I don't remember receiving it.** Q Do you remember reviewing this policy? **A I don't remember reviewing it.** Q Were the policies available for you to review at Corona? **A You know I don't know.** *Rancier Dep. 35:10-17, Ex. 6 to* |

12

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| Meal Period Waiver | "I do not believe I signed the Meal Period Waiver voluntarily."<br><br>Rancier Dec. ¶8. | Q Okay. I'm going to now mark as Exhibit 8 this is a copy of the declaration that you submitted to plaintiffs in support of this lawsuit which was then submitted to the court. I'm going to give you just a chance to look through this again. And then you can let me know when you're ready.<br><br>A You know I don't know like this here -- I'm not sure where they're getting all this information. Because I do remember this meal period waiver. I signed it voluntarily. So I'm not quite sure how they're determining this information.<br><br>****<br><br>Q And you were never pressured or coerced to waive one of your meal periods; correct? | Beligan Decl.<br><br>Q Do you see where it says, "Employees working 10 to 12 hours in a day are entitled to two unpaid meal periods. But have the option of waiving one of the two meal periods by entering into a meal waiver agreement. This waiver is voluntary and not a condition of employment"?<br><br>A I do remember signing that. Because I thought that was unusual. I'm fairly a new nurse. So some of these -- working 12-hour shifts was a fairly new thing for me.<br><br>Q Okay.<br><br>A So when I saw that I thought, oh, but I want to get out of here. So that's why.<br><br>Q Right. |

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | A No. No.<br><br>Q Would you agree that the section paragraph nine is inaccurate to the extent that it implied that you were coerced or pressured to waive one of your meal periods?<br><br>A Let's see that. Yeah, this is not correct.<br><br>Q Okay.<br><br>A I was never -- it never came into question about that second meal because I never wanted it. I never asked for it. We never discussed it. I knew that I didn't want it. So number nine is –<br><br>Q Paragraph nine?<br><br>A Yeah.<br><br>Q Inaccurate? | A I did sign. I remember signing that because I thought it was odd.<br><br>*Rancier Dep. 36:15- 37:5, Ex. 6 to Beligan Decl.*<br><br>Q I'm going to switch down to the next sentence where it says, "Employees who work 10 or 12 hour shifts will be provided with a meal period by the end of their fifth hour of work but can chose to take a later meal if that is their preference. Employees are required to clock out for meals and to take a full 30-minute meal period. You are not permitted to return to duty earlier unless advised by your supervisor to do otherwise." Are those statements consistent with your understanding of Corona's policy?<br><br>**A I didn't know this. But can** |

14

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Rest Break Violations* | "I did not take rest breaks, or when I tried to take one it was interrupted, because I had to be continuously ready and able to assist and attend to my patients during my entire shift. I do not believe I was authorized or permitted to take 10-minute, uninterrupted rest breaks because I was never fully relieved of all my duties. I had to constantly be on my | A Totally inaccurate.<br><br>Q Okay. Because you voluntarily waived your meal period, you wanted to waive your second meal period?<br><br>A Yes. Yes.<br><br>*Rancier Dep. 63:9-19; 71:1-20.*<br><br>Q If you wanted to take a break you would simply kind of ask one of the other nurses if they were free to cover for you?<br><br>A Uh-huh. **[Defendant's counsel did not get a verbal coherent response to this question]**<br><br>*Rancier Dep. 59:21-24.* | chose to take a later meal if that is their preference. **I didn't know that.** So that -- I don't remember reading that in this other one.<br><br>*Rancier Dep. 42:14-43:2, Ex. 6 to Beligan Decl.*<br><br>Q Did you have breakers who would cover for you or the charge nurse would cover for you? How did that work in your department?<br><br>A So there was -- I guess it depended on who was there, you know. It depended on staffing. Sometimes the charge nurse that would send me to lunch or dinner or whatever. And then they had an extra person, breaker maybe --<br><br>Q Right. |

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | toes, ready to respond to patient calls or emergencies." *Rancier Dec. ¶10.* | | A -- that she would come or he would come. And well -- I'm not sure what they did other than sit there and answer the phone. It's not like -- they -- I didn't feel the breakers were very helpful. Because if I had something that needed to be done during the 30-minute period, like if I had some sort of a blood transfusion that was needed to be switched out -- I remember one case in particular I told her that, you know, "I'm having platelets run. They run really fast. I need you to -- because she's getting so many you need to hangs the next bag while I'm gone." And I don't think she even got up from her chair at all. So when I got back it was -- I was so upset.

Q So did that kind of vary based on the quality of the breaker, whoever was breaking you? |

16

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | A  Yeah. We didn't get breakers very often I will tell you that. I would say yes it would depend on the quality of the breaker.<br><br>*Rancier 29:1-30:4, Ex. 6 to Beligan Decl.* |
| | | | Q  Okay. Did any supervisor ever tell you that you are not allowed to take a meal period? |
| | | | A  Yes. |
| | | | Q  When did that happen? |
| | | | A  You want dates? I don't have anything like that. But I have had supervisors say, "We don't have anyone to break you. You guys need to -- we don't have anyone that can help." |
| | | | Q  In those situations did you understand based on the policies |

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | we just looked at you were to fill out the missed meal period and rest sign-in sheets? |
| | | | A  Yes. |
| | | | Q  Did you do that? |
| | | | A  Sometimes. |
| | | | Q  Why didn't you do that sometimes? |
| | | | A  **Well they didn't want us to sign it.** The supervisor that told us -- whoever the charge nurse was and I can't tell you, I don't know who it was. It happened a couple of times where there was not someone to break us. So they said, "**Well you're not going to be able to take a break. You'll just go back there and eat as fast as you can and then come back.**" But there was no clocking out. |

18

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | Q   In those instances, so that charge nurse specifically told you not to fill out a missed meal and rest period sign-in sheets?<br><br>A   Right.<br><br>*Rancier Dep. 45:14-46:24, Ex. 6 to Beligan Decl.*<br><br>Q   So according to the policy you are entitled to three 10-minute break; correct?<br><br>A   I had no idea.<br><br>Q   Is it just that you never read the policy?<br><br>A   I never -- well for one thing I never had the time to take a break. I was so busy that I was lucky I felt just to take a morning break, just to go to the bathroom. And I considered that my break. |

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | *Rancier Dep. 53:24-54:6, Ex. 6 to Beligan Decl.*<br><br>Q But you see that according to the policy if you were not able to take a break it was your responsibility to inform your supervisor and fill out the form; correct?<br><br>A Correct.<br><br>Q And did you do that?<br><br>A No. I never signed anything. I didn't know. So I've often missed breaks much less forget the third one. I did not even know there was one. But the afternoon break rarely did I get to take that. And a lot of that depended on for the breaks they wouldn't have a breaker or a charge nurse that would cover you, you would cover for each |

20

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | other. |
| | | | *Rancier Dep. 55:7-19, Ex. 6 to Beligan Decl.* |

21

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

**C. Deposition of Jessica Steyers-Lucens**

| Wage and Hour Violation | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Rounding Time Violation* | "I would usually and regularly arrive minutes before my scheduled shift and accurately clock in to receive briefing from nurses completing the prior shift. I would also regularly leave minutes after my scheduled shift to debrief the nurses relieving me."<br><br>*Steyers-Lucens Dec. ¶4.* | Q  Okay. So [the debriefing] started usually at 7:00 a.m. or later?<br><br>A  Yeah.<br><br>Q  And you had until 7:30 that was when the shifts crossed paths, I guess?<br><br>A  Yes.<br><br>*Steyers-Lucens Dep. 26:18-23.* | Q  What is the clock in and clock out policy at Corona Regional Medical Center?<br><br>A  Okay. To the best of my knowledge one clocks in at the start of one's shift, clocks out for **lunch 1 break**, clocks back from the lunch back, clocks out at the end of the shift. One does not need to clock out for rest breaks. **One is not allowed to clock in until seven minutes before the start of the shift. One must clock out before the seventh minute after the end of the shift unless you want overtime or need it.** Also for some reasons the clock computer the way it was set up it tended to count things to the nearest quarter hour. I think that's why the seven minute thing. And a lot of us found that pretty -- I mean if |

22

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violation | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | you took eight minutes because you had to finish something then you had to go do paperwork saying, "No, I was not 15 minutes late getting out." |
| | | | Q Did you understand -- at the time that you were employed did you understand that the clocks were what we call rounded to the nearest quarter hour? |
| | | | A Yes, I did. I thought it was extraordinarily foolish. But I understand that they chose to do that in there wisdom. |
| | | | *Steyers-Lucens Dep. 19:22-20:19, Ex. 7 to Beligan Decl.* |
| | | | Q What would you do if you clocked in early, because technically that would be early; correct? |

23

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violation | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | A Yes.<br><br>Q What would you do if you clocked in at 6:53 until 7:00?<br><br>A Gather my assignment, check the MARs back when they were on paper and easier to get at. And sometimes other things, inquire about for example if I had a patient the day before that had a problem, inquire as to whether or not that problem had finished resolving or not.<br><br>*Steyers-Lucens Dep.* 24:13-23, *Ex. 7 to Beligan Decl.*<br><br>Q And did you understand the same way that if you clocked out at 6:53 you would round up, when you left it would do the same thing if you clocked out at 7:23 it would round up to 7:30? |

24

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violation | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | A   That we understood. Although they every so often used to get upset about us gathering around the clock if we finished report and didn't always get to do that. Because sometimes you were charting up to the last minute. And there were occasions where I said, "Can I have some overtime?" Whoever was in charge said no. **So I went and got off the clock and went back and finished my charting. Because it would be improper to do otherwise.** Q   So not to pick on you I swear I'm not picking on you. But when you said that you never falsified your time records and that you would clock in when you got in and you clocked out when – **A   I don't feel that's a falsification. I feel that's just** |

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violation | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | | me taking the time to make sure that things are proper and documented. *Steyers-Lucens Dep. 30:6-25, Ex. 7 to Beligan Decl.* |

26

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

## D. Deposition of Kimberly Hayde

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Rounding Time Violation* | "I would usually and regularly arrive minutes before my scheduled shift and accurately clock in to receive briefing from nurses completing the prior shift. I would also regularly leave minutes after my scheduled shift to debrief the nurses relieving me."<br><br>*Hayde Dec. ¶4.* | Q  And based on your prior testimony earlier today, it's my understanding that the debriefing of nurses occurred during your regularly scheduled shift; is that correct?<br><br>A  Yes.<br><br>Q  So would you say that this is incorrect to the extent it implies that the debriefing occurred either before your shift was scheduled or after your shift was scheduled?<br><br>A  Yes.<br><br>Q  Okay. So is that an error in your declaration?<br><br>A  Yes, I believe so.<br><br>*Hayde Dep. 74:11-22.* | Q  Okay. And did you ever discuss rounding or the grace period with anyone at Corona?<br><br>A  Not specifically discussed. Just it was kind of an understanding that -- like I said, I don't know if it was for rounding purposes or whatever you want to call it. I just knew that if I was there at 7:03, I was still okay. I wasn't going to get marked late.<br><br>Q  Okay.<br><br>*Hayde Dep. 34:11-18, Ex. 8 to Beligan Decl.*<br><br>Q  And did you ever arrive before your shift was scheduled to start? So, for example, if your shift was scheduled to start at 7:00 in the morning, would you ever arrive at, let's say, like 6:55 |

27

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| Rounding Time Violation | "I was not aware that Corona was rounding my actual time punches to avoid overtime." <br><br> *Hayde Dec. ¶4.* | Q Okay. And do you see where it says, the next sentence, "I was not aware that Corona was rounding my actual time punches to avoid overtime." Do you see that? <br><br> A Yes. | in the morning? <br><br> **A Yes.** <br><br> Q And what would you usually do if you got there a few minutes early? <br><br> A I would punch in. <br><br> Q And what would you do after you punched in? <br><br> **A I'd go to the break room for report.** <br><br> *Hayde Dep. 35:20-36:4, Ex. 8 to Beligan Decl.* <br><br> Q And are you aware of any policy at Corona Regional Medical Center for rounding time you worked for payment purposes? <br><br> A I've heard of that, but I don't know exactly how it works. |

28

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | Q   What makes you believe that Corona was rounding your time punches to avoid overtime? | Q   Okay. Did you ever hear of a grace period? |
| | | A   I don't know that that is correct or incorrect. | A   Something to the effect of so many hour -- so many hours, sorry. So many minutes, you were allowed so many minutes to be there early, and it would still count -- I don't know -- I don't know the terminology how they -- I never -- |
| | | **** | |
| | | Q   So you actually have no knowledge that Corona was rounding your time punches to avoid overtime; is that fair? | Q   Okay. |
| | | A   That's fair. | A   -- but you -- or more importantly, it was if you were so many minutes -- you punched in after so many minutes, you were still considered on time. |
| | | Q   Okay. So to the extent this implies otherwise, would you **agree** that's incorrect? | |
| | | A   Correct. | Q   Okay. |
| | | *Hayde Dep. 74:23-75:7; 75:14-20.* | A   That was always a big concern was that you were to work on time. |

29

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Rounding Time Violation* | "I did not know I was not being fully paid for all the regular and overtime hours I worked." <br><br> *Hayde Dec. ¶4.* | Q And then do you see where in the next sentence it says, "I did not know that I was not being fully paid for all the regular and overtime hours I worked"? Do you see that? <br><br> A Yes. <br><br> Q And do you have any actual reason to believe that you were not paid for all of your regular and overtime hours? | Q So would it count both ways? So, for example, if you punched in a few minutes early, it would round up to your start time, and if you punched in a few minutes late, it would round back so it would still look like you had started on time; is that correct? <br><br> A Yes, I believe so. <br><br> *Hayde Dep. 32:21-33:19, Ex. 8 of Beltgan Decl.* <br><br> Exhibit 40 of Plaintiffs' Compendium of Evidence is an Excel Spreadsheet that analyzes how Defendants' rounding practice impacted Ms. Hayde. Defendants' did not realize Ms. Hayde was part of the 101 randomly selected; thus, her time and payroll records were produced. Accordingly, Plaintiffs were able to analyze how Defendants' rounding impacted Ms. Hayde and |

30

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Short Shift Violations* | "I was usually and regularly 'flexed off' involuntarily due to low patient census. I was not told that I was entitled to overtime on occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was not told about 'short-shift' penalties."<br><br>*Hayde Dec. ¶ 7.* | A. No.<br><br>Q. So would you agree that that's also incorrect?<br><br>A. Yes.<br><br>*Hayde Dep. 75:21–76:8.*<br><br>Q. And do you have any reason to believe that the hospital didn't pay that when you were flexed off --<br><br>A. No.<br><br>Q. -- after eight hours?<br><br>A. I don't.<br><br>Q. So to the best of your knowledge, when you were flexed off after eight hours, you were paid the time and a half in accordance with policy? | ascertained the number of meal-and-rest violations and the amount of premiums she was paid. Defendants' rounding practice negatively impacted Ms. Hayde by 5.52 minutes per shift. That is, Ms. Hayde was losing, on average, 5.52 minutes per shift. See also Beligan Decl. ¶ 12.<br><br>Q. So did you understand that when you were flexed off after eight hours and it was involuntary, that you were to receive time and a half?<br><br>A. I don't -- I don't recall that.<br><br>*Hayde Dep. 69:15-18, Ex. 8 of Beligan Decl.* |

31

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| *Short Shift Violations* | "Therefore, I do not believe I was paid overtime for all the hours I was 'flexed' off after 8 hours of work, but before completing my 12-hour shift." *Hayde Dec. ¶ 7.* | *Hayde Dep. 69:25-70:8.*<br><br>Q And at the very bottom of that section it says, "Therefore, I do not believe I was paid overtime for all the hours I was 'flexed' off after 8 hours of work, but before completing my 12-hour shift." Do you have any reason to believe you were not paid in accordance with the hospital's policy?<br><br>A Yes.<br><br>*Hayde Dep. 79:6-13.*<br><br>A I do not. | Q Ms. Hayde, does this look like the alternative work week sign-in sheet that you were to sign if you were flexed off?<br><br>A I don't have any reason to believe it's not.<br><br>Q Okay.<br><br>*Hayde Dep. 67:24-68:5, Ex. 8 of Beligan Dec..*<br><br>A I don't recall if I did or didn't ever file -- file, sorry -- fill one of these out.<br><br>The Excel spreadsheet detailing the analysis and results for all shifts in which Ms. Hayde was involuntarily "flexed "off is attached to the Compendium of Evidence as Exhibit 40.  The |

32

Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| Meal Period Waiver | "I do not believe I signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work for Corona" <br><br> Hayde Dec. ¶ 8. | Q  And I'm going to mark as Exhibit 9 -- and this document is entitled "Meal Period Waiver, 10 & 12 Hour Shift." <br><br> (Exhibit 9 marked.) <br><br> THE WITNESS: Yes. <br><br> Q  And is that your signature on this form, Ms. Hayde? | analysis of the data reveals the following: <br><br> Ms. Hayde was "flexed" off on 51 shifts and is owed a total of 191.94 hours in short-shift penalties. <br><br> Her Payment Detail Listing report reveals she only got paid .75 of an hour in short-shift penalties for her entire employment. Clearly, she was not paid all short-shift penalties she is owed. <br><br> Q  So you do not believe that you signed the meal period waiver voluntarily? <br><br> A  No. It was a condition of employment. <br><br> Q  And what about it was involuntary? <br><br> A  That it wasn't an option. If you didn't sign – there wasn't |

33

**Rebuttal to Defendants' "Cherry-Picked" Testimony And Summary of Omitted Testimony**

| Wage and Hour Violations | Declaration Testimony | "Cherry-Picked" Testimony | Omitted Deposition Testimony |
|---|---|---|---|
| | | A Yes.<br><br>Q And this is dated October 21, 2009; correct?<br><br>A Yes.<br><br>*Hayde Dep. 54:10-55:2; 82:2-25.* | a choice. If you didn't sign it, you didn't work.<br><br>*Hayde Dep. 80:7-24, Ex. 8 to Beligan Decl.* |

34

EXHIBIT 2

# Summary of Defendants' Witness Testimony That Supports Certification

## I. Introduction

Defendants' submitted 20 declarations in support of their opposition to motion for class certification. One was from the Senior Human Resource Specialist (Michelle Thompson), another from the payroll coordinator (Denise Merriman), and three from department directors (Pamela Huntley, Rachelle Cho, and Douglas Dick). Thus, 5 out of the 20 declarants are from Human Resources, payroll, or management-level employees. These declarants are not part of the class and there testimony is, of course, going to be biased. This summary focuses on the declarants who are actually part of the class.

### 1. Declaration of Aurora Gumamit

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Meal and Rest Break Violations* | "The L&D department does <u>not</u> have a break nurse."<br><br>*Gumamit Decl. ¶9.* | This is evidence of Defendants' policy not to provide "relief" or "break" nurses, which as Plaintiffs' contend precludes RNs from taking uninterrupted rest breaks. |

1

**Summary of Defendants' Witness Testimony That Supports Certification**

## 2. Declaration of Pamela Stanford

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Meal and Rest Break Violations* | "**The L&D department does not have a break nurse.**"<br><br>*Stanford Decl.* ¶3. | This is evidence of Defendants' policy not to provide "relief" or "break" nurses, which as Plaintiffs' contend precludes RNs from taking uninterrupted rest breaks. |
| *No Second Meal Periods* | "I also know that I am able to take my first meal period before the fifth hour and my second meal period before the tenth. However, because I can waive one of my meal periods as long as I am working 12 hours or less, I just need to take a meal period before the tenth hour."<br><br>*Stanford Decl.* ¶5. | This is evidence that RNs took only one meal period during shifts over 10, but less than 12 hours. |
| *Meal Waiver* | "I personally chose to waive one of my two meal periods because I do not to stay longer than I need to."<br><br>*Stanford Decl.* ¶6. | This is evidence that all RNs were being required to sign meal waivers. |

2

Summary of Defendants' Witness Testimony That Supports Certification

## 3. Declaration of Tonette Wunderlich

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| Meal Waiver | "I personally have chosen to waive one of my two meal periods because I am accustomed to taking one meal period per shift, would not know what to do on a second meal period, and also prefer not to stay longer than I need to." <br><br> *Wunderlich Decl. ¶6.* | This is evidence that all RNs were being required to sign meal waivers. |

Summary of Defendants' Witness Testimony That Supports Certification

## 4. Declaration of Anne Pennington

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Rounding Time Violation* | "I know the hospital uses a rounding system so if I clock in within seven minutes of my scheduled start time, I get paid starting with the time I am scheduled. However, if I clock in just after my scheduled start time, maybe I am late because of traffic, I will be paid as if I had clocked in on time." | This confirms all RNs in all departments were affected by Defendants' rounding pay practice. |
| | *Pennington Decl. ¶6.* | |
| *Meal Waiver* | "When I was on a twelve hour shift, I waived one of my meal periods because I wanted to go home sooner." | This is evidence that all RNs were being required to sign meal waivers. |
| | *Pennington Decl. ¶11.* | |

Summary of Defendants' Witness Testimony That Supports Certification

## 5. Declaration of Joanna Cuanico-Sia

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Meal Waiver* | "I personally have chosen to waive one of my two meal periods because I did not want to unnecessarily stay longer for my shift."<br><br>*Cuanico-Sia Decl.* ¶9. | This is evidence that all RNs were being required to sign meal waivers. |

Summary of Defendants' Witness Testimony That Supports Certification

6. **Declaration of Michelle Hook**

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Meal Waiver* | "I personally have chosen to waive one of my two meal periods because I did not want to unnecessarily extend my work day to take two meal periods during my shift." <br><br> *Hook Decl. ¶10.* | This is evidence that all RNs were being required to sign meal waivers. |

6

Summary of Defendants' Witness Testimony That Supports Certification

## 7. Declaration of Laurie Graham

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Overtime* | "I have sometimes had to stay beyond the end time of my shift in order to give my report due to the influx of patients or an emergency that requires the attention of both the night shift charge nurse and me before the report can be taken care of." | This testimony will be used as evidence to show RNs were working when their time was rounded at the end of their shifts. |
| *Meal Waiver* | *Graham Decl. ¶5.*<br>"According to this policy, I understand that I am supposed to get two unpaid, uninterrupted 30-minute meal periods for a 12-hour shift. However, because I have chosen to waive my second meal period for my 12-hour shift, I understand that I just need to take one unpaid, uninterrupted 30-minute meal period during my regular shift before the tenth hour of my shift." | This is evidence that all RNs were being required to sign meal waivers. |
| *Meal Waiver* | *Graham Decl. ¶7.*<br>"I personally have chosen to waive one of my two meal periods because I did not want to have to stay until 8:00 p.m. for my shift." | This is evidence that all RNs were being required to sign meal waivers. |

7

Summary of Defendants' Witness Testimony That Supports Certification

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| | Graham Decl. ¶10. | |

Summary of Defendants' Witness Testimony That Supports Certification

## 8. Declaration of Jennifer Oyler

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Rest Break Violations* | "The OB department does **not** have an "official" break nurse."<br><br>*Oyler Decl. ¶ 7.* | This is evidence that Defendants do not provide "relief" or "break" nurses, which supports Plaintiffs' theory of liability that RNs were not being relieved of all duties to permit them to take rest breaks. |
| *Short-Shift Violations* | "There are occasions when I work less than my usual 12 hour shift.  Usually this occurs when I am involuntarily flexed off."<br><br>*Oyler Decl. ¶ 8.* | This is evidence that Defendants do have a policy of involuntarily "flexing" off RNs.  This is also evidence that supports Plaintiffs' position that when RNs do not complete their AWS shift, it is because they are involuntarily "flexed" off. |

9

Summary of Defendants' Witness Testimony That Supports Certification

### 9. Declaration of Ricardo Leopando

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Rounding Time Violation* | "I understand that I have a 7-minute grace period to clock in/out from my shift start/end time, and that the time is rounded to the nearest quarter hour. For instance, my shift starts at 7:00 a.m. Because my time is rounded to the nearest quarter hour, if I clock in at 6:57 a.m., three minutes before the start of my shift, or clock in, at 7:03 a.m., three minutes after the start of my shift, my time is rounded to 7:00 a.m.," <br><br> *Leopando Decl.* ¶4 | This testimony confirms the existence of Defendants' rounding practice and how it affects all RNs in different departments. |
| *Rest Break Violations* | "I typically do not take all of the rest breaks during my shift." <br><br> *Leopando Decl.* ¶7. | This testimony supports Plaintiffs' theory of liability that RNs are not being provided rest breaks. |

10

**Summary of Defendants' Witness Testimony That Supports Certification**

### 10. Declaration of Florine Harris

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Meal Break Violations* | "There are approximately 8 other RNs on duty with me during my shift, but because we are in the emergency room, due to patient needs, we are not always able to take our meal breaks when we would like and must take them later for safety reasons." *Harris Decl. ¶6.* | This testimony supports Plaintiffs' theory of liability that RNs are not being provided meal breaks. |

11

Summary of Defendants' Witness Testimony That Supports Certification

11.Declaration of Lesley Farah

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Meal Waiver* | "I know that I am entitled to take two 30 minute meals on my 12 hour shift, but I only take one meal period because I signed a meal period waiver so I could leave 30 minutes earlier, which is my preference."<br><br>*Farah Decl. ¶10.* | This testimony confirms Defendants require all, or nearly all, RNs to sign meal waivers. |

12

Summary of Defendants' Witness Testimony That Supports Certification

**12. Declaration of Agnes Borela**

| Wage and Hour Violations | Testimony in Declaration | Evidence of Common Practice/Policy |
|---|---|---|
| *Meal Waiver* | "I personally chose to waive one of my two meal periods because I did not want to stay longer for my shift."<br><br>*Borela Decl. ¶9.* | This is evidence that all RNs were being required to sign meal waivers. |

13

# EXHIBIT 3

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777

6  Attorneys for Plaintiffs and Putative Class

7

8                UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT COURT OF CALIFORNIA

10 MARLYN SALI and DEBORAH          Case No. 14-CV-00985 PSG (JPRx)
   SPRIGGS, on behalf of themselves, all
11 others situated and the general public,   DECLARATION OF LYNETTE
                                             OKADA IN SUPPORT OF
12                Plaintiffs,                PLAINTIFFS' MOTION FOR CLASS
                                             CERTIFICATION
13 v.
                                             Judge:  Hon. Philip S. Gutierrez
14 UNIVERSAL HEALTH SERVICES            Crtrm:  880—Roybal
15 OF RANCHO SPRINGS, INC.;
   UNIVERSAL HEALTH SERVICES
16 OF PALMDALE, INC.; UHS-
   CORONA, INC.; INLAND VALLEY
17 MEDICAL CENTER; RANCHO
   SPRINGS MEDICAL CENTER;
18 PALMDALE REGIONAL MEDICAL
   CENTER; TEMECULA VALLEY
19 HOSPITAL; UHS OF DELAWARE,
   INC.; and DOES 2 to 100, inclusive,
20
21                Defendants.

22

23      I, LYNETTE OKADA, declare:

24      1.      I am an adult, over 18-years old.  I am a prospective class member

25 in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26 *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27 States District Court—Central District Court of California.  I have personal

28 knowledge of the matters stated herein, and if called to testify about these facts, I

DECLARATION OF LYNETTE OKADA ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1    could and would do so in a competent and truthful manner.

2                              Background

3        2.    I am currently employed by Corona Regional Medical Center
4    ("Corona") as a Registered Nurse ("RN") and have worked for Corona since
5    2007.

6        3.    As an employee of Corona, I work an Alternative Workweek
7    Schedule ("AWS").  I am regularly scheduled to work three 12-hour shifts a
8    week.  I clock in and out for each shift and each meal break using my employee
9    badge at a magnetic-strip reader located in my unit of the hospital.  I am paid an
10   hourly wage.

11                         "Rounding Time" Policy

12       4.    I was instructed by Corona that our mission is to deliver high
13   quality service to our patients through regular attendance and promptness.  I
14   would usually and regularly arrive minutes before my scheduled shift and
15   accurately clock in to receive briefing from nurses completing the prior shift.  I
16   would also regularly leave minutes after my scheduled shift to debrief the nurses
17   relieving me.  I was not aware that Corona was rounding my actual time punches
18   to avoid overtime.  I did not know that I was not being fully paid for all the
19   regular and overtime hours I worked.

20

21                          "Flexing" Off Policy

22       5.    Corona has a policy of "flexing" off nurses before completing their
23   AWS shift, or calling nurses before their shift to instruct them not to show up to
24   work, due to low patient census.  I have experienced both situations.  I have been
25   "flexed" off before completing my AWS shift, and I have been called before my
26   scheduled shift and instructed not to show up for that particular shift.

27       6.    On the occasions I was called before my shift began and instructed
28   not to show up to work due to low patient census, I was given two options.  First,

DECLARATION OF LYNETTE OKADA ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1  I was told that if I wanted to get paid for the lost hours because I was "flexed"

2  off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3  compensate myself for the lost hours. Second, if I did not want to cash out my

4  PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5  Convenience Day ("HCD") to maintain my benefits; however, I would receive

6  no pay for that shift.

7        7.    On the occasions I reported to work and then told to go home before

8  completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9  due to low patient census. I was not told that I was entitled to overtime on

10  occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was

11  not told about "short-shift" penalties. The employee handbook provided to me

12  does not discuss short shifts or what I am entitled to when I am not provided a

13  full AWS shift. I was not told during my new hire process or new hire

14  orientation about short shifts and my entitlement to overtime if I am "flexed" off

15  after 8 hours of work, but before completing my AWS shift. I was not given any

16  written policies on short shifts or "short-shift" penalties. Corona did not make

17  me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not

18  believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19  work, but before completing my 12-hour shift.

20

21                         **"Meal Waiver" Policy**

22        8.    I had to participate in a new hire process prior to working at

23  Corona. During the new hire process, I was presented with a packet of

24  paperwork to sign, including a Meal Period Waiver. I was told that I had to fill

25  out and sign all of the documents as a condition of employment. If I did not fill

26  out and sign all of the documents, including the Meal Period Waiver, my hiring

27  process would be labeled "incomplete" and I could not work. I do not believe I

28  signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

**DECLARATION OF LYNETTE OKADA ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

for Corona.

9.     In addition, Corona characterized second meal breaks in a negative and false light to deter me from wanting to take a second meal break. I was told that for me to be entitled to a second meal I would have to work 13 hours. I did not know that if I had not signed the Meal Period Waiver, I would be actually working only 12 hours with two 30-minute meal breaks. To put further pressure on me, I was told that all the nurses have signed the Meal Period Waiver and that I should sign it as well. I did not take a second meal during my employment with Corona.

### Lack of "Break" or "Relief" Nurses

10.     I did not take rest breaks, or when I tried to take one it was interrupted, because I had to be continuously ready and able to assist and attend to my patients during my entire shift. My other colleagues in my unit are also assigned patients, and if they are too busy taking care of their patients or handling an emergency, I could not take a rest break or had to cut my break short to attend to my patients or emergencies. Corona does not have enough "Break" or "Relief" nurses to relieve me so I can take a 10-minute, uninterrupted break. This problem is compounded when Corona "flexes" off nurses in my unit due to low patient census. Corona would schedule "Break" or "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief" nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure nurses in each unit are provided with 10-minute, uninterrupted rest breaks. Therefore, I do not believe I was authorized or permitted to take 10-minute, uninterrupted rest breaks because I was never fully relieved of all of my duties. I had to constantly be on my toes, ready to respond to patient calls or emergencies.

### Inaccurate Employer Name

**DECLARATION OF LYNETTE OKADA ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1   ed patients, and if they are too busy taking care of their patients or

2   ng an emergency, I could not take a rest break or had to cut my break

3   to attend to my patients or emergencies.  Corona does not have enough

4   k" or "Relief" nurses to relieve me so I can take a 10-minute,

5   rrupted break.  This problem is compounded when Corona "flexes" off

6   in my unit due to low patient census.  Corona would schedule "Break" or

7   f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8   Corona does not hire specific "Break" or "Relief" nurses to ensure

9   in each unit are provided with 10-minute, uninterrupted rest breaks.

10  fore, I do not believe I was authorized or permitted to take 10-minute,

11  rrupted rest breaks because I was never fully relieved of all of my duties.

12  to constantly be on my toes, ready to respond to patient calls or

13  encies.

14

15              Inaccurate Employer Name

16  11.    I did not know I am employed by UHS-Corona, Inc.  My paystubs

17  te that my employer is Corona Regional Medical Center.

18  I declare under the penalty of perjury under the laws of the United States of

19  a that the foregoing is true and correct.  Executed on February 6th, 2015, in

20  Hills, California.

21              NAME

22

23

24

25

26

27

28

# EXHIBIT 4

1    BRIAN D. CHASE, Esq. (SBN 164109)
       bchase@bisnarchase.com
2    JERUSALEM F. BELIGAN, Esq. (SBN 211258)
       jbeligan@bisnarchase.com
3    BISNAR|CHASE LLP
       1301 Dove Street, Suite 120
4    Newport Beach, CA 92660
       Telephone: (949) 752-2999
5    Facsimile: (949) 752-2777

6    Attorneys for Plaintiffs and Putative Class

7

8                UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT COURT OF CALIFORNIA

10    MARLYN SALI and DEBORAH      Case No. 14-CV-00985 PSG (JPRx)
      SPRIGGS, on behalf of themselves, all
11   others situated and the general public,    DECLARATION OF CLAUDIA
                           AVILA IN SUPPORT OF
12            Plaintiffs,        PLAINTIFFS' MOTION FOR CLASS
                           CERTIFICATION
13   v.

14                              Judge:   Hon. Philip S. Gutierrez
   UNIVERSAL HEALTH SERVICES    Crtrm:   880—Roybal
15   OF RANCHO SPRINGS, INC.;
   UNIVERSAL HEALTH SERVICES
16   OF PALMDALE, INC.; UHS-
   CORONA, INC.; INLAND VALLEY
17   MEDICAL CENTER; RANCHO
   SPRINGS MEDICAL CENTER;
18   PALMDALE REGIONAL MEDICAL
   CENTER; TEMECULA VALLEY
19   HOSPITAL; UHS OF DELAWARE,
   INC.; and DOES 2 to 100, inclusive,
20
21            Defendants.

22

23      I, CLAUDIA AVILA, declare:

24         1.    I am an adult, over 18-years old. I am a prospective class member

25   in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26   *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27   States District Court—Central District Court of California. I have personal

28   knowledge of the matters stated herein, and if called to testify about these facts, I

DECLARATION OF CLAUDIA AVILA ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1    could and would do so in a competent and truthful manner.

2                                  Background

3         2.    I am currently employed by Corona Regional Medical Center
4    ("Corona") as a Registered Nurse ("RN") and have worked for Corona since
5    October 2004.

6         3.    As an employee of Corona, I work an Alternative Workweek
7    Schedule ("AWS"). I am regularly scheduled to work three 12-hour shifts a
8    week. I clock in and out for each shift and each meal break using my employee
9    badge at a magnetic-strip reader located in my unit of the hospital. I am paid an
10   hourly wage.

11                              "Rounding Time" Policy

12        4.    I was instructed by Corona that our mission is to deliver high
13   quality service to our patients through regular attendance and promptness. I
14   would usually and regularly arrive minutes before my scheduled shift and
15   accurately clock in to receive briefing from nurses completing the prior shift. I
16   would also regularly leave minutes after my scheduled shift to debrief the nurses
17   relieving me. I was not aware that Corona was rounding my actual time punches
18   to avoid overtime. I did not know that I was not being fully paid for all the
19   regular and overtime hours I worked.
20

21                                "Flexing" Off Policy

22        5.    Corona has a policy of "flexing" off nurses before completing their
23   AWS shift, or calling nurses before their shift to instruct them not to show up to
24   work, due to low patient census. I have experienced both situations. I have been
25   asked to "flexed" off before completing my AWS shift, and I have been called
26   before my scheduled shift and asked if I wanted "flex" off for that particular
27   shift.

28        6.    On the occasions I was called before my shift began and asked if I

DECLARATION OF CLAUDIA AVILA ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1 wanted to "flex" off work due to low patient census, I was given two options.

2 First, I was told that if I wanted to get paid for the lost hours because I was

3 "flexed" off, I could cash out my earned Paid Time Off ("PTO") and use my own

4 PTO to compensate myself for the lost hours. Second, if I did not want to cash

5 out my PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

6 Convenience Day ("HCD") to maintain my benefits; however, I would receive

7 no pay for that shift.

8       7.      Before completing my AWS shift, I was occasionally asked to

9 "flex" off due to low patient census. I was not told that I was entitled to

10 overtime on occasions I worked over 8 hours but less than my scheduled 12-hour

11 shift. I was not told about "short-shift" penalties. The employee handbook

12 provided to me does not discuss short shifts or what I am entitled to when I am

13 not provided a full AWS shift. I was not told during my new hire process or new

14 hire orientation about short shifts and my entitlement to overtime if I am

15 "flexed" off after 8 hours of work, but before completing my AWS shift. I was

16 not given any written policies on short shifts or "short-shift" penalties. Corona

17 did not make me fully aware of my entitlement to "short-shift" penalties.

18 Therefore, I do not believe I was paid overtime for all the hours I was "flexed"

19 off after 8 hours of work, but before completing my 12-hour shift.

20

21                          "Meal Waiver" Policy

22       8.      I had to participate in a new hire process prior to working at

23 Corona. During the new hire process, I was presented with a packet of

24 paperwork to sign, including a Meal Period Waiver. I was told that I had to fill

25 out and sign all of the documents as a condition of employment. If I did not fill

26 out and sign all of the documents, including the Meal Period Waiver, my hiring

27 process would be labeled "incomplete" and I could not work. I do not believe I

28 signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

DECLARATION OF CLAUDIA AVILA ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1   for Corona.

2       9.      In addition, Corona characterized second meal breaks in a negative

3   and false light to deter me from wanting to take a second meal break. I was told

4   that for me to be entitled to a second meal I would have to work 13 hours. I did

5   not know that if I had not signed the Meal Period Waiver, I would be actually

6   working only 12 hours with two 30-minute meal breaks. To put further pressure

7   on me, I was told that all the nurses have signed the Meal Period Waiver and

8   that I should sign it as well. I did not take a second meal during my

9   employment with Corona.

10                      Lack of "Break" or "Relief" Nurses

11      10.     I did not take rest breaks, or when I tried to take one it was

12  interrupted, because I had to be continuously ready and able to assist and attend

13  to my patients during my entire shift. My other colleagues in my unit are also

14  assigned patients, and if they are too busy taking care of their patients or

15  handling an emergency, I could not take a rest break or had to cut my break

16  short to attend to my patients or emergencies. Corona does not have enough

17  "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

18  uninterrupted break. This problem is compounded when Corona "flexes" off

19  nurses in my unit due to low patient census. Corona would schedule "Break" or

20  "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

21  nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure

22  nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

23  Therefore, I do not believe I was authorized or permitted to take 10-minute,

24  uninterrupted rest breaks because I was never fully relieved of all of my duties.

25  I had to constantly be on my toes, ready to respond to patient calls or

26  emergencies.

27

28                          Inaccurate Employer Name

                                    Page 4
        DECLARATION OF CLAUDIA AVILA ISO PLAINTIFFS' MOTION FOR CLASS
                                 CERTIFICATION

1  ed patients, and if they are too busy taking care of their patients or

2  ng an emergency, I could not take a rest break or had to cut my break

3  to attend to my patients or emergencies. Corona does not have enough

4  k" or "Relief" nurses to relieve me so I can take a 10-minute,

5  rrupted break. This problem is compounded when Corona "flexes" off

6  in my unit due to low patient census. Corona would schedule "Break" or

7  f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8  Corona does not hire specific "Break" or "Relief" nurses to ensure

9  in each unit are provided with 10-minute, uninterrupted rest breaks.

10 fore, I do not believe I was authorized or permitted to take 10-minute,

11 rrupted rest breaks because I was never fully relieved of all of my duties.

12  to constantly be on my toes, ready to respond to patient calls or

13 encies.

14

15             Inaccurate Employer Name

16 11.   I did not know I am employed by UHS-Corona, Inc. My paystubs

17 te that my employer is Corona Regional Medical Center.

18 I declare under the penalty of perjury under the laws of the United States of

19 a that the foregoing is true and correct. Executed on February 10th, 2015, in

20 , California.

*[signature]*

NAME

21

22

23

24

25

26

27

28

EXHIBIT 5

Case 5:14-cv-00985-PSG-JPR Document 120-2 Filed 05/21/15 Page 63 of 157 Page ID
#:6038
Case 5:14-cv-00985-PSG-JPR Document 77-2 Filed 02/16/15 Page 10 of 134 Page ID
#:2095

1    BRIAN D. CHASE, Esq. (SBN 164109)
     bchase@bisnarchase.com
2    JERUSALEM F. BELIGAN, Esq. (SBN 211258)
     jbeligan@bisnarchase.com
3    BISNAR|CHASE LLP
     1301 Dove Street, Suite 120
4    Newport Beach, CA 92660
     Telephone: (949) 752-2999
5    Facsimile: (949) 752-2777

6    Attorneys for Plaintiffs and Putative Class

7

8            UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| 10   MARLYN SALI and DEBORAH SPRIGGS, on behalf of themselves, all others situated and the general public, | Case No. 14-CV-00985 PSG (JPRx) |
| 11 | **DECLARATION OF MATTHEW TRAN IN SUPPORT OF** |
| 12         Plaintiffs, | **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| 13   v. | |
| 14   UNIVERSAL HEALTH SERVICES | Judge: Hon. Philip S. Gutierrez |
| 15   OF RANCHO SPRINGS, INC.; | Crtrm: 880—Roybal |
| 16   UNIVERSAL HEALTH SERVICES OF PALMDALE, INC.; UHS-CORONA, INC.; INLAND VALLEY | |
| 17   MEDICAL CENTER; RANCHO SPRINGS MEDICAL CENTER; | |
| 18   PALMDALE REGIONAL MEDICAL CENTER; TEMECULA VALLEY | |
| 19   HOSPITAL; UHS OF DELAWARE, INC.; and DOES 2 to 100, inclusive, | |
| 20 | |
| 21        Defendants. | |

22

23      I, MATTHEW TRAN, declare:

24        1.     I am an adult, over 18-years old. I am a prospective class member

25   in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26   *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27   States District Court—Central District Court of California. I have personal

28   knowledge of the matters stated herein, and if called to testify about these facts, I

Case 5:14-cv-00985-PSG-JPR Document 79-2 Filed 02/16/15 Page 17 of 134 Page ID #:2096

1    could and would do so in a competent and truthful manner.

2                              Background

3        2.    I am currently employed by Corona Regional Medical Center

4    ("Corona") as a Registered Nurse ("RN") and have worked for Corona since

5    April 2014.

6        3.    As an employee of Corona, I work an Alternative Workweek

7    Schedule ("AWS").  I am regularly scheduled to work three 12-hour shifts a

8    week. I clock in and out for each shift and each meal break using my employee

9    badge at a magnetic-strip reader located in my unit of the hospital.  I am paid an

10   hourly wage.

11                          "Rounding Time" Policy

12       4.    I was instructed by Corona that our mission is to deliver high

13   quality service to our patients through regular attendance and promptness. I

14   would usually and regularly arrive minutes before my scheduled shift and

15   accurately clock in to receive briefing from nurses completing the prior shift.  I

16   would also regularly leave minutes after my scheduled shift to debrief the nurses

17   relieving me. I was not aware that Corona was rounding my actual time punches

18   to avoid overtime.  I did not know that I was not being fully paid for all the

19   regular and overtime hours I worked.

20                           "Flexing" Off Policy

21       5.    Corona has a policy of "flexing" off nurses before completing their

22   AWS shift, or calling nurses before their shift to instruct them not to show up to

23   work, due to low patient census. I have experienced both situations.  I have been

24   "flexed" off before completing my AWS shift, and I have been called before my

25   scheduled shift and instructed not to show up for that particular shift.

26       6.    On the occasions I was called before my shift began and instructed

27   not to show up to work due to low patient census, I was given two options.  First,

28

DECLARATION OF **MATTHEW TRAN** ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

I was told that if I wanted to get paid for the lost hours because I was "flexed" off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to compensate myself for the lost hours. Second, if I did not want to cash out my PTO or if I had no PTO to use, I could claim the lost shift as a Hospital Convenience Day ("HCD") to maintain my benefits; however, I would receive no pay for that shift.

7.      On the occasions I reported to work and then told to go home before completing my AWS shift, I was usually and regularly "flexed" off involuntarily due to low patient census. I was not told that I was entitled to overtime on occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was not told about "short-shift" penalties. The employee handbook provided to me does not discuss short shifts or what I am entitled to when I am not provided a full AWS shift. I was not told during my new hire process or new hire orientation about short shifts and my entitlement to overtime if I am "flexed" off after 8 hours of work, but before completing my AWS shift. I was not given any written policies on short shifts or "short-shift" penalties. Corona did not make me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not believe I was paid overtime for all the hours I was "flexed" off after 8 hours of work, but before completing my 12-hour shift.

## "Meal Waiver" Policy

8.      I had to participate in a new hire process prior to working at Corona. During the new hire process, I was presented with a packet of paperwork to sign, including a Meal Period Waiver. I was told that I had to fill out and sign all of the documents as a condition of employment. If I did not fill out and sign all of the documents, including the Meal Period Waiver, my hiring process would be labeled "incomplete" and I could not work. I do not believe I signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

DECLARATION OF MATTHEW TRAN ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    for Corona.

2         9.    In addition, Corona characterized second meal breaks in a negative

3    and false light to deter me from wanting to take a second meal break.  I was told

4    that for me to be entitled to a second meal I would have to work 13 hours.  I did

5    not know that if I had not signed the Meal Period Waiver, I would be actually

6    working only 12 hours with two 30-minute meal breaks.  To put further pressure

7    on me, I was told that all the nurses have signed the Meal Period Waiver and

8    that I should sign it as well.  I did not take a second meal during my

9    employment with Corona.

                    **Lack of "Break" or "Relief" Nurses**

10        10.    I did not take rest breaks, or when I tried to take one it was

11   interrupted, because I had to be continuously ready and able to assist and attend

12   to my patients during my entire shift.  My other colleagues in my unit are also

13   assigned patients, and if they are too busy taking care of their patients or

14   handling an emergency, I could not take a rest break or had to cut my break

15   short to attend to my patients or emergencies.  Corona does not have enough

16   "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

17   uninterrupted break.  This problem is compounded when Corona "flexes" off

18   nurses in my unit due to low patient census.  Corona would schedule "Break" or

19   "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

20   nurse.  Corona does not hire specific "Break" or "Relief" nurses to ensure

21   nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

22   Therefore, I do not believe I was authorized or permitted to take 10-minute,

23   uninterrupted rest breaks because I was never fully relieved of all of my duties.

24   I had to constantly be on my toes, ready to respond to patient calls or

25   emergencies.

                        **Inaccurate Employer Name**

                                Page 4

**DECLARATION OF MATTHEW TRAN ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1  ed patients, and if they are too busy taking care of their patients or

2  ng an emergency, I could not take a rest break or had to cut my break

3  to attend to my patients or emergencies.  Corona does not have enough

4  k" or "Relief" nurses to relieve me so I can take a 10-minute,

5  rrupted break.  This problem is compounded when Corona "flexes" off

6  . in my unit due to low patient census.  Corona would schedule "Break" or

7  f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8  Corona does not hire specific "Break" or "Relief" nurses to ensure

9  in each unit are provided with 10-minute, uninterrupted rest breaks.

10  fore, I do not believe I was authorized or permitted to take 10-minute,

11  rrupted rest breaks because I was never fully relieved of all of my duties.

12  to constantly be on my toes, ready to respond to patient calls or

13  encies.

14

15  ## Inaccurate Employer Name

16  11.    I did not know I am employed by UHS-Corona, Inc.  My paystubs

17  te that my employer is Corona Regional Medical Center.

18  I declare under the penalty of perjury under the laws of the United States of

19  a that the foregoing is true and correct.  Executed on February 6th, 201, in

20  California.

21         Matthew han

               NAME

22

23

24

25

26

27

28

# EXHIBIT 6

Case 5:14-cv-00985-PSG-JPR   Document 77   Filed 02/16/15   Page 22 of 134   Page ID
#:202
Case 5:14-cv-00985-PSG-JPR   Document 20-2   Filed 03/21/15   Page 69 of 157   Page ID
#:6944

1   BRIAN D. CHASE, Esq. (SBN 164109)
    bchase@bisnarchase.com
2   JERUSALEM F. BELIGAN, Esq. (SBN 211258)
    jbeligan@bisnarchase.com
3   BISNAR|CHASE LLP
    1301 Dove Street, Suite 120
4   Newport Beach, CA 92660
    Telephone: (949) 752-2999
5   Facsimile: (949) 752-2777

6   Attorneys for Plaintiffs and Putative Class

7

8                    UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT COURT OF CALIFORNIA

10  MARLYN SALI and DEBORAH              Case No. 14-CV-00985 PSG (JPRx)
    SPRIGGS, on behalf of themselves, all
11  others situated and the general public,   DECLARATION OF MARIE
                                          NARISMA IN SUPPORT OF
12              Plaintiffs,                PLAINTIFFS' MOTION FOR CLASS
                                          CERTIFICATION
13  v.
                                          Judge:  Hon. Philip S. Gutierrez
14                                        Crtrm:  880—Roybal
    UNIVERSAL HEALTH SERVICES
15  OF RANCHO SPRINGS, INC.;
    UNIVERSAL HEALTH SERVICES
16  OF PALMDALE, INC.; UHS-
    CORONA, INC.; INLAND VALLEY
17  MEDICAL CENTER; RANCHO
    SPRINGS MEDICAL CENTER;
18  PALMDALE REGIONAL MEDICAL
    CENTER; TEMECULA VALLEY
19  HOSPITAL; UHS OF DELAWARE,
    INC.; and DOES 2 to 100, inclusive,
20
                Defendants.
21

22

23       I, MARIE NARISMA, declare:

24       1.    I am an adult, over 18-years old.  I am a prospective class member

25  in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26  *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27  States District Court—Central District Court of California.  I have personal

28  knowledge of the matters stated herein, and if called to testify about these facts, I

DECLARATION OF MARIE NARISMA ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1   could and would do so in a competent and truthful manner.

<div align="center">Background</div>

2       2.   I am currently employed by Corona Regional Medical Center
("Corona") as a Registered Nurse ("RN") and have worked for Corona since
April 2008.

3       3.   As an employee of Corona, I work an Alternative Workweek
Schedule ("AWS"). I am regularly scheduled to work three 12-hour shifts a
week. I clock in and out for each shift and each meal break using my employee
badge at a magnetic-strip reader located in my unit of the hospital. I am paid an
hourly wage.

<div align="center">"Rounding Time" Policy</div>

4       4.   I was instructed by Corona that our mission is to deliver high
quality service to our patients through regular attendance and promptness. I
would usually and regularly arrive minutes before my scheduled shift and
accurately clock in to receive briefing from nurses completing the prior shift. I
would also regularly leave minutes after my scheduled shift to debrief the nurses
relieving me. I was not aware that Corona was rounding my actual time punches
to avoid overtime. I did not know that I was not being fully paid for all the
regular and overtime hours I worked.

<div align="center">"Flexing" Off Policy</div>

5       5.   Corona has a policy of "flexing" off nurses before completing their
AWS shift, or calling nurses before their shift to instruct them not to show up to
work, due to low patient census. I have experienced both situations. I have been
"flexed" off before completing my AWS shift, and I have been called before my
scheduled shift and instructed not to show up for that particular shift.

6       6.   On the occasions I was called before my shift began and instructed
not to show up to work due to low patient census, I was given two options. First,

1  I was told that if I wanted to get paid for the lost hours because I was "flexed"
2  off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to
3  compensate myself for the lost hours. Second, if I did not want to cash out my
4  PTO or if I had no PTO to use, I could claim the lost shift as a Hospital
5  Convenience Day ("HCD") to maintain my benefits; however, I would receive
6  no pay for that shift.

7          7.      On the occasions I reported to work and then told to go home before
8  completing my AWS shift, I was usually and regularly "flexed" off involuntarily
9  due to low patient census. I was not told that I was entitled to overtime on
10  occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was
11  not told about "short-shift" penalties. The employee handbook provided to me
12  does not discuss short shifts or what I am entitled to when I am not provided a
13  full AWS shift. I was not told during my new hire process or new hire
14  orientation about short shifts and my entitlement to overtime if I am "flexed" off
15  after 8 hours of work, but before completing my AWS shift. I was not given any
16  written policies on short shifts or "short-shift" penalties. Corona did not make
17  me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not
18  believe I was paid overtime for all the hours I was "flexed" off after 8 hours of
19  work, but before completing my 12-hour shift.
20

21                          "Meal Waiver" Policy

22          8.      I had to participate in a new hire process prior to working at
23  Corona. During the new hire process, I was presented with a packet of
24  paperwork to sign, including a Meal Period Waiver. I was told that I had to fill
25  out and sign all of the documents as a condition of employment. If I did not fill
26  out and sign all of the documents, including the Meal Period Waiver, my hiring
27  process would be labeled "incomplete" and I could not work. I do not believe I
28  signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

**DECLARATION OF MARIE NARISMA ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

for Corona.

9.     In addition, Corona characterized second meal breaks in a negative and false light to deter me from wanting to take a second meal break. I was told that for me to be entitled to a second meal I would have to work 13 hours. I did not know that if I had not signed the Meal Period Waiver, I would be actually working only 12 hours with two 30-minute meal breaks. To put further pressure on me, I was told that all the nurses have signed the Meal Period Waiver and that I should sign it as well. I did not take a second meal during my employment with Corona.

### Lack of "Break" or "Relief" Nurses

10.     I did not take rest breaks, or when I tried to take one it was interrupted, because I had to be continuously ready and able to assist and attend to my patients during my entire shift. My other colleagues in my unit are also assigned patients, and if they are too busy taking care of their patients or handling an emergency, I could not take a rest break or had to cut my break short to attend to my patients or emergencies. Corona does not have enough "Break" or "Relief" nurses to relieve me so I can take a 10-minute, uninterrupted break. This problem is compounded when Corona "flexes" off nurses in my unit due to low patient census. Corona would schedule "Break" or "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief" nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure nurses in each unit are provided with 10-minute, uninterrupted rest breaks. Therefore, I do not believe I was authorized or permitted to take 10-minute, uninterrupted rest breaks because I was never fully relieved of all of my duties. I had to constantly be on my toes, ready to respond to patient calls or emergencies.

### Inaccurate Employer Name

DECLARATION OF MARIE NARISMA ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    11.    I did not know I am employed by UHS-Corona, Inc.  My paystubs

2   indicate that my employer is Corona Regional Medical Center.

3        I declare under the penalty of perjury under the laws of the United States of

4   America that the foregoing is true and correct.  Executed on February 12th, 2015, in

5   Mira Loma, California.

6

7                                          MARIE NARISMA

# EXHIBIT 7

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777

6  Attorneys for Plaintiffs and Putative Class

7

8              UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT COURT OF CALIFORNIA

10 MARLYN SALI and DEBORAH              Case No. 14-CV-00985 PSG (JPRx)
   SPRIGGS, on behalf of themselves, all
11 others situated and the general public,   DECLARATION OF MELODY
                                             FERNANDEZ IN SUPPORT OF
12            Plaintiffs,                     PLAINTIFFS' MOTION FOR CLASS
                                             CERTIFICATION
13 v.
                                             Judge:  Hon. Philip S. Gutierrez
14 UNIVERSAL HEALTH SERVICES              Crtrm:  880—Roybal
15 OF RANCHO SPRINGS, INC.;
   UNIVERSAL HEALTH SERVICES
16 OF PALMDALE, INC.; UHS-
   CORONA, INC.; INLAND VALLEY
17 MEDICAL CENTER; RANCHO
   SPRINGS MEDICAL CENTER;
18 PALMDALE REGIONAL MEDICAL
   CENTER; TEMECULA VALLEY
19 HOSPITAL; UHS OF DELAWARE,
   INC.; and DOES 2 to 100, inclusive,
20
              Defendants.
21

22

23     I, MELODY FERNANDEZ, declare:

24     1.    I am an adult, over 18-years old.  I am a prospective class member

25 in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26 *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27 States District Court—Central District Court of California.  I have personal

28 knowledge of the matters stated herein, and if called to testify about these facts, I

DECLARATION OF MELODY FERNANDEZ ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

1    could and would do so in a competent and truthful manner.

## Background

2    2.    I am currently employed by Corona Regional Medical Center
3    ("Corona") as a Registered Nurse ("RN") and have worked for Corona since
4    2008.

5    3.    As an employee of Corona, I work an Alternative Workweek
6    Schedule ("AWS"). I am regularly scheduled to work three 12-hour shifts a
7    week. I clock in and out for each shift and each meal break using my employee
8    badge at a magnetic-strip reader located in my unit of the hospital. I am paid an
9    hourly wage.

## "Rounding Time" Policy

10   4.    I was instructed by Corona that our mission is to deliver high
11   quality service to our patients through regular attendance and promptness. I
12   would usually and regularly arrive minutes before my scheduled shift and
13   accurately clock in to receive briefing from nurses completing the prior shift. I
14   would also regularly leave minutes after my scheduled shift to debrief the nurses
15   relieving me. I was not aware that Corona was rounding my actual time punches
16   to avoid overtime. I did not know that I was not being fully paid for all the
17   regular and overtime hours I worked.

## "Flexing" Off Policy

18   5.    Corona has a policy of "flexing" off nurses before completing their
19   AWS shift, or calling nurses before their shift to instruct them not to show up to
20   work, due to low patient census. I have experienced both situations. I have been
21   "flexed" off before completing my AWS shift, and I have been called before my
22   scheduled shift and instructed not to show up for that particular shift.

23   6.    On the occasions I was called before my shift began and instructed
24   not to show up to work due to low patient census, I was given two options. First,

**DECLARATION OF MELODY FERNANDEZ ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1   I was told that if I wanted to get paid for the lost hours because I was "flexed"
2   off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to
3   compensate myself for the lost hours. Second, if I did not want to cash out my
4   PTO or if I had no PTO to use, I could claim the lost shift as a Hospital
5   Convenience Day ("HCD") to maintain my benefits; however, I would receive
6   no pay for that shift.

7          7.     On the occasions I reported to work and then told to go home before
8   completing my AWS shift, I was usually and regularly "flexed" off involuntarily
9   due to low patient census. I was not told that I was entitled to overtime on
10  occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was
11  not told about "short-shift" penalties. The employee handbook provided to me
12  does not discuss short shifts or what I am entitled to when I am not provided a
13  full AWS shift. I was not told during my new hire process or new hire
14  orientation about short shifts and my entitlement to overtime if I am "flexed" off
15  after 8 hours of work, but before completing my AWS shift. I was not given any
16  written policies on short shifts or "short-shift" penalties. Corona did not make
17  me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not
18  believe I was paid overtime for all the hours I was "flexed" off after 8 hours of
19  work, but before completing my 12-hour shift.
20

21                              "Meal Waiver" Policy

22         8.     I had to participate in a new hire process prior to working at
23  Corona. During the new hire process, I was presented with a packet of
24  paperwork to sign, including a Meal Period Waiver. I was told that I had to fill
25  out and sign all of the documents as a condition of employment. If I did not fill
26  out and sign all of the documents, including the Meal Period Waiver, my hiring
27  process would be labeled "incomplete" and I could not work. I do not believe I
28  signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

**DECLARATION OF MELODY FERNANDEZ ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1   for Corona.

2        9.    In addition, Corona characterized second meal breaks in a negative

3   and false light to deter me from wanting to take a second meal break. I was told

4   that for me to be entitled to a second meal I would have to work 13 hours. I did

5   not know that if I had not signed the Meal Period Waiver, I would be actually

6   working only 12 hours with two 30-minute meal breaks. To put further pressure

7   on me, I was told that all the nurses have signed the Meal Period Waiver and

8   that I should sign it as well. I did not take a second meal during my

9   employment with Corona.

### Lack of "Break" or "Relief" Nurses

10        10.   I did not take rest breaks, or when I tried to take one it was

11   interrupted, because I had to be continuously ready and able to assist and attend

12   to my patients during my entire shift. My other colleagues in my unit are also

13   assigned patients, and if they are too busy taking care of their patients or

14   handling an emergency, I could not take a rest break or had to cut my break

15   short to attend to my patients or emergencies. Corona does not have enough

16   "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

17   uninterrupted break. This problem is compounded when Corona "flexes" off

18   nurses in my unit due to low patient census. Corona would schedule "Break" or

19   "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

20   nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure

21   nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

22   Therefore, I do not believe I was authorized or permitted to take 10-minute,

23   uninterrupted rest breaks because I was never fully relieved of all of my duties.

24   I had to constantly be on my toes, ready to respond to patient calls or

25   emergencies.

### Inaccurate Employer Name

**DECLARATION OF MELODY FERNANDEZ ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1

## Inaccurate Employer Name

2      8.     I did not know I am employed by UHS-Corona, Inc. My paystubs

3 indicate that my employer is Corona Regional Medical Center.

4      I declare under the penalty of perjury under the laws of the United States of

5 America that the foregoing is true and correct. Executed on February 12th. 2015, in

6 Fontana, California.

7

8                MELODY FERNANDEZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MELODY FERNANDEZ ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

EXHIBIT 8

Case 5:14-cv-00985-PSG-JPR  Document 129-2  Filed 05/21/15  Page 81 of 157  Page ID
#:6955
Case 5:14-cv-00985-PSG-JPR  Document 72-2  Filed 02/16/15  Page 34 of 134  Page ID
#:2113

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777

6  Attorneys for Plaintiffs and Putative Class

7
               UNITED STATES DISTRICT COURT
8
          CENTRAL DISTRICT COURT OF CALIFORNIA
9

10 | MARLYN SALI and DEBORAH          | Case No. 14-CV-00985 PSG (JPRx)
   | SPRIGGS, on behalf of themselves, all |
11 | others situated and the general public, | DECLARATION OF ROSELLA
   |                                    | MARX IN SUPPORT OF
12 |              Plaintiffs,           | PLAINTIFFS' MOTION FOR CLASS
   |                                    | CERTIFICATION
13 | v.                                 |
   |                                    | Judge:  Hon. Philip S. Gutierrez
14 |                                    | Crtrm:  880—Roybal
   | UNIVERSAL HEALTH SERVICES          |
15 | OF RANCHO SPRINGS, INC.;           |
   | UNIVERSAL HEALTH SERVICES          |
16 | OF PALMDALE, INC.; UHS-            |
   | CORONA, INC.; INLAND VALLEY        |
17 | MEDICAL CENTER; RANCHO             |
   | SPRINGS MEDICAL CENTER;            |
18 | PALMDALE REGIONAL MEDICAL          |
   | CENTER; TEMECULA VALLEY            |
19 | HOSPITAL; UHS OF DELAWARE,         |
   | INC.; and DOES 2 to 100. inclusive.|
20 |                                    |
21 |              Defendants.           |

22

23      I, ROSELLA MARX, declare:

24      1.      I am an adult, over 18-years old. I am a prospective class member

25 in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26 *Springs, Inc., et al.,* Case no. 14-CV-00985 PSG (JPRx), pending in the United

27 States District Court—Central District Court of California. I have personal

28 knowledge of the matters stated herein, and if called to testify about these facts, I

Page 1

Case 5:14-cv-00985-PSG-JPR  Document 120-2  Filed 05/21/15  Page 82 of 157  Page ID
#:6957
Case 5:14-cv-00985-PSG-JPR  Document 77-2  Filed 02/16/15  Page 35 of 134  Page ID
#:2114

1    could and would do so in a competent and truthful manner.

2                               Background

3        2.    I am currently employed by Corona Regional Medical Center

4    ("Corona") as a Registered Nurse ("RN") and have worked for Corona since

5    May 2014.

6        3.    As an employee of Corona, I work an Alternative Workweek

7    Schedule ("AWS").  I am regularly scheduled to work three 12-hour shifts a

8    week.  I clock in and out for each shift and each meal break using my employee

9    badge at a magnetic-strip reader located in my unit of the hospital.  I am paid an

10   hourly wage.

11                          "Rounding Time" Policy

12       4.    I was instructed by Corona that our mission is to deliver high

13   quality service to our patients through regular attendance and promptness. I

14   would usually and regularly arrive minutes before my scheduled shift and

15   accurately clock in to receive briefing from nurses completing the prior shift.  I

16   would also regularly leave minutes after my scheduled shift to debrief the nurses

17   relieving me.  I was not aware that Corona was rounding my actual time punches

18   to avoid overtime.  I did not know that I was not being fully paid for all the

19   regular and overtime hours I worked.

20                            "Flexing" Off Policy

21       5.    Corona has a policy of "flexing" off nurses before completing their

22   AWS shift, or calling nurses before their shift to instruct them not to show up to

23   work, due to low patient census.  I have experienced both situations.  I have been

24   "flexed" off before completing my AWS shift, and I have been called before my

25   scheduled shift and instructed not to show up for that particular shift.

26       6.    On the occasions I was called before my shift began and instructed

27   not to show up to work due to low patient census, I was given two options.  First,

DECLARATION OF ROSELLA MARX ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Case 5:14-cv-00985-PSG-JPR Document 129-2 Filed 05/21/15 Page 83 of 157 Page ID
#:6958
Case 5:14-cv-00985-PSG-JPR Document 129-2 Filed 02/16/15 Page 36 of 134 Page ID
#:2115

1   I was told that if I wanted to get paid for the lost hours because I was "flexed"

2   off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3   compensate myself for the lost hours. Second, if I did not want to cash out my

4   PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5   Convenience Day ("HCD") to maintain my benefits; however, I would receive

6   no pay for that shift.

7       7.   On the occasions I reported to work and then told to go home before

8   completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9   due to low patient census. I was not told that I was entitled to overtime on

10   occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was

11   not told about "short-shift" penalties. The employee handbook provided to me

12   does not discuss short shifts or what I am entitled to when I am not provided a

13   full AWS shift. I was not told during my new hire process or new hire

14   orientation about short shifts and my entitlement to overtime if I am "flexed" off

15   after 8 hours of work, but before completing my AWS shift. I was not given any

16   written policies on short shifts or "short-shift" penalties. Corona did not make

17   me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not

18   believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19   work, but before completing my 12-hour shift.

20

21                   "Meal Waiver" Policy

22       8.   I had to participate in a new hire process prior to working at

23   Corona. During the new hire process, I was presented with a packet of

24   paperwork to sign, including a Meal Period Waiver. I was told that I had to fill

25   out and sign all of the documents as a condition of employment. If I did not fill

26   out and sign all of the documents, including the Meal Period Waiver, my hiring

27   process would be labeled "incomplete" and I could not work. I do not believe I

28   signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

DECLARATION OF ROSELLA MARX ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Case 5:14-cv-00985-PSG-JPR   Document 129-2   Filed 05/21/15   Page 84 of 157   Page ID
#:6959
Case 5:14-cv-00985-PSG-JPR   Document 119   Filed 02/16/15   Page 37 of 134   Page ID
#:2116

for Corona.

9.    In addition, Corona characterized second meal breaks in a negative and false light to deter me from wanting to take a second meal break.  I was told that for me to be entitled to a second meal I would have to work 13 hours.  I did not know that if I had not signed the Meal Period Waiver, I would be actually working only 12 hours with two 30-minute meal breaks.  To put further pressure on me, I was told that all the nurses have signed the Meal Period Waiver and that I should sign it as well.   I did not take a second meal during my employment with Corona.

## Lack of "Break" or "Relief" Nurses

10.    I did not take rest breaks, or when I tried to take one it was interrupted, because I had to be continuously ready and able to assist and attend to my patients during my entire shift.  My other colleagues in my unit are also assigned patients, and if they are too busy taking care of their patients or handling an emergency, I could not take a rest break or had to cut my break short to attend to my patients or emergencies.  Corona does not have enough "Break" or "Relief" nurses to relieve me so I can take a 10-minute, uninterrupted break.  This problem is compounded when Corona "flexes" off nurses in my unit due to low patient census.  Corona would schedule "Break" or "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief" nurse.  Corona does not hire specific "Break" or "Relief" nurses to ensure nurses in each unit are provided with 10-minute, uninterrupted rest breaks.  Therefore, I do not believe I was authorized or permitted to take 10-minute, uninterrupted rest breaks because I was never fully relieved of all of my duties.  I had to constantly be on my toes, ready to respond to patient calls or emergencies.

DECLARATION OF ROSELLA MARX ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Case 5:14-cv-00985-PSG-JPR   Document 120-2   Filed 05/21/15   Page 85 of 157   Page ID
Case 5:14-cv-00985-PSG-JPR   Document 120-2   Filed 02/16/15   Page 38 of 134   Page ID
#:6960
#:2117

1       I declare under the penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct. Executed on February 12th, 2015, in

3   Riverside, California.

4

5                     ROSELLA MARX

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ROSELLA MARX ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

# EXHIBIT 9

Case 5:14-cv-00985-PSG-JPR  Document 77  Filed 02/16/15  Page 40 of 134  Page ID
#:6962
Case 5:14-cv-00985-PSG-JPR  Document 130-2  Filed 05/21/15  Page 87 of 157  Page ID
#:6962

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777

6  Attorneys for Plaintiffs and Putative Class

7
8              UNITED STATES DISTRICT COURT

9         CENTRAL DISTRICT COURT OF CALIFORNIA

10 MARLYN SALI and DEBORAH          Case No. 14-CV-00985 PSG (JPRx)
   SPRIGGS, on behalf of themselves, all
11 others situated and the general public,  DECLARATION OF KIMBERLY
                                    HAYDE IN SUPPORT OF
12         Plaintiffs,              PLAINTIFFS' MOTION FOR CLASS
                                    CERTIFICATION
13
   v.                              Judge:  Hon. Philip S. Gutierrez
14                                  Crtrm:  880—Roybal
   UNIVERSAL HEALTH SERVICES
15 OF RANCHO SPRINGS, INC.;
   UNIVERSAL HEALTH SERVICES
16 OF PALMDALE, INC.; UHS-
   CORONA, INC.; INLAND VALLEY
17 MEDICAL CENTER; RANCHO
   SPRINGS MEDICAL CENTER;
18 PALMDALE REGIONAL MEDICAL
   CENTER; TEMECULA VALLEY
19 HOSPITAL; UHS OF DELAWARE,
   INC.; and DOES 2 to 100, inclusive,
20
           Defendants.
21
22
23      I, KIMBERLY HAYDE, declare:

24      1.    I am an adult, over 18-years old.  I am a prospective class member

25 in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26 *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27 States District Court—Central District Court of California.  I have personal

28 knowledge of the matters stated herein, and if called to testify about these facts, I

Page 1

**DECLARATION OF KIMBERLY HAYDE ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

1 could and would do so in a competent and truthful manner.

2 <center>Background</center>

3     2.   I am a former employee of Corona Regional Medical Center

4 ("Corona") and worked for Corona as a Registered Nurse ("RN") from

5 approximately May 2007 to May 2011.

6     3.   While employed at Corona, I worked an Alternative Workweek

7 Schedule ("AWS"). I was regularly scheduled to work three 12-hour shifts a

8 week. I clocked in and out for each shift and each meal break using my

9 employee badge at a magnetic-strip reader located in my unit of the hospital. I

10 was paid an hourly wage.

11 <center>"Rounding Time" Policy</center>

12     4.   I was instructed by Corona that our mission is to deliver high

13 quality service to our patients through regular attendance and promptness. I

14 would usually and regularly arrive minutes before my scheduled shift and

15 accurately clock in to receive briefing from nurses completing the prior shift. I

16 would also regularly leave minutes after my scheduled shift to debrief the nurses

17 relieving me. I was not aware that Corona was rounding my actual time punches

18 to avoid overtime. I did not know that I was not being fully paid for all the

19 regular and overtime hours I worked.

20 <center>"Flexing" Off Policy</center>

21     5.   Corona has a policy of "flexing" off nurses before completing their

22 AWS shift, or calling nurses before their shift to instruct them not to show up to

23 work, due to low patient census. I have experienced both situations. I have been

24 "flexed" off before completing my AWS shift, and I have been called before my

25 scheduled shift and instructed not to show up for that particular shift.

26     6.   On the occasions I was called before my shift began and instructed

27 not to show up to work due to low patient census, I was given two options. First,

<center>Page 2
DECLARATION OF KIMBERLY HAYDE ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</center>

Case 5:14-cv-00985-PSG-JPR Document 77 Filed 02/16/15 Page 42 of 134 Page ID
#:2252
Case 5:14-cv-00985-PSG-JPR Document 77-2 Filed 05/21/15 Page 89 of 157 Page ID
#:6964

1    I was told that if I wanted to get paid for the lost hours because I was "flexed"

2  off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3  compensate myself for the lost hours.  Second, if I did not want to cash out my

4  PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5  Convenience Day ("HCD") to maintain my benefits; however, I would receive

6  no pay for that shift.

7         7.  On the occasions I reported to work and then told to go home before

8  completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9  due to low patient census.  I was not told that I was entitled to overtime on

10  occasions I worked over 8 hours but less than my scheduled 12-hour shift.  I was

11  not told about "short-shift" penalties.  The employee handbook provided to me

12  does not discuss short shifts or what I am entitled to when I am not provided a

13  full AWS shift.  I was not told during my new hire process or new hire

14  orientation about short shifts and my entitlement to overtime if I am "flexed" off

15  after 8 hours of work, but before completing my AWS shift.  I was not given any

16  written policies on short shifts or "short-shift" penalties.  Corona did not make

17  me fully aware of my entitlement to "short-shift" penalties.  Therefore, I do not

18  believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19  work, but before completing my 12-hour shift.

20

21                      "Meal Waiver" Policy

22         8.  I had to participate in a new hire process prior to working at

23  Corona.  During the new hire process, I was presented with a packet of

24  paperwork to sign, including a Meal Period Waiver.  I was told that I had to fill

25  out and sign all of the documents as a condition of employment.  If I did not fill

26  out and sign all of the documents, including the Meal Period Waiver, my hiring

27  process would be labeled "incomplete" and I could not work.  I do not believe I

28  signed the Meal Period Waiver voluntarily.  I had to sign it if I wanted to work

**DECLARATION OF KIMBERLY HAYDE ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

for Corona.

9.     In addition, Corona characterized second meal breaks in a negative and false light to deter me from wanting to take a second meal break. I was told that for me to be entitled to a second meal I would have to work 13 hours. I did not know that if I had not signed the Meal Period Waiver, I would be actually working only 12 hours with two 30-minute meal breaks. To put further pressure on me, I was told that all the nurses have signed the Meal Period Waiver and that I should sign it as well. I did not take a second meal during my employment with Corona.

## Lack of "Break" or "Relief" Nurses

10.     I did not take rest breaks, or when I tried to take one it was interrupted, because I had to be continuously ready and able to assist and attend to my patients during my entire shift. My other colleagues in my unit are also assigned patients, and if they are too busy taking care of their patients or handling an emergency, I could not take a rest break or had to cut my break short to attend to my patients or emergencies. Corona does not have enough "Break" or "Relief" nurses to relieve me so I can take a 10-minute, uninterrupted break. This problem is compounded when Corona "flexes" off nurses in my unit due to low patient census. Corona would schedule "Break" or "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief" nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure nurses in each unit are provided with 10-minute, uninterrupted rest breaks. Therefore, I do not believe I was authorized or permitted to take 10-minute, uninterrupted rest breaks because I was never fully relieved of all of my duties. I had to constantly be on my toes, ready to respond to patient calls or emergencies.

## Inaccurate Employer Name

Page 4

DECLARATION OF KIMBERLY HAYDE ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1 ed patients, and if they are too busy taking care of their patients or

2 ng an emergency, I could not take a rest break or had to cut my break

3 to attend to my patients or emergencies. Corona does not have enough

4 k" or "Relief" nurses to relieve me so I can take a 10-minute,

5 rrupted break. This problem is compounded when Corona "flexes" off

6 in my unit due to low patient census. Corona would schedule "Break" or

7 f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8 Corona does not hire specific "Break" or "Relief" nurses to ensure

9 in each unit are provided with 10-minute, uninterrupted rest breaks.

10 fore, I do not believe I was authorized or permitted to take 10-minute,

11 rrupted rest breaks because I was never fully relieved of all of my duties.

12 to constantly be on my toes, ready to respond to patient calls or

13 encies.

14

15 **Inaccurate Employer Name**

16 11. I did not know I was employed by UHS-Corona, Inc. My paystubs

17 te that my employer is Corona Regional Medical Center.

18 I declare under the penalty of perjury under the laws of the United States of

19 a that the foregoing is true and correct. Executed on February 9th, 2015, in

20 ta, California.

NAME

21

22

23

24

25

26

27

28

# EXHIBIT 10

Case 5:14-cv-00985-PSG-JPR  Document 120-2  Filed 05/21/15  Page 93 of 157  Page ID
#:6968
Case 5:14-cv-00985-PSG-JPR  Document 17-2  Filed 02/16/15  Page 46 of 134  Page ID
#:2125

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777

6  Attorneys for Plaintiffs and Putative Class

7

8                    UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT COURT OF CALIFORNIA

10 MARLYN SALI and DEBORAH          Case No. 14-CV-00985 PSG (JPRx)
   SPRIGGS, on behalf of themselves, all
11 others situated and the general public,   **DECLARATION OF DIANE
                                             ARREOLA IN SUPPORT OF
12              Plaintiffs,                   PLAINTIFFS' MOTION FOR CLASS
                                             CERTIFICATION**
13 v.
                                             Judge:  Hon. Philip S. Gutierrez
14 UNIVERSAL HEALTH SERVICES            Crtrm:  880—Roybal
   OF RANCHO SPRINGS, INC.;
15 UNIVERSAL HEALTH SERVICES
   OF PALMDALE, INC.; UHS-
16 CORONA, INC.; INLAND VALLEY
   MEDICAL CENTER; RANCHO
17 SPRINGS MEDICAL CENTER;
   PALMDALE REGIONAL MEDICAL
18 CENTER; TEMECULA VALLEY
   HOSPITAL; UHS OF DELAWARE,
19 INC.; and DOES 2 to 100, inclusive,

20              Defendants.

21

22

23      I, DIANE ARREOLA, declare:

24      1.      I am an adult, over 18-years old.  I am a prospective class member

25 in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho

26 Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27 States District Court—Central District Court of California.  I have personal

28 knowledge of the matters stated herein, and if called to testify about these facts, I

DECLARATION OF DIANE ARREOLA ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Case 5:14-cv-00985-PSG-JPR Document 120-2 Filed 05/21/15 Page 94 of 157 Page ID
#:6965
Case 5:14-cv-00985-PSG-JPR Document 77 Filed 02/16/15 Page 47 of 134 Page ID
#:2126

1  could and would do so in a competent and truthful manner.

2                              Background

3         2.    I am a former employee of Corona Regional Medical Center

4  ("Corona") and worked for Corona as a Registered Nurse ("RN") from

5  approximately October 2010 to November 2014.

6         3.    While employed at Corona, I worked an Alternative Workweek

7  Schedule ("AWS"). I was regularly scheduled to work three 12-hour shifts a

8  week. I clocked in and out for each shift and each meal break using my

9  employee badge at a magnetic-strip reader located in my unit of the hospital. I

10  was paid an hourly wage.

11                         "Rounding Time" Policy

12        4.    I was instructed by Corona that our mission is to deliver high

13  quality service to our patients through regular attendance and promptness. I

14  would usually and regularly arrive minutes before my scheduled shift and

15  accurately clock in to receive briefing from nurses completing the prior shift. I

16  would also regularly leave minutes after my scheduled shift to debrief the nurses

17  relieving me. I was not aware that Corona was rounding my actual time punches

18  to avoid overtime. I did not know that I was not being fully paid for all the

19  regular and overtime hours I worked.

20                          "Flexing" Off Policy

21        5.    Corona has a policy of "flexing" off nurses before completing their

22  AWS shift, or calling nurses before their shift to instruct them not to show up to

23  work, due to low patient census. I have experienced both situations. I have been

24  "flexed" off before completing my AWS shift, and I have been called before my

25  scheduled shift and instructed not to show up for that particular shift.

26        6.    On the occasions I was called before my shift began and instructed

27  not to show up to work due to low patient census, I was given two options. First,

Page 2
**DECLARATION OF DIANE ARREOLA ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

Case 5:14-cv-00985-PSG-JPR Document 72 Filed 02/16/15 Page 48 of 134 Page ID
#:2127

I was told that if I wanted to get paid for the lost hours because I was "flexed" off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to compensate myself for the lost hours. Second, if I did not want to cash out my PTO or if I had no PTO to use, I could claim the lost shift as a Hospital Convenience Day ("HCD") to maintain my benefits; however, I would receive no pay for that shift.

7. On the occasions I reported to work and then told to go home before completing my AWS shift, I was usually and regularly "flexed" off involuntarily due to low patient census. I was not told that I was entitled to overtime on occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was not told about "short-shift" penalties. The employee handbook provided to me does not discuss short shifts or what I am entitled to when I am not provided a full AWS shift. I was not told during my new hire process or new hire orientation about short shifts and my entitlement to overtime if I am "flexed" off after 8 hours of work, but before completing my AWS shift. I was not given any written policies on short shifts or "short-shift" penalties. Corona did not make me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not believe I was paid overtime for all the hours I was "flexed" off after 8 hours of work, but before completing my 12-hour shift.

### "Meal Waiver" Policy

8. I had to participate in a new hire process prior to working at Corona. During the new hire process, I was presented with a packet of paperwork to sign, including a Meal Period Waiver. I was told that I had to fill out and sign all of the documents as a condition of employment. If I did not fill out and sign all of the documents, including the Meal Period Waiver, my hiring process would be labeled "incomplete" and I could not work. I do not believe I signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

**DECLARATION OF DIANE ARREOLA ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

Case 5:14-cv-00985-PSG-JPR  Document 120-2  Filed 05/21/15  Page 96 of 157  Page ID
#:6671
Case 5:14-cv-00985-PSG-JPR  Document 72-2  Filed 02/16/15  Page 49 of 134  Page ID
#:2128

1  for Corona.

2      9.    In addition, Corona characterized second meal breaks in a negative

3  and false light to deter me from wanting to take a second meal break.  I was told

4  that for me to be entitled to a second meal I would have to work 13 hours.  I did

5  not know that if I had not signed the Meal Period Waiver, I would be actually

6  working only 12 hours with two 30-minute meal breaks.  To put further pressure

7  on me, I was told that all the nurses have signed the Meal Period Waiver and

8  that I should sign it as well.  I did not take a second meal during my

9  employment with Corona.

10                     Lack of "Break" or "Relief" Nurses

11     10.    I did not take rest breaks, or when I tried to take one it was

12  interrupted, because I had to be continuously ready and able to assist and attend

13  to my patients during my entire shift.  My other colleagues in my unit are also

14  assigned patients, and if they are too busy taking care of their patients or

15  handling an emergency, I could not take a rest break or had to cut my break

16  short to attend to my patients or emergencies.  Corona does not have enough

17  "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

18  uninterrupted break.  This problem is compounded when Corona "flexes" off

19  nurses in my unit due to low patient census.  Corona would schedule "Break" or

20  "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

21  nurse.  Corona does not hire specific "Break" or "Relief" nurses to ensure

22  nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

23  Therefore, I do not believe I was authorized or permitted to take 10-minute,

24  uninterrupted rest breaks because I was never fully relieved of all of my duties.

25  I had to constantly be on my toes, ready to respond to patient calls or

26  emergencies.

27

28                      Inaccurate Employer Name

Page 4
**DECLARATION OF DIANE ARREOLA ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

Case 5:14-cv-00985-PSG-JPR   Document 120-2   Filed 05/21/15   Page 97 of 157   Page ID
#:6675
Case 5:14-cv-00985-PSG-JPR   Document 77-7   Filed 02/16/15   Page 50 of 134   Page ID
#:2129

1 ed patients, and if they are too busy taking care of their patients or

2 ng an emergency, I could not take a rest break or had to cut my break

3 to attend to my patients or emergencies.  Corona does not have enough

4 k" or "Relief" nurses to relieve me so I can take a 10-minute,

5 rrupted break.  This problem is compounded when Corona "flexes" off

6 in my unit due to low patient census.  Corona would schedule "Break" or

7 f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8 Corona does not hire specific "Break" or "Relief" nurses to ensure

9 in each unit are provided with 10-minute, uninterrupted rest breaks.

10 fore, I do not believe I was authorized or permitted to take 10-minute,

11 rrupted rest breaks because I was never fully relieved of all of my duties.

12 to constantly be on my toes, ready to respond to patient calls or

13 encies.

14

### Inaccurate Employer Name

15

16 11.    I did not know I was employed by UHS-Corona, Inc.  My paystubs

17 te that my employer is Corona Regional Medical Center.

18 I declare under the penalty of perjury under the laws of the United States of

19 :a that the foregoing is true and correct.  Executed on February 6th, 2015, in

20 ds, California.

NAME

21

22

23

24

25

26

27

28

# EXHIBIT 11

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777

6  Attorneys for Plaintiffs and Putative Class

7

8                    UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT COURT OF CALIFORNIA

10 MARLYN SALI and DEBORAH          Case No. 14-CV-00985 PSG (JPRx)
   SPRIGGS, on behalf of themselves, all
11 others situated and the general public,  DECLARATION OF HEATHER
                                            GIARRATANO IN SUPPORT OF
12                 Plaintiffs,              PLAINTIFFS' MOTION FOR CLASS
                                            CERTIFICATION
13 v.
                                            Judge:  Hon. Philip S. Gutierrez
14 UNIVERSAL HEALTH SERVICES       Crtrm:  880—Roybal
15 OF RANCHO SPRINGS, INC.;
   UNIVERSAL HEALTH SERVICES
16 OF PALMDALE, INC.; UHS-
   CORONA, INC.; INLAND VALLEY
17 MEDICAL CENTER; RANCHO
   SPRINGS MEDICAL CENTER;
18 PALMDALE REGIONAL MEDICAL
   CENTER; TEMECULA VALLEY
19 HOSPITAL; UHS OF DELAWARE,
   INC.; and DOES 2 to 100, inclusive,
20
                   Defendants.
21

22

23      I, HEATHER GIARRATANO, declare:

24      1.     I am an adult, over 18-years old.  I am a prospective class member

25 in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26 *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27 States District Court—Central District Court of California.  I have personal

28 knowledge of the matters stated herein, and if called to testify about these facts, I

DECLARATION OF HEATHER GIARRATANO iso PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

1    could and would do so in a competent and truthful manner.

2                          Background

3         2.    I am a former employee of Corona Regional Medical Center
4    ("Corona") and worked for Corona as a Registered Nurse ("RN") from
5    approximately January 2014 to January 2015.

6         3.    While employed at Corona, I worked an Alternative Workweek
7    Schedule ("AWS"). I was regularly scheduled to work three 12-hour shifts a
8    week. I clocked in and out for each shift and each meal break using my
9    employee badge at a magnetic-strip reader located in my unit of the hospital. I
10   was paid an hourly wage.

11                      "Rounding Time" Policy

12        4.    I was instructed by Corona that our mission is to deliver high
13   quality service to our patients through regular attendance and promptness. I
14   would usually and regularly arrive minutes before my scheduled shift and
15   accurately clock in to receive briefing from nurses completing the prior shift. I
16   would also regularly leave minutes after my scheduled shift to debrief the nurses
17   relieving me. I was not aware that Corona was rounding my actual time punches
18   to avoid overtime. I did not know that I was not being fully paid for all the
19   regular and overtime hours I worked.

20                      "Flexing" Off Policy

21        5.    Corona has a policy of "flexing" off nurses before completing their
22   AWS shift, or calling nurses before their shift to instruct them not to show up to
23   work, due to low patient census. I have experienced both situations. I have been
24   "flexed" off before completing my AWS shift, and I have been called before my
25   scheduled shift and instructed not to show up for that particular shift.

26        6.    On the occasions I was called before my shift began and instructed
27   not to show up to work due to low patient census, I was given two options. First,

28

DECLARATION OF HEATHER GIARRATANO ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

Case 5:14-cv-00985-PSG-JPR  Document 120-2  Filed 05/21/15  Page 101 of 157  Page ID
#:6976
Case 5:14-cv-00985-PSG-JPR  Document 72  Filed 02/16/15  Page 54 of 134  Page ID
#:2133

1   I was told that if I wanted to get paid for the lost hours because I was "flexed"

2   off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3   compensate myself for the lost hours.  Second, if I did not want to cash out my

4   PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5   Convenience Day ("HCD") to maintain my benefits; however, I would receive

6   no pay for that shift.

7        7.     On the occasions I reported to work and then told to go home before

8   completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9   due to low patient census.  I was not told that I was entitled to overtime on

10  occasions I worked over 8 hours but less than my scheduled 12-hour shift.  I was

11  not told about "short-shift" penalties.  The employee handbook provided to me

12  does not discuss short shifts or what I am entitled to when I am not provided a

13  full AWS shift.  I was not told during my new hire process or new hire

14  orientation about short shifts and my entitlement to overtime if I am "flexed" off

15  after 8 hours of work, but before completing my AWS shift.  I was not given any

16  written policies on short shifts or "short-shift" penalties.  Corona did not make

17  me fully aware of my entitlement to "short-shift" penalties.  Therefore, I do not

18  believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19  work, but before completing my 12-hour shift.

20

21                              "Meal Waiver" Policy

22       8.     I had to participate in a new hire process prior to working at

23  Corona.  During the new hire process, I was presented with a packet of

24  paperwork to sign, including a Meal Period Waiver.  I was told that I had to fill

25  out and sign all of the documents as a condition of employment.  If I did not fill

26  out and sign all of the documents, including the Meal Period Waiver, my hiring

27  process would be labeled "incomplete" and I could not work.  I do not believe I

28  signed the Meal Period Waiver voluntarily.  I had to sign it if I wanted to work

DECLARATION OF **HEATHER GIARRATANO** ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

1  for Corona.

2      9.    In addition, Corona characterized second meal breaks in a negative

3  and false light to deter me from wanting to take a second meal break. I was told

4  that for me to be entitled to a second meal I would have to work 13 hours. I did

5  not know that if I had not signed the Meal Period Waiver, I would be actually

6  working only 12 hours with two 30-minute meal breaks. To put further pressure

7  on me, I was told that all the nurses have signed the Meal Period Waiver and

8  that I should sign it as well. I did not take a second meal during my

9  employment with Corona.

          Lack of "Break" or "Relief" Nurses

10      10.    I did not take rest breaks, or when I tried to take one it was

11
12  interrupted, because I had to be continuously ready and able to assist and attend

13  to my patients during my entire shift. My other colleagues in my unit are also

14  assigned patients, and if they are too busy taking care of their patients or

15  handling an emergency, I could not take a rest break or had to cut my break

16  short to attend to my patients or emergencies. Corona does not have enough

17  "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

18  uninterrupted break. This problem is compounded when Corona "flexes" off

19  nurses in my unit due to low patient census. Corona would schedule "Break" or

20  "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

21  nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure

22  nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

23  Therefore, I do not believe I was authorized or permitted to take 10-minute,

24  uninterrupted rest breaks because I was never fully relieved of all of my duties.

25  I had to constantly be on my toes, ready to respond to patient calls or

26  emergencies.

27
28            Inaccurate Employer Name

Page 4

DECLARATION OF HEATHER GIARRATANO ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case 5:14-cv-00985-PSG-JPR Document 120-2 Filed 05/21/15 Page 103 of 157 Page ID
#:2135
Case 5:14-cv-00985-PSG-JPR Document 77-6 Filed 02/16/15 Page 56 of 134 Page ID
#:1978

1 ed patients, and if they are too busy taking care of their patients or

2 ng an emergency, I could not take a rest break or had to cut my break

3 to attend to my patients or emergencies. Corona does not have enough

4 k" or "Relief" nurses to relieve me so I can take a 10-minute,

5 rrupted break. This problem is compounded when Corona "flexes" off

6 in my unit due to low patient census. Corona would schedule "Break" or

7 f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8 Corona does not hire specific "Break" or "Relief" nurses to ensure

9 in each unit are provided with 10-minute, uninterrupted rest breaks.

10 fore, I do not believe I was authorized or permitted to take 10-minute,

11 rrupted rest breaks because I was never fully relieved of all of my duties.

12 to constantly be on my toes, ready to respond to patient calls or

13 encies.

14

### Inaccurate Employer Name

15

16 11.    I did not know I was employed by UHS-Corona, Inc. My paystubs

17 te that my employer is Corona Regional Medical Center.

18 I declare under the penalty of perjury under the laws of the United States of

19 a that the foregoing is true and correct. Executed on February 6th, 2015, in

20 , California.

21      NAME

22

23

24

25

26

27

28

# EXHIBIT 12

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777

6  Attorneys for Plaintiffs and Putative Class

7

8                  UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT COURT OF CALIFORNIA

10 MARLYN SALI and DEBORAH            Case No. 14-CV-00985 PSG (JPRx)
   SPRIGGS, on behalf of themselves, all
11 others situated and the general public,   DECLARATION OF SANDRA DE LA
                                             CRUZ IN SUPPORT OF
12              Plaintiffs,                   PLAINTIFFS' MOTION FOR CLASS
                                             CERTIFICATION
13 v.
                                             Judge:  Hon. Philip S. Gutierrez
14 UNIVERSAL HEALTH SERVICES             Crtrm:  880—Roybal
15 OF RANCHO SPRINGS, INC.;
   UNIVERSAL HEALTH SERVICES
16 OF PALMDALE, INC.; UHS-
   CORONA, INC.; INLAND VALLEY
17 MEDICAL CENTER; RANCHO
   SPRINGS MEDICAL CENTER;
18 PALMDALE REGIONAL MEDICAL
   CENTER; TEMECULA VALLEY
19 HOSPITAL; UHS OF DELAWARE,
   INC.; and DOES 2 to 100, inclusive,
20
                Defendants.
21

22

23      I, SANDRA DE LA CRUZ, declare:

24      1.      I am an adult, over 18-years old.  I am a prospective class member

25 in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26 *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27 States District Court—Central District Court of California.  I have personal

28 knowledge of the matters stated herein, and if called to testify about these facts, I

DECLARATION OF SANDRA DE LA CRUZ ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

Case 5:14-cv-00985-PSG-JPR Document 72 Filed 02/16/15 Page 59 of 134 Page ID #:2138

1  could and would do so in a competent and truthful manner.

2  <u>Background</u>

3        2.    I am a former employee of Corona Regional Medical Center

4  ("Corona") and worked for Corona as a Registered Nurse ("RN") from

5  approximately July 2005 to April 2012.

6        3.    While employed at Corona, I worked an Alternative Workweek

7  Schedule ("AWS"). I was regularly scheduled to work three 12-hour shifts a

8  week. I clocked in and out for each shift and each meal break using my

9  employee badge at a magnetic-strip reader located in my unit of the hospital. I

10 was paid an hourly wage.

11 **"Rounding Time" Policy**

12       4.    I was instructed by Corona that our mission is to deliver high

13 quality service to our patients through regular attendance and promptness. I

14 would usually and regularly arrive minutes before my scheduled shift and

15 accurately clock in to receive briefing from nurses completing the prior shift. I

16 would also regularly leave minutes after my scheduled shift to debrief the nurses

17 relieving me. I was not aware that Corona was rounding my actual time punches

18 to avoid overtime. I did not know that I was not being fully paid for all the

19 regular and overtime hours I worked.

20

21 **"Flexing" Off Policy**

22       5.    Corona has a policy of "flexing" off nurses before completing their

23 AWS shift, or calling nurses before their shift to instruct them not to show up to

24 work, due to low patient census. I have experienced both situations. I have been

25 "flexed" off before completing my AWS shift, and I have been called before my

26 scheduled shift and instructed not to show up for that particular shift.

27       6.    On the occasions I was called before my shift began and instructed

28 not to show up to work due to low patient census, I was given two options. First,

**DECLARATION OF SANDRA DE LA CRUZ ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1  I was told that if I wanted to get paid for the lost hours because I was "flexed"

2  off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3  compensate myself for the lost hours. Second, if I did not want to cash out my

4  PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5  Convenience Day ("HCD") to maintain my benefits; however, I would receive

6  no pay for that shift.

7       7.    On the occasions I reported to work and then told to go home before

8  completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9  due to low patient census. I was not told that I was entitled to overtime on

10 occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was

11 not told about "short-shift" penalties. The employee handbook provided to me

12 does not discuss short shifts or what I am entitled to when I am not provided a

13 full AWS shift. I was not told during my new hire process or new hire

14 orientation about short shifts and my entitlement to overtime if I am "flexed" off

15 after 8 hours of work, but before completing my AWS shift. I was not given any

16 written policies on short shifts or "short-shift" penalties. Corona did not make

17 me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not

18 believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19 work, but before completing my 12-hour shift.

20

21                    "Meal Waiver" Policy

22      8.    I had to participate in a new hire process prior to working at

23 Corona. During the new hire process, I was presented with a packet of

24 paperwork to sign, including a Meal Period Waiver. I was told that I had to fill

25 out and sign all of the documents as a condition of employment. If I did not fill

26 out and sign all of the documents, including the Meal Period Waiver, my hiring

27 process would be labeled "incomplete" and I could not work. I do not believe I

28 signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

**DECLARATION OF SANDRA DE LA CRUZ ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

Case 5:14-cv-00985-PSG-JPR   Document 120-2   Filed 05/21/15   Page 108 of 157   Page ID
#:6985
Case 5:14-cv-00985-PSG-JPR   Document 27-2   Filed 02/16/15   Page 61 of 134   Page ID
#:2140

1  for Corona.

2      9.  In addition, Corona characterized second meal breaks in a negative

3  and false light to deter me from wanting to take a second meal break.  I was told

4  that for me to be entitled to a second meal I would have to work 13 hours.  I did

5  not know that if I had not signed the Meal Period Waiver, I would be actually

6  working only 12 hours with two 30-minute meal breaks.  To put further pressure

7  on me, I was told that all the nurses have signed the Meal Period Waiver and

8  that I should sign it as well.  I did not take a second meal during my

9  employment with Corona.

### Lack of "Break" or "Relief" Nurses

10

11      10.  I did not take rest breaks, or when I tried to take one it was

12  interrupted, because I had to be continuously ready and able to assist and attend

13  to my patients during my entire shift.  My other colleagues in my unit are also

14  assigned patients, and if they are too busy taking care of their patients or

15  handling an emergency, I could not take a rest break or had to cut my break

16  short to attend to my patients or emergencies.  Corona does not have enough

17  "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

18  uninterrupted break.  This problem is compounded when Corona "flexes" off

19  nurses in my unit due to low patient census.  Corona would schedule "Break" or

20  "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

21  nurse.  Corona does not hire specific "Break" or "Relief" nurses to ensure

22  nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

23  Therefore, I do not believe I was authorized or permitted to take 10-minute,

24  uninterrupted rest breaks because I was never fully relieved of all of my duties.

25  I had to constantly be on my toes, ready to respond to patient calls or

26  emergencies.

27

### Inaccurate Employer Name

28

Page 4

**DECLARATION OF SANDRA DE LA CRUZ ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

1 ed patients, and if they are too busy taking care of their patients or

2 ng an emergency, I could not take a rest break or had to cut my break

3 to attend to my patients or emergencies. Corona does not have enough

4 k" or "Relief" nurses to relieve me so I can take a 10-minute,

5 rrupted break. This problem is compounded when Corona "flexes" off

6 in my unit due to low patient census. Corona would schedule "Break" or

7 f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8 Corona does not hire specific "Break" or "Relief" nurses to ensure

9 in each unit are provided with 10-minute, uninterrupted rest breaks.

10 fore, I do not believe I was authorized or permitted to take 10-minute,

11 rrupted rest breaks because I was never fully relieved of all of my duties.

12 to constantly be on my toes, ready to respond to patient calls or

13 encies.

14

### Inaccurate Employer Name

15

16 11. I did not know I was employed by UHS-Corona, Inc. My paystubs

17 te that my employer is Corona Regional Medical Center.

18 I declare under the penalty of perjury under the laws of the United States of

19 a that the foregoing is true and correct. Executed on February 10th, 2015, in

20 de, California.

21             NAME

22

23

24

25

26

27

28

# EXHIBIT 13

1 | BRIAN D. CHASE, Esq. (SBN 164109)
bchase@bisnarchase.com
2 | JERUSALEM F. BELIGAN, Esq. (SBN 211258)
jbeligan@bisnarchase.com
3 | BISNAR|CHASE LLP
1301 Dove Street, Suite 120
4 | Newport Beach, CA 92660
Telephone: (949) 752-2999
5 | Facsimile: (949) 752-2777

6 | Attorneys for Plaintiffs and Putative Class

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT COURT OF CALIFORNIA

10 | MARLYN SALI and DEBORAH | Case No. 14-CV-00985 PSG (JPRx)
SPRIGGS, on behalf of themselves, all
11 | others situated and the general public, | DECLARATION OF JESSICA
STEYERS-LUCENS IN SUPPORT OF
12 | Plaintiffs, | PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
13 | v.
| Judge: Hon. Philip S. Gutierrez
14 | | Crtrm: 880—Roybal
UNIVERSAL HEALTH SERVICES
15 | OF RANCHO SPRINGS, INC.;
UNIVERSAL HEALTH SERVICES
16 | OF PALMDALE, INC.; UHS-
CORONA, INC.; INLAND VALLEY
17 | MEDICAL CENTER; RANCHO
SPRINGS MEDICAL CENTER;
18 | PALMDALE REGIONAL MEDICAL
CENTER; TEMECULA VALLEY
19 | HOSPITAL; UHS OF DELAWARE,
INC.; and DOES 2 to 100, inclusive,
20
21 | Defendants.

22

23 | I, JESSICA STEYERS-LUCENS, declare:

24 |     1.    I am an adult, over 18-years old. I am a prospective class member

25 | in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26 | *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27 | States District Court—Central District Court of California. I have personal

28 | knowledge of the matters stated herein, and if called to testify about these facts, I

DECLARATION OF JESSICA STEYERS-LUCENS ISO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

Case 5:14-cv-00885-PSG-JPR Document 77-2 Filed 02/16/15 Page 63 of 134 Page ID #:2144

could and would do so in a competent and truthful manner.

## Background

2.    I am a former employee of Corona Regional Medical Center ("Corona") and worked for Corona as a Registered Nurse ("RN") from approximately June 2009 to January 2014.

3.    While employed at Corona, I worked an Alternative Workweek Schedule ("AWS"). I was regularly scheduled to work three 12-hour shifts a week. I clocked in and out for each shift and each meal break using my employee badge at a magnetic-strip reader located in my unit of the hospital. I was paid an hourly wage.

## "Rounding Time" Policy

4.    I was instructed by Corona that our mission is to deliver high quality service to our patients through regular attendance and promptness. I would usually and regularly arrive minutes before my scheduled shift and accurately clock in to receive briefing from nurses completing the prior shift. I would also regularly leave minutes after my scheduled shift to debrief the nurses relieving me. I was not aware that Corona was rounding my actual time punches to avoid overtime. I did not know that I was not being fully paid for all the regular and overtime hours I worked.

## "Flexing" Off Policy

5.    Corona has a policy of "flexing" off nurses before completing their AWS shift, or calling nurses before their shift to instruct them not to show up to work, due to low patient census. I have experienced both situations. I have been "flexed" off before completing my AWS shift, and I have been called before my scheduled shift and instructed not to show up for that particular shift.

6.    On the occasions I was called before my shift began and instructed not to show up to work due to low patient census, I was given two options. First,

**DECLARATION OF JESSICA STEYERS-LUCENS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1   I was told that if I wanted to get paid for the lost hours because I was "flexed"

2   off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3   compensate myself for the lost hours. Second, if I did not want to cash out my

4   PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5   Convenience Day ("HCD") to maintain my benefits; however, I would receive

6   no pay for that shift.

7          7.      On the occasions I reported to work and then told to go home before

8   completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9   due to low patient census. I was not told that I was entitled to overtime on

10  occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was

11  not told about "short-shift" penalties. The employee handbook provided to me

12  does not discuss short shifts or what I am entitled to when I am not provided a

13  full AWS shift. I was not told during my new hire process or new hire

14  orientation about short shifts and my entitlement to overtime if I am "flexed" off

15  after 8 hours of work, but before completing my AWS shift. I was not given any

16  written policies on short shifts or "short-shift" penalties. Corona did not make

17  me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not

18  believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19  work, but before completing my 12-hour shift.

20

21                              "Meal Waiver" Policy

22         8.      I had to participate in a new hire process prior to working at

23  Corona. During the new hire process, I was presented with a packet of

24  paperwork to sign, including a Meal Period Waiver.

25         9.      In addition, Corona characterized second meal breaks in a negative

26  and false light to deter me from wanting to take a second meal break. I was told

27  that for me to be entitled to a second meal I would have to work 13 hours. I did

28  not know that if I had not signed the Meal Period Waiver, I would be actually

**DECLARATION OF JESSICA STEYERS-LUCENS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

working only 12 hours with two 30-minute meal breaks. To put further pressure on me, I was told that all the nurses have signed the Meal Period Waiver and that I should sign it as well. I did not take a second meal during my employment with Corona.

### Lack of "Break" or "Relief" Nurses

10. I did not take rest breaks, or when I tried to take one it was interrupted, because I had to be continuously ready and able to assist and attend to my patients during my entire shift. My other colleagues in my unit are also assigned patients, and if they are too busy taking care of their patients or handling an emergency, I could not take a rest break or had to cut my break short to attend to my patients or emergencies. Corona does not have enough "Break" or "Relief" nurses to relieve me so I can take a 10-minute, uninterrupted break. This problem is compounded when Corona "flexes" off nurses in my unit due to low patient census. Corona would schedule "Break" or "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief" nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure nurses in each unit are provided with 10-minute, uninterrupted rest breaks. Therefore, I do not believe I was authorized or permitted to take 10-minute, uninterrupted rest breaks because I was never fully relieved of all of my duties. I had to constantly be on my toes, ready to respond to patient calls or emergencies.

### Inaccurate Employer Name

11. I did not know I was employed by UHS-Corona, Inc. My paystubs indicate that my employer is Corona Regional Medical Center.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 10th, 2015, in Alta Loma, California.

**DECLARATION OF JESSICA STEYERS-LUCENS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1 in my unit due to low patient census. Corona would schedule "Break" or

2 f" nurses only if other nurses volunteered to be a "Break" or "Relief"

3 Corona does not hire specific "Break" or "Relief" nurses to ensure

4 in each unit are provided with 10-minute, uninterrupted rest breaks.

5 fore, I do not believe I was authorized or permitted to take 10-minute,

6 rrupted rest breaks because I was never fully relieved of all of my duties.

7 to constantly be on my toes, ready to respond to patient calls or

8 encies.

9

### Inaccurate Employer Name

10 11.   I did not know I was employed by UHS-Corona, Inc. My paystubs

11 te that my employer is Corona Regional Medical Center.

12 I declare under the penalty of perjury under the laws of the United States of

13 a that the foregoing is true and correct. Executed on February 10th, 2015, in

14 ɔma, California.

15

16 NAME

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 14

BRIAN D. CHASE, Esq. (SBN 164109)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN, Esq. (SBN 211258)
jbeligan@bisnarchase.com
BISNAR|CHASE LLP
1301 Dove Street, Suite 120
Newport Beach, CA 92660
Telephone: (949) 752-2999
Facsimile: (949) 752-2777

Attorneys for Plaintiffs and Putative Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| MARLYN SALI and DEBORAH SPRIGGS, on behalf of themselves, all others situated and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSAL HEALTH SERVICES OF RANCHO SPRINGS, INC.; UNIVERSAL HEALTH SERVICES OF PALMDALE, INC.; UHS-CORONA, INC.; INLAND VALLEY MEDICAL CENTER; RANCHO SPRINGS MEDICAL CENTER; PALMDALE REGIONAL MEDICAL CENTER; TEMECULA VALLEY HOSPITAL; UHS OF DELAWARE, INC.; and DOES 2 to 100, inclusive, <br><br> Defendants. | Case No. 14-CV-00985 PSG (JPRx) <br><br> DECLARATION OF NATIVIDAD LACSON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION <br><br> Judge: Hon. Philip S. Gutierrez <br> Crtrm: 880—Roybal |

I, NATIVIDAD LACSON, declare:

1.     I am an adult, over 18-years old.  I am a prospective class member in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United States District Court—Central District Court of California.  I have personal knowledge of the matters stated herein, and if called to testify about these facts, I

DECLARATION OF NATIVIDAD LACSON ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

could and would do so in a competent and truthful manner.

## Background

2.    I am a former employee of Corona Regional Medical Center ("Corona") and worked for Corona as a Registered Nurse ("RN") for approximately a year.

3.    While employed at Corona, I worked an Alternative Workweek Schedule ("AWS"). I was regularly scheduled to work three 12-hour shifts a week. I clocked in and out for each shift and each meal break using my employee badge at a magnetic-strip reader located in my unit of the hospital. I was paid an hourly wage.

## "Rounding Time" Policy

4.    I was instructed by Corona that our mission is to deliver high quality service to our patients through regular attendance and promptness. I would usually and regularly arrive minutes before my scheduled shift and accurately clock in to receive briefing from nurses completing the prior shift. I would also regularly leave minutes after my scheduled shift to debrief the nurses relieving me. I was not aware that Corona was rounding my actual time punches to avoid overtime. I did not know that I was not being fully paid for all the regular and overtime hours I worked.

## "Flexing" Off Policy

5.    Corona has a policy of "flexing" off nurses before completing their AWS shift, or calling nurses before their shift to instruct them not to show up to work, due to low patient census. I have experienced both situations. I have been "flexed" off before completing my AWS shift, and I have been called before my scheduled shift and instructed not to show up for that particular shift.

6.    On the occasions I was called before my shift began and instructed not to show up to work due to low patient census, I was given two options. First,

1    I was told that if I wanted to get paid for the lost hours because I was "flexed"

2 off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3 compensate myself for the lost hours. Second, if I did not want to cash out my

4 PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5 Convenience Day ("HCD") to maintain my benefits; however, I would receive

6 no pay for that shift.

7       7. On the occasions I reported to work and then told to go home before

8 completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9 due to low patient census. I was not told that I was entitled to overtime on

10 occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was

11 not told about "short-shift" penalties. The employee handbook provided to me

12 does not discuss short shifts or what I am entitled to when I am not provided a

13 full AWS shift. I was not told during my new hire process or new hire

14 orientation about short shifts and my entitlement to overtime if I am "flexed" off

15 after 8 hours of work, but before completing my AWS shift. I was not given any

16 written policies on short shifts or "short-shift" penalties. Corona did not make

17 me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not

18 believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19 work, but before completing my 12-hour shift.

20

21                   "Meal Waiver" Policy

22       8. I had to participate in a new hire process prior to working at

23 Corona. During the new hire process, I was presented with a packet of

24 paperwork to sign, including a Meal Period Waiver. I was told that I had to fill

25 out and sign all of the documents as a condition of employment. If I did not fill

26 out and sign all of the documents, including the Meal Period Waiver, my hiring

27 process would be labeled "incomplete" and I could not work. I do not believe I

28 signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

**DECLARATION OF NATIVIDAD LACSON ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1   for Corona.

2       9.      In addition, Corona characterized second meal breaks in a negative

3   and false light to deter me from wanting to take a second meal break. I was told

4   that for me to be entitled to a second meal I would have to work 13 hours. I did

5   not know that if I had not signed the Meal Period Waiver, I would be actually

6   working only 12 hours with two 30-minute meal breaks. To put further pressure

7   on me, I was told that all the nurses have signed the Meal Period Waiver and

8   that I should sign it as well. I did not take a second meal during my

9   employment with Corona.

<u>Lack of "Break" or "Relief" Nurses</u>

10      10.     I did not take rest breaks, or when I tried to take one it was

11  interrupted, because I had to be continuously ready and able to assist and attend

12  to my patients during my entire shift. My other colleagues in my unit are also

13  assigned patients, and if they are too busy taking care of their patients or

14  handling an emergency, I could not take a rest break or had to cut my break

15  short to attend to my patients or emergencies. Corona does not have enough

16  "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

17  uninterrupted break. This problem is compounded when Corona "flexes" off

18  nurses in my unit due to low patient census. Corona would schedule "Break" or

19  "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

20  nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure

21  nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

22  Therefore, I do not believe I was authorized or permitted to take 10-minute,

23  uninterrupted rest breaks because I was never fully relieved of all of my duties.

24  I had to constantly be on my toes, ready to respond to patient calls or

25  emergencies.

<u>Inaccurate Employer Name</u>

Page 4
**DECLARATION OF NATIVIDAD LACSON ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

1 ed patients, and if they are too busy taking care of their patients or

2 ng an emergency, I could not take a rest break or had to cut my break

3 to attend to my patients or emergencies. Corona does not have enough

4 k" or "Relief" nurses to relieve me so I can take a 10-minute,

5 rrupted break. This problem is compounded when Corona "flexes" off

6 in my unit due to low patient census. Corona would schedule "Break" or

7 f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8 Corona does not hire specific "Break" or "Relief" nurses to ensure

9 in each unit are provided with 10-minute, uninterrupted rest breaks.

10 fore, I do not believe I was authorized or permitted to take 10-minute,

11 rrupted rest breaks because I was never fully relieved of all of my duties.

12 to constantly be on my toes, ready to respond to patient calls or

13 encies.

14

15 ### Inaccurate Employer Name

16 11. I did not know I was employed by UHS-Corona, Inc. My paystubs

17 te that my employer is Corona Regional Medical Center.

18 I declare under the penalty of perjury under the laws of the United States of

19 a that the foregoing is true and correct. Executed on February 9th, 2015, in

20 Valley, California.

21 _____
   NAME

22

23

24

25

26

27

28

EXHIBIT 15

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777

6  Attorneys for Plaintiffs and Putative Class

7

8              UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT COURT OF CALIFORNIA

10 | MARLYN SALI and DEBORAH          | Case No. 14-CV-00985 PSG (JPRx)
   | SPRIGGS, on behalf of themselves, all |
11 | others situated and the general public, | DECLARATION OF NATHANIEL
   |                                    | GARDUQUE IN SUPPORT OF
12 |          Plaintiffs,              | PLAINTIFFS' MOTION FOR CLASS
   |                                    | CERTIFICATION
13 | v.                                |
   |                                    | Judge:  Hon. Philip S. Gutierrez
14 | UNIVERSAL HEALTH SERVICES         | Crtrm:  880—Roybal
15 | OF RANCHO SPRINGS, INC.;          |
   | UNIVERSAL HEALTH SERVICES         |
16 | OF PALMDALE, INC.; UHS-           |
   | CORONA, INC.; INLAND VALLEY       |
17 | MEDICAL CENTER; RANCHO            |
   | SPRINGS MEDICAL CENTER;           |
18 | PALMDALE REGIONAL MEDICAL         |
   | CENTER; TEMECULA VALLEY           |
19 | HOSPITAL; UHS OF DELAWARE,        |
   | INC.; and DOES 2 to 100, inclusive, |
20 |                                    |
21 |          Defendants.              |

22

23      I, NATHANIEL GARDUQUE, declare:

24      1.     I am an adult, over 18-years old.  I am a prospective class member

25 in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26 *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27 States District Court—Central District Court of California.  I have personal

28 knowledge of the matters stated herein, and if called to testify about these facts, I

---

Page 1

DECLARATION OF NATHANIEL GARDUQUE ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

Case 5:14-cv-00985-PSG-JPR   Document 129-2   Filed 05/21/15   Page 124 of 157   Page ID
#:6995
Case 5:14-cv-00985-PSG-JPR   Document 79-2   Filed 02/16/15   Page 7 of 134   Page ID
#:2156

1    could and would do so in a competent and truthful manner.

2                          Background

3        2.    I am a former employee of Corona Regional Medical Center

4    ("Corona") and worked for Corona as a Registered Nurse ("RN") from

5    approximately 2013 to 2014.

6        3.    While employed at Corona, I worked an Alternative Workweek

7    Schedule ("AWS").  I was regularly scheduled to work three 12-hour shifts a

8    week.  I clocked in and out for each shift and each meal break using my

9    employee badge at a magnetic-strip reader located in my unit of the hospital.  I

10   was paid an hourly wage.

11                     "Rounding Time" Policy

12       4.    I was instructed by Corona that our mission is to deliver high

13   quality service to our patients through regular attendance and promptness. I

14   would usually and regularly arrive minutes before my scheduled shift and

15   accurately clock in to receive briefing from nurses completing the prior shift.  I

16   would also regularly leave minutes after my scheduled shift to debrief the nurses

17   relieving me. I was not aware that Corona was rounding my actual time punches

18   to avoid overtime.  I did not know that I was not being fully paid for all the

19   regular and overtime hours I worked.

20                      "Flexing" Off Policy

21

22       5.    Corona has a policy of "flexing" off nurses before completing their

23   AWS shift, or calling nurses before their shift to instruct them not to show up to

24   work, due to low patient census. I have experienced both situations. I have been

25   "flexed" off before completing my AWS shift, and I have been called before my

26   scheduled shift and instructed not to show up for that particular shift.

27       6.    On the occasions I was called before my shift began and instructed

28   not to show up to work due to low patient census, I was given two options.  First,

**Declaration of Nathaniel Garduque iso Plaintiffs' Motion for
Class Certification**

Case 5:14-cv-00985-PSG-JPR  Document 120-2  Filed 05/21/15  Page 125 of 157  Page ID
#:7000
Case 5:14-cv-00985-PSG-JPR  Document 79-2  Filed 02/16/15  Page 78 of 134  Page ID
#:2157

1    I was told that if I wanted to get paid for the lost hours because I was "flexed"

2    off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3    compensate myself for the lost hours.  Second, if I did not want to cash out my

4    PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5    Convenience Day ("HCD") to maintain my benefits; however, I would receive

6    no pay for that shift.

7         7.    On the occasions I reported to work and then told to go home before

8    completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9    due to low patient census.  I was not told that I was entitled to overtime on

10   occasions I worked over 8 hours but less than my scheduled 12-hour shift.  I was

11   not told about "short-shift" penalties.  The employee handbook provided to me

12   does not discuss short shifts or what I am entitled to when I am not provided a

13   full AWS shift.   I was not told during my new hire process or new hire

14   orientation about short shifts and my entitlement to overtime if I am "flexed" off

15   after 8 hours of work, but before completing my AWS shift.  I was not given any

16   written policies on short shifts or "short-shift" penalties.  Corona did not make

17   me fully aware of my entitlement to "short-shift" penalties.  Therefore, I do not

18   believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19   work, but before completing my 12-hour shift.

20

21                            "Meal Waiver" Policy

22        8.    I had to participate in a new hire process prior to working at

23   Corona.  During the new hire process, I was presented with a packet of

24   paperwork to sign, including a Meal Period Waiver.  I was told that I had to fill

25   out and sign all of the documents as a condition of employment.  If I did not fill

26   out and sign all of the documents, including the Meal Period Waiver, my hiring

27   process would be labeled "incomplete" and I could not work.  I do not believe I

28   signed the Meal Period Waiver voluntarily.  I had to sign it if I wanted to work

Case 5:14-cv-00985-PSG-JPR   Document 120-2   Filed 05/21/15   Page 126 of 157   Page ID
#:7001
Case 5:14-cv-00985-PSG-JPR   Document 1   Filed 02/16/15   Page 79 of 134   Page ID
#:2158

1   for Corona.

2       9.    In addition, Corona characterized second meal breaks in a negative

3   and false light to deter me from wanting to take a second meal break.  I was told

4   that for me to be entitled to a second meal I would have to work 13 hours.  I did

5   not know that if I had not signed the Meal Period Waiver, I would be actually

6   working only 12 hours with two 30-minute meal breaks.  To put further pressure

7   on me, I was told that all the nurses have signed the Meal Period Waiver and

8   that I should sign it as well.   I did not take a second meal during my

9   employment with Corona.

                    Lack of "Break" or "Relief" Nurses

10

11      10.   I did not take rest breaks, or when I tried to take one it was

12  interrupted, because I had to be continuously ready and able to assist and attend

13  to my patients during my entire shift.  My other colleagues in my unit are also

14  assigned patients, and if they are too busy taking care of their patients or

15  handling an emergency, I could not take a rest break or had to cut my break

16  short to attend to my patients or emergencies.  Corona does not have enough

17  "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

18  uninterrupted break.  This problem is compounded when Corona "flexes" off

19  nurses in my unit due to low patient census.  Corona would schedule "Break" or

20  "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

21  nurse.   Corona does not hire specific "Break" or "Relief" nurses to ensure

22  nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

23  Therefore, I do not believe I was authorized or permitted to take 10-minute,

24  uninterrupted rest breaks because I was never fully relieved of all of my duties.

25  I had to constantly be on my toes, ready to respond to patient calls or

26  emergencies.

27

28                    Inaccurate Employer Name

                    Page 4
DECLARATION OF NATHANIEL GARDUQUE ISO PLAINTIFFS' MOTION FOR
                    CLASS CERTIFICATION

1 ed patients, and if they are too busy taking care of their patients or

2 ng an emergency, I could not take a rest break or had to cut my break

3 to attend to my patients or emergencies. Corona does not have enough

4 k" or "Relief" nurses to relieve me so I can take a 10-minute,

5 rrupted break. This problem is compounded when Corona "flexes" off

6 , in my unit due to low patient census. Corona would schedule "Break" or

7 f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8 Corona does not hire specific "Break" or "Relief" nurses to ensure

9 in each unit are provided with 10-minute, uninterrupted rest breaks.

10 fore, I do not believe I was authorized or permitted to take 10-minute,

11 rrupted rest breaks because I was never fully relieved of all of my duties.

12 to constantly be on my toes, ready to respond to patient calls or

13 encies.

14

### Inaccurate Employer Name

15

16 11.   I did not know I was employed by UHS-Corona, Inc.  My paystubs

17 te that my employer is Corona Regional Medical Center.

18 I declare under the penalty of perjury under the laws of the United States of

19 :a that the foregoing is true and correct. Executed on February 10th, 2015, in

20 gas, Nevada.

21 NAME

22

23

24

25

26

27

28

# EXHIBIT 16

Case 5:14-cv-00985-PSG-JPR   Document 77   Filed 02/16/15   Page 82 of 134   Page ID
Case 5:14-cv-00985-PSG-JPR   Document 120-2   Filed 05/21/15   Page 129 of 157   Page ID
#:7004

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777

6  Attorneys for Plaintiffs and Putative Class

7
                    UNITED STATES DISTRICT COURT
8
                CENTRAL DISTRICT COURT OF CALIFORNIA
9

10  MARLYN SALI and DEBORAH          Case No. 14-CV-00985 PSG (JPRx)
    SPRIGGS, on behalf of themselves, all
11  others situated and the general public,   DECLARATION OF MICHELLE
                                              ARGUSON IN SUPPORT OF
12              Plaintiffs,                    PLAINTIFFS' MOTION FOR CLASS
                                              CERTIFICATION
13
    v.                                        Judge:  Hon. Philip S. Gutierrez
14                                            Crtrm:  880—Roybal
    UNIVERSAL HEALTH SERVICES
15  OF RANCHO SPRINGS, INC.;
    UNIVERSAL HEALTH SERVICES
16  OF PALMDALE, INC.; UHS-
    CORONA, INC.; INLAND VALLEY
17  MEDICAL CENTER; RANCHO
    SPRINGS MEDICAL CENTER;
18  PALMDALE REGIONAL MEDICAL
    CENTER; TEMECULA VALLEY
19  HOSPITAL; UHS OF DELAWARE,
    INC.; and DOES 2 to 100, inclusive,
20
                Defendants.
21

22

23      I, MICHELLE ARGUSON, declare:

24          1.      I am an adult, over 18-years old.  I am a prospective class member

25  in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26  *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27  States District Court—Central District Court of California.  I have personal

28  knowledge of the matters stated herein, and if called to testify about these facts, I

                                    Page 1

Case 5:14-cv-00985-PSG-JPR  Document 77  Filed 02/16/15  Page 83 of 134  Page ID
Case 5:14-cv-00985-PSG-JPR  Document #2162  Filed 05/21/15  Page 130 of 157  Page ID
#:7005

1    could and would do so in a competent and truthful manner.

2                                    Background

3         2.    I am a former employee of Corona Regional Medical Center

4    ("Corona") and worked for Corona as a Registered Nurse ("RN") from

5    approximately September 2010 to September 2011.

6         3.    While employed at Corona, I worked an Alternative Workweek

7    Schedule ("AWS").  I was regularly scheduled to work three 12-hour shifts a

8    week.  I clocked in and out for each shift and each meal break using my

9    employee badge at a magnetic-strip reader located in my unit of the hospital.  I

10   was paid an hourly wage.

11                              "Rounding Time" Policy

12        4.    I was instructed by Corona that our mission is to deliver high

13   quality service to our patients through regular attendance and promptness.  I

14   would usually and regularly arrive minutes before my scheduled shift and

15   accurately clock in to receive briefing from nurses completing the prior shift.  I

16   would also regularly leave minutes after my scheduled shift to debrief the nurses

17   relieving me.  I was not aware that Corona was rounding my actual time punches

18   to avoid overtime.  I did not know that I was not being fully paid for all the

19   regular and overtime hours I worked.

20                               "Flexing" Off Policy

21        5.    Corona has a policy of "flexing" off nurses before completing their

22   AWS shift, or calling nurses before their shift to instruct them not to show up to

23   work, due to low patient census. I have experienced both situations. I have been

24   "flexed" off before completing my AWS shift, and I have been called before my

25   scheduled shift and instructed not to show up for that particular shift.

26        6.    On the occasions I was called before my shift began and instructed

27   not to show up to work due to low patient census, I was given two options. First,

DECLARATION OF MICHELLE ARGUSON ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

1  I was told that if I wanted to get paid for the lost hours because I was "flexed"

2  off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3  compensate myself for the lost hours.  Second, if I did not want to cash out my

4  PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5  Convenience Day ("HCD") to maintain my benefits; however, I would receive

6  no pay for that shift.

7      7.   On the occasions I reported to work and then told to go home before

8  completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9  due to low patient census.  I was not told that I was entitled to overtime on

10  occasions I worked over 8 hours but less than my scheduled 12-hour shift.  I was

11  not told about "short-shift" penalties.  The employee handbook provided to me

12  does not discuss short shifts or what I am entitled to when I am not provided a

13  full AWS shift.  I was not told during my new hire process or new hire

14  orientation about short shifts and my entitlement to overtime if I am "flexed" off

15  after 8 hours of work, but before completing my AWS shift.  I was not given any

16  written policies on short shifts or "short-shift" penalties.  Corona did not make

17  me fully aware of my entitlement to "short-shift" penalties.  Therefore, I do not

18  believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19  work, but before completing my 12-hour shift.

20  

21                                        "Meal Waiver" Policy

22      8.   I had to participate in a new hire process prior to working at

23  Corona.  During the new hire process, I was presented with a packet of

24  paperwork to sign, including a Meal Period Waiver.  I was told that I had to fill

25  out and sign all of the documents as a condition of employment.  If I did not fill

26  out and sign all of the documents, including the Meal Period Waiver, my hiring

27  process would be labeled "incomplete" and I could not work.  I do not believe I

28  signed the Meal Period Waiver voluntarily.  I had to sign it if I wanted to work

DECLARATION OF MICHELLE ARGUSON ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  for Corona.

2       9.    In addition, Corona characterized second meal breaks in a negative

3  and false light to deter me from wanting to take a second meal break. I was told

4  that for me to be entitled to a second meal I would have to work 13 hours. I did

5  not know that if I had not signed the Meal Period Waiver, I would be actually

6  working only 12 hours with two 30-minute meal breaks. To put further pressure

7  on me, I was told that all the nurses have signed the Meal Period Waiver and

8  that I should sign it as well. I did not take a second meal during my

9  employment with Corona.

### Lack of "Break" or "Relief" Nurses

10      10.    I did not take rest breaks, or when I tried to take one it was

11

12  interrupted, because I had to be continuously ready and able to assist and attend

13  to my patients during my entire shift. My other colleagues in my unit are also

14  assigned patients, and if they are too busy taking care of their patients or

15  handling an emergency, I could not take a rest break or had to cut my break

16  short to attend to my patients or emergencies. Corona does not have enough

17  "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

18  uninterrupted break. This problem is compounded when Corona "flexes" off

19  nurses in my unit due to low patient census. Corona would schedule "Break" or

20  "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

21  nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure

22  nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

23  Therefore, I do not believe I was authorized or permitted to take 10-minute,

24  uninterrupted rest breaks because I was never fully relieved of all of my duties.

25  I had to constantly be on my toes, ready to respond to patient calls or

26  emergencies.

27

28  ### Inaccurate Employer Name

**DECLARATION OF MICHELLE ARGUSON ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1  ed patients, and if they are too busy taking care of their patients or

2  ng an emergency, I could not take a rest break or had to cut my break

3  to attend to my patients or emergencies. Corona does not have enough

4  k" or "Relief" nurses to relieve me so I can take a 10-minute,

5  rrupted break. This problem is compounded when Corona "flexes" off

6  , in my unit due to low patient census. Corona would schedule "Break" or

7  f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8   Corona does not hire specific "Break" or "Relief" nurses to ensure

9   in each unit are provided with 10-minute, uninterrupted rest breaks.

10  fore, I do not believe I was authorized or permitted to take 10-minute,

11  rrupted rest breaks because I was never fully relieved of all of my duties.

12   to constantly be on my toes, ready to respond to patient calls or

13  encies.

14

15                    Inaccurate Employer Name

16  11.    I did not know I was employed by UHS-Corona, Inc. My paystubs

17  te that my employer is Corona Regional Medical Center.

18  I declare under the penalty of perjury under the laws of the United States of

19  a that the foregoing is true and correct. Executed on February 6th, 2015, in

20  Cucamonga, California.

21                              _____
                                NAME

22

23

24

25

26

27

28

# EXHIBIT 17

1    BRIAN D. CHASE, Esq. (SBN 164109)
     bchase@bisnarchase.com
2    JERUSALEM F. BELIGAN, Esq. (SBN 211258)
     jbeligan@bisnarchase.com
3    BISNAR|CHASE LLP
     1301 Dove Street, Suite 120
4    Newport Beach, CA 92660
     Telephone: (949) 752-2999
5    Facsimile: (949) 752-2777

6    Attorneys for Plaintiffs and Putative Class

7

8             UNITED STATES DISTRICT COURT

9         CENTRAL DISTRICT COURT OF CALIFORNIA

10    MARLYN SALI and DEBORAH      Case No. 14-CV-00985 PSG (JPRx)
     SPRIGGS, on behalf of themselves, all
11    others situated and the general public,    DECLARATION OF TIFFANI
                                POOLE IN SUPPORT OF
12           Plaintiffs,             PLAINTIFFS' MOTION FOR CLASS
                                CERTIFICATION
13    v.
                                Judge:   Hon. Philip S. Gutierrez
14                                 Crtrm:   880—Roybal
     UNIVERSAL HEALTH SERVICES
15    OF RANCHO SPRINGS, INC.;
     UNIVERSAL HEALTH SERVICES
16    OF PALMDALE, INC.; UHS-
     CORONA, INC.; INLAND VALLEY
17    MEDICAL CENTER; RANCHO
     SPRINGS MEDICAL CENTER;
18    PALMDALE REGIONAL MEDICAL
     CENTER; TEMECULA VALLEY
19    HOSPITAL; UHS OF DELAWARE,
     INC.; and DOES 2 to 100, inclusive,
20
21           Defendants.

22

23        I, TIFFANI POOLE, declare:

24          1.     I am an adult, over 18-years old. I am a prospective class member

25    in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26    *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27    States District Court—Central District Court of California. I have personal

28    knowledge of the matters stated herein, and if called to testify about these facts, I

1 could and would do so in a competent and truthful manner.

## Background

2.      I am a former employee of Corona Regional Medical Center ("Corona") and worked for Corona as a Registered Nurse ("RN") from approximately May 2012 to November 2013.

3.      While employed at Corona, I worked an Alternative Workweek Schedule ("AWS"). I was regularly scheduled to work three 12-hour shifts a week. I clocked in and out for each shift and each meal break using my employee badge at a magnetic-strip reader located in my unit of the hospital. I was paid an hourly wage.

## "Rounding Time" Policy

4.      I was instructed by Corona that our mission is to deliver high quality service to our patients through regular attendance and promptness. I would usually and regularly arrive minutes before my scheduled shift and accurately clock in to receive briefing from nurses completing the prior shift. I would also regularly leave minutes after my scheduled shift to debrief the nurses relieving me. I was not aware that Corona was rounding my actual time punches to avoid overtime. I did not know that I was not being fully paid for all the regular and overtime hours I worked.

## "Flexing" Off Policy

5.      Corona has a policy of "flexing" off nurses before completing their AWS shift, or calling nurses before their shift to instruct them not to show up to work, due to low patient census. I have experienced both situations. I have been "flexed" off before completing my AWS shift, and I have been called before my scheduled shift and instructed not to show up for that particular shift.

6.      On the occasions I was called before my shift began and instructed not to show up to work due to low patient census, I was given two options. First,

**DECLARATION OF TIFFANI POOLE ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Case 5:14-cv-00985-PSG-JPR Document 77-2 Filed 02/26/15 Page 37 of 45 Page ID
#:2169

1    I was told that if I wanted to get paid for the lost hours because I was "flexed"
2    off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to
3    compensate myself for the lost hours.  Second, if I did not want to cash out my
4    PTO or if I had no PTO to use, I could claim the lost shift as a Hospital
5    Convenience Day ("HCD") to maintain my benefits; however, I would receive
6    no pay for that shift.

7          7.    On the occasions I reported to work and then told to go home before
8    completing my AWS shift, I was usually and regularly "flexed" off involuntarily
9    due to low patient census.  I was not told that I was entitled to overtime on
10   occasions I worked over 8 hours but less than my scheduled 12-hour shift.  I was
11   not told about "short-shift" penalties.  The employee handbook provided to me
12   does not discuss short shifts or what I am entitled to when I am not provided a
13   full AWS shift.  I was not told during my new hire process or new hire
14   orientation about short shifts and my entitlement to overtime if I am "flexed" off
15   after 8 hours of work, but before completing my AWS shift.  I was not given any
16   written policies on short shifts or "short-shift" penalties.  Corona did not make
17   me fully aware of my entitlement to "short-shift" penalties.  Therefore, I do not
18   believe I was paid overtime for all the hours I was "flexed" off after 8 hours of
19   work, but before completing my 12-hour shift.
20

21                        "Meal Waiver" Policy

22         8.    I had to participate in a new hire process prior to working at
23   Corona.  During the new hire process, I was presented with a packet of
24   paperwork to sign, including a Meal Period Waiver.  I was told that I had to fill
25   out and sign all of the documents as a condition of employment.  If I did not fill
26   out and sign all of the documents, including the Meal Period Waiver, my hiring
27   process would be labeled "incomplete" and I could not work.  I do not believe I
28   signed the Meal Period Waiver voluntarily.  I had to sign it if I wanted to work

Page 3
**DECLARATION OF TIFFANI POOLE ISO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

1    for Corona.

2        9.    In addition, Corona characterized second meal breaks in a negative

3    and false light to deter me from wanting to take a second meal break. I was told

4    that for me to be entitled to a second meal I would have to work 13 hours. I did

5    not know that if I had not signed the Meal Period Waiver, I would be actually

6    working only 12 hours with two 30-minute meal breaks. To put further pressure

7    on me, I was told that all the nurses have signed the Meal Period Waiver and

8    that I should sign it as well. I did not take a second meal during my

9    employment with Corona.

                        Lack of "Break" or "Relief" Nurses

10       10.    I did not take rest breaks, or when I tried to take one it was

11   interrupted, because I had to be continuously ready and able to assist and attend

12   to my patients during my entire shift. My other colleagues in my unit are also

13   assigned patients, and if they are too busy taking care of their patients or

14   handling an emergency, I could not take a rest break or had to cut my break

15   short to attend to my patients or emergencies. Corona does not have enough

16   "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

17   uninterrupted break. This problem is compounded when Corona "flexes" off

18   nurses in my unit due to low patient census. Corona would schedule "Break" or

19   "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

20   nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure

21   nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

22   Therefore, I do not believe I was authorized or permitted to take 10-minute,

23   uninterrupted rest breaks because I was never fully relieved of all of my duties.

24   I had to constantly be on my toes, ready to respond to patient calls or

25   emergencies.

                        Inaccurate Employer Name

**DECLARATION OF TIFFANI POOLE ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1 ed patients, and if they are too busy taking care of their patients or

2 ng an emergency, I could not take a rest break or had to cut my break

3 to attend to my patients or emergencies. Corona does not have enough

4 k" or "Relief" nurses to relieve me so I can take a 10-minute,

5 rrupted break. This problem is compounded when Corona "flexes" off

6 , in my unit due to low patient census. Corona would schedule "Break" or

7 f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8  Corona does not hire specific "Break" or "Relief" nurses to ensure

9  in each unit are provided with 10-minute, uninterrupted rest breaks.

10 fore, I do not believe I was authorized or permitted to take 10-minute,

11 rrupted rest breaks because I was never fully relieved of all of my duties.

12  to constantly be on my toes, ready to respond to patient calls or

13 encies.

14

### Inaccurate Employer Name

15

16 11.    I did not know I was employed by UHS-Corona, Inc. My paystubs

17 te that my employer is Corona Regional Medical Center.

18 I declare under the penalty of perjury under the laws of the United States of

19 a that the foregoing is true and correct. Executed on February 9th, 2015, in

20 ada, California.

21 _____
   NAME

22

23

24

25

26

27

28

# EXHIBIT 18

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777

6  Attorneys for Plaintiffs and Putative Class

7
8  UNITED STATES DISTRICT COURT

9  CENTRAL DISTRICT COURT OF CALIFORNIA

10 MARLYN SALI and DEBORAH            Case No. 14-CV-00985 PSG (JPRx)
   SPRIGGS, on behalf of themselves, all
11 others situated and the general public,   DECLARATION OF RAYMOND
                                             BRADLEY IN SUPPORT OF
12          Plaintiffs,                       PLAINTIFFS' MOTION FOR CLASS
                                             CERTIFICATION
13
   v.
14                                           Judge:  Hon. Philip S. Gutierrez
   UNIVERSAL HEALTH SERVICES           Crtrm:  880—Roybal
15 OF RANCHO SPRINGS, INC.;
   UNIVERSAL HEALTH SERVICES
16 OF PALMDALE, INC.; UHS-
   CORONA, INC.; INLAND VALLEY
17 MEDICAL CENTER; RANCHO
   SPRINGS MEDICAL CENTER;
18 PALMDALE REGIONAL MEDICAL
   CENTER; TEMECULA VALLEY
19 HOSPITAL; UHS OF DELAWARE,
   INC.; and DOES 2 to 100, inclusive,
20
            Defendants.
21

22

23         I, RAYMOND BRADLEY, declare:

24         1.     I am an adult, over 18-years old.  I am a prospective class member

25 in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*

26 *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27 States District Court—Central District Court of California.  I have personal

28 knowledge of the matters stated herein, and if called to testify about these facts, I

DECLARATION OF RAYMOND BRADLEY ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

1    could and would do so in a competent and truthful manner.

2                            Background

3       2.    I am a former employee of Corona Regional Medical Center

4    ("Corona") and worked for Corona as a Registered Nurse ("RN") from

5    approximately November 2009 to June 2011.

6       3.    While employed at Corona, I worked an Alternative Workweek

7    Schedule ("AWS").  I was regularly scheduled to work three 12-hour shifts a

8    week.  I clocked in and out for each shift and each meal break using my

9    employee badge at a magnetic-strip reader located in my unit of the hospital.  I

10   was paid an hourly wage.

11                        "Rounding Time" Policy

12      4.    I was instructed by Corona that our mission is to deliver high

13   quality service to our patients through regular attendance and promptness. I

14   would usually and regularly arrive minutes before my scheduled shift and

15   accurately clock in to receive briefing from nurses completing the prior shift.  I

16   would also regularly leave minutes after my scheduled shift to debrief the nurses

17   relieving me.  I was not aware that Corona was rounding my actual time punches

18   to avoid overtime.  I did not know that I was not being fully paid for all the

19   regular and overtime hours I worked.

20

21                        "Flexing" Off Policy

22      5.    Corona has a policy of "flexing" off nurses before completing their

23   AWS shift, or calling nurses before their shift to instruct them not to show up to

24   work, due to low patient census.  I have experienced both situations.  I have been

25   "flexed" off before completing my AWS shift, and I have been called before my

26   scheduled shift and instructed not to show up for that particular shift.

27      6.    On the occasions I was called before my shift began and instructed

28   not to show up to work due to low patient census, I was given two options.  First,

**DECLARATION OF RAYMOND BRADLEY ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

1    I was told that if I wanted to get paid for the lost hours because I was "flexed"

2    off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3    compensate myself for the lost hours. Second, if I did not want to cash out my

4    PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5    Convenience Day ("HCD") to maintain my benefits; however, I would receive

6    no pay for that shift.

7         7.     On the occasions I reported to work and then told to go home before

8    completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9    due to low patient census. I was not told that I was entitled to overtime on

10   occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was

11   not told about "short-shift" penalties. The employee handbook provided to me

12   does not discuss short shifts or what I am entitled to when I am not provided a

13   full AWS shift. I was not told during my new hire process or new hire

14   orientation about short shifts and my entitlement to overtime if I am "flexed" off

15   after 8 hours of work, but before completing my AWS shift. I was not given any

16   written policies on short shifts or "short-shift" penalties. Corona did not make

17   me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not

18   believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19   work, but before completing my 12-hour shift.

20

21   <center>"Meal Waiver" Policy</center>

22        8.     I had to participate in a new hire process prior to working at

23   Corona. During the new hire process, I was presented with a packet of

24   paperwork to sign, including a Meal Period Waiver. I was told that I had to fill

25   out and sign all of the documents as a condition of employment. If I did not fill

26   out and sign all of the documents, including the Meal Period Waiver, my hiring

27   process would be labeled "incomplete" and I could not work. I do not believe I

28   signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

DECLARATION OF RAYMOND BRADLEY ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

1    for Corona.

2        9.    In addition, Corona characterized second meal breaks in a negative

3    and false light to deter me from wanting to take a second meal break. I was told

4    that for me to be entitled to a second meal I would have to work 13 hours. I did

5    not know that if I had not signed the Meal Period Waiver, I would be actually

6    working only 12 hours with two 30-minute meal breaks. To put further pressure

7    on me, I was told that all the nurses have signed the Meal Period Waiver and

8    that I should sign it as well.    I did not take a second meal during my

9    employment with Corona.

                        Lack of "Break" or "Relief" Nurses

10       10.   I did not take rest breaks, or when I tried to take one it was

11   interrupted, because I had to be continuously ready and able to assist and attend

12   to my patients during my entire shift. My other colleagues in my unit are also

13   assigned patients, and if they are too busy taking care of their patients or

14   handling an emergency, I could not take a rest break or had to cut my break

15   short to attend to my patients or emergencies. Corona does not have enough

16   "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

17   uninterrupted break. This problem is compounded when Corona "flexes" off

18   nurses in my unit due to low patient census. Corona would schedule "Break" or

19   "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

20   nurse.   Corona does not hire specific "Break" or "Relief" nurses to ensure

21   nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

22   Therefore, I do not believe I was authorized or permitted to take 10-minute,

23   uninterrupted rest breaks because I was never fully relieved of all of my duties.

24   I had to constantly be on my toes, ready to respond to patient calls or

25   emergencies.

                              Inaccurate Employer Name

26

27

28

DECLARATION OF RAYMOND BRADLEY ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

1 ed patients, and if they are too busy taking care of their patients or

2 ng an emergency, I could not take a rest break or had to cut my break

3 to attend to my patients or emergencies. Corona does not have enough

4 k" or "Relief" nurses to relieve me so I can take a 10-minute,

5 rrupted break. This problem is compounded when Corona "flexes" off

6 , in my unit due to low patient census. Corona would schedule "Break" or

7 f" nurses only if other nurses volunteered to be a "Break" or "Relief"

8 Corona does not hire specific "Break" or "Relief" nurses to ensure

9 in each unit are provided with 10-minute, uninterrupted rest breaks.

10 fore, I do not believe I was authorized or permitted to take 10-minute,

11 rrupted rest breaks because I was never fully relieved of all of my duties.

12 to constantly be on my toes, ready to respond to patient calls or

13 encies.

14

15 **Inaccurate Employer Name**

16 11. I did not know I was employed by UHS-Corona, Inc. My paystubs

17 te that my employer is Corona Regional Medical Center.

18 I declare under the penalty of perjury under the laws of the United States of

19 a that the foregoing is true and correct. Executed on February 6th, 2015, in

20 geles, California.

21

22

23

24

25

26

27

28

# EXHIBIT 19

1   BRIAN D. CHASE, Esq. (SBN 164109)
    bchase@bisnarchase.com
2   JERUSALEM F. BELIGAN, Esq. (SBN 211258)
    jbeligan@bisnarchase.com
3   BISNAR|CHASE LLP
    1301 Dove Street, Suite 120
4   Newport Beach, CA 92660
    Telephone: (949) 752-2999
5   Facsimile: (949) 752-2777

6   Attorneys for Plaintiffs and Putative Class

7

8               UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT COURT OF CALIFORNIA

10  MARLYN SALI and DEBORAH            Case No. 14-CV-00985 PSG (JPRx)
    SPRIGGS, on behalf of themselves, all
11  others situated and the general public,   **DECLARATION OF MARIA
                                              HERMOSILLA IN SUPPORT OF
12              Plaintiffs,                    PLAINTIFFS' MOTION FOR CLASS
                                              CERTIFICATION**
13  v.
                                              Judge:  Hon. Philip S. Gutierrez
14  UNIVERSAL HEALTH SERVICES           Crtrm:  880—Roybal
15  OF RANCHO SPRINGS, INC.;
    UNIVERSAL HEALTH SERVICES
16  OF PALMDALE, INC.; UHS-
    CORONA, INC.; INLAND VALLEY
17  MEDICAL CENTER; RANCHO
    SPRINGS MEDICAL CENTER;
18  PALMDALE REGIONAL MEDICAL
    CENTER; TEMECULA VALLEY
19  HOSPITAL; UHS OF DELAWARE,
    INC.; and DOES 2 to 100, inclusive,
20
                Defendants.
21

22

23          I, MARIA HERMOSILLA, declare:

24          1.    I am an adult, over 18-years old.  I am a prospective class member

25  in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho

26  Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United

27  States District Court—Central District Court of California.  I have personal

28  knowledge of the matters stated herein, and if called to testify about these facts, I

**DECLARATION OF MARIA HERMOSILLA ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

1    could and would do so in a competent and truthful manner.

2                                   Background

3        2.      I am a former employee of Corona Regional Medical Center

4 ("Corona") and worked for Corona as a Registered Nurse ("RN") from

5 approximately December 2007 to April 2014.

6        3.      While employed at Corona, I worked an Alternative Workweek

7 Schedule ("AWS"). I was regularly scheduled to work three 12-hour shifts a

8 week. I clocked in and out for each shift and each meal break using my

9 employee badge at a magnetic-strip reader located in my unit of the hospital. I

10 was paid an hourly wage.

11                               "Rounding Time" Policy

12        4.      I was instructed by Corona that our mission is to deliver high

13 quality service to our patients through regular attendance and promptness. I

14 would usually and regularly arrive minutes before my scheduled shift and

15 accurately clock in to receive briefing from nurses completing the prior shift. I

16 would also regularly leave minutes after my scheduled shift to debrief the nurses

17 relieving me. I was not aware that Corona was rounding my actual time punches

18 to avoid overtime. I did not know that I was not being fully paid for all the

19 regular and overtime hours I worked.

20

21                               "Flexing" Off Policy

22        5.      Corona has a policy of "flexing" off nurses before completing their

23 AWS shift, or calling nurses before their shift to instruct them not to show up to

24 work, due to low patient census. I have experienced both situations. I have been

25 "flexed" off before completing my AWS shift, and I have been called before my

26 scheduled shift and instructed not to show up for that particular shift.

27        6.      On the occasions I was called before my shift began and instructed

28 not to show up to work due to low patient census, I was given two options. First,

**DECLARATION OF MARIA HERMOSILLA ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

1  I was told that if I wanted to get paid for the lost hours because I was "flexed"

2  off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to

3  compensate myself for the lost hours. Second, if I did not want to cash out my

4  PTO or if I had no PTO to use, I could claim the lost shift as a Hospital

5  Convenience Day ("HCD") to maintain my benefits; however, I would receive

6  no pay for that shift.

7       7.    On the occasions I reported to work and then told to go home before

8  completing my AWS shift, I was usually and regularly "flexed" off involuntarily

9  due to low patient census. I was not told that I was entitled to overtime on

10  occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was

11  not told about "short-shift" penalties. The employee handbook provided to me

12  does not discuss short shifts or what I am entitled to when I am not provided a

13  full AWS shift. I was not told during my new hire process or new hire

14  orientation about short shifts and my entitlement to overtime if I am "flexed" off

15  after 8 hours of work, but before completing my AWS shift. I was not given any

16  written policies on short shifts or "short-shift" penalties. Corona did not make

17  me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not

18  believe I was paid overtime for all the hours I was "flexed" off after 8 hours of

19  work, but before completing my 12-hour shift.

20

21  <center>"Meal Waiver" Policy</center>

22       8.    I had to participate in a new hire process prior to working at

23  Corona. During the new hire process, I was presented with a packet of

24  paperwork to sign, including a Meal Period Waiver. I was told that I had to fill

25  out and sign all of the documents as a condition of employment. If I did not fill

26  out and sign all of the documents, including the Meal Period Waiver, my hiring

27  process would be labeled "incomplete" and I could not work. I do not believe I

28  signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

**DECLARATION OF MARIA HERMOSILLA ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

for Corona.

9. In addition, Corona characterized second meal breaks in a negative and false light to deter me from wanting to take a second meal break. I was told that for me to be entitled to a second meal I would have to work 13 hours. I did not know that if I had not signed the Meal Period Waiver, I would be actually working only 12 hours with two 30-minute meal breaks. To put further pressure on me, I was told that all the nurses have signed the Meal Period Waiver and that I should sign it as well. I did not take a second meal during my employment with Corona.

### Lack of "Break" or "Relief" Nurses

10. I did not take rest breaks, or when I tried to take one it was interrupted, because I had to be continuously ready and able to assist and attend to my patients during my entire shift. My other colleagues in my unit are also assigned patients, and if they are too busy taking care of their patients or handling an emergency, I could not take a rest break or had to cut my break short to attend to my patients or emergencies. Corona does not have enough "Break" or "Relief" nurses to relieve me so I can take a 10-minute, uninterrupted break. This problem is compounded when Corona "flexes" off nurses in my unit due to low patient census. Corona would schedule "Break" or "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief" nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure nurses in each unit are provided with 10-minute, uninterrupted rest breaks. Therefore, I do not believe I was authorized or permitted to take 10-minute, uninterrupted rest breaks because I was never fully relieved of all of my duties. I had to constantly be on my toes, ready to respond to patient calls or emergencies.

### Inaccurate Employer Name

DECLARATION OF MARIA HERMOSILLA ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

11. I did not know I was employed by UHS-Corona, Inc. My paystubs indicate that my employer is Corona Regional Medical Center.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 13th, 2015, in Lake Elsinore, California.

MARIA HERMOSILLA

DECLARATION OF MARIA HERMOSILLA ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

EXHIBIT 20

1  BRIAN D. CHASE, Esq. (SBN 164109)
   bchase@bisnarchase.com
2  JERUSALEM F. BELIGAN, Esq. (SBN 211258)
   jbeligan@bisnarchase.com
3  BISNAR|CHASE LLP
   1301 Dove Street, Suite 120
4  Newport Beach, CA 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777
6  Attorneys for Plaintiffs and Putative Class
7
8              UNITED STATES DISTRICT COURT
9         CENTRAL DISTRICT COURT OF CALIFORNIA

10 MARLYN SALI and DEBORAH          Case No. 14-CV-00985 PSG (JPRx)
   SPRIGGS, on behalf of themselves, all
11 others situated and the general public,   DECLARATION OF FILIPINAS
                                             FERNANDEZ IN SUPPORT OF
12              Plaintiffs,                   PLAINTIFFS' MOTION FOR CLASS
                                             CERTIFICATION
13 v.
                                             Judge: Hon. Philip S. Gutierrez
14 UNIVERSAL HEALTH SERVICES        Crtrm: 880—Roybal
15 OF RANCHO SPRINGS, INC.;
   UNIVERSAL HEALTH SERVICES
16 OF PALMDALE, INC.; UHS-
   CORONA, INC.; INLAND VALLEY
17 MEDICAL CENTER; RANCHO
   SPRINGS MEDICAL CENTER;
18 PALMDALE REGIONAL MEDICAL
   CENTER; TEMECULA VALLEY
19 HOSPITAL; UHS OF DELAWARE,
   INC.; and DOES 2 to 100, inclusive,
20
                Defendants.
21
22
23      I, FILIPINAS FERNANDEZ, declare:
24      1.      I am an adult, over 18-years old. I am a prospective class member
25 in the case of *Marilyn Sali, et al. v. Universal Health Services of Rancho*
26 *Springs, Inc., et al.*, Case no. 14-CV-00985 PSG (JPRx), pending in the United
27 States District Court—Central District Court of California. I have personal
28 knowledge of the matters stated herein, and if called to testify about these facts, I

Page 1

DECLARATION OF FILIPINAS FERNANDEZ ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

1   could and would do so in a competent and truthful manner.

## Background

2.      I am a former employee of Corona Regional Medical Center ("Corona") and worked for Corona as a Registered Nurse ("RN") from approximately October 1990 to December 2013.

3.      While employed at Corona, I worked an Alternative Workweek Schedule ("AWS"). I was regularly scheduled to work three 12-hour shifts a week. I clocked in and out for each shift and each meal break using my employee badge at a magnetic-strip reader located in my unit of the hospital. I was paid an hourly wage.

## "Rounding Time" Policy

4.      I was instructed by Corona that our mission is to deliver high quality service to our patients through regular attendance and promptness. I would usually and regularly arrive minutes before my scheduled shift and accurately clock in to receive briefing from nurses completing the prior shift. I would also regularly leave minutes after my scheduled shift to debrief the nurses relieving me. I was not aware that Corona was rounding my actual time punches to avoid overtime. I did not know that I was not being fully paid for all the regular and overtime hours I worked.

## "Flexing" Off Policy

5.      Corona has a policy of "flexing" off nurses before completing their AWS shift, or calling nurses before their shift to instruct them not to show up to work, due to low patient census. I have experienced both situations. I have been "flexed" off before completing my AWS shift, and I have been called before my scheduled shift and instructed not to show up for that particular shift.

6.      On the occasions I was called before my shift began and instructed not to show up to work due to low patient census, I was given two options. First,

1   I was told that if I wanted to get paid for the lost hours because I was "flexed"
2   off, I could cash out my earned Paid Time Off ("PTO") and use my own PTO to
3   compensate myself for the lost hours. Second, if I did not want to cash out my
4   PTO or if I had no PTO to use, I could claim the lost shift as a Hospital
5   Convenience Day ("HCD") to maintain my benefits; however, I would receive
6   no pay for that shift.
7      7.      On the occasions I reported to work and then told to go home before
8   completing my AWS shift, I was usually and regularly "flexed" off involuntarily
9   due to low patient census. I was not told that I was entitled to overtime on
10  occasions I worked over 8 hours but less than my scheduled 12-hour shift. I was
11  not told about "short-shift" penalties. The employee handbook provided to me
12  does not discuss short shifts or what I am entitled to when I am not provided a
13  full AWS shift. I was not told during my new hire process or new hire
14  orientation about short shifts and my entitlement to overtime if I am "flexed" off
15  after 8 hours of work, but before completing my AWS shift. I was not given any
16  written policies on short shifts or "short-shift" penalties. Corona did not make
17  me fully aware of my entitlement to "short-shift" penalties. Therefore, I do not
18  believe I was paid overtime for all the hours I was "flexed" off after 8 hours of
19  work, but before completing my 12-hour shift.
20
21                          "Meal Waiver" Policy
22     8.      I had to participate in a new hire process prior to working at
23  Corona. During the new hire process, I was presented with a packet of
24  paperwork to sign, including a Meal Period Waiver. I was told that I had to fill
25  out and sign all of the documents as a condition of employment. If I did not fill
26  out and sign all of the documents, including the Meal Period Waiver, my hiring
27  process would be labeled "incomplete" and I could not work. I do not believe I
28  signed the Meal Period Waiver voluntarily. I had to sign it if I wanted to work

DECLARATION OF FILIPINAS FERNANDEZ ISO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

1    for Corona.

2        9.    In addition, Corona characterized second meal breaks in a negative

3    and false light to deter me from wanting to take a second meal break. I was told

4    that for me to be entitled to a second meal I would have to work 13 hours. I did

5    not know that if I had not signed the Meal Period Waiver, I would be actually

6    working only 12 hours with two 30-minute meal breaks. To put further pressure

7    on me, I was told that all the nurses have signed the Meal Period Waiver and

8    that I should sign it as well. I did not take a second meal during my

9    employment with Corona.

             ## Lack of "Break" or "Relief" Nurses

10
11       10.    I did not take rest breaks, or when I tried to take one it was

12   interrupted, because I had to be continuously ready and able to assist and attend

13   to my patients during my entire shift. My other colleagues in my unit are also

14   assigned patients, and if they are too busy taking care of their patients or

15   handling an emergency, I could not take a rest break or had to cut my break

16   short to attend to my patients or emergencies. Corona does not have enough

17   "Break" or "Relief" nurses to relieve me so I can take a 10-minute,

18   uninterrupted break. This problem is compounded when Corona "flexes" off

19   nurses in my unit due to low patient census. Corona would schedule "Break" or

20   "Relief" nurses only if other nurses volunteered to be a "Break" or "Relief"

21   nurse. Corona does not hire specific "Break" or "Relief" nurses to ensure

22   nurses in each unit are provided with 10-minute, uninterrupted rest breaks.

23   Therefore, I do not believe I was authorized or permitted to take 10-minute,

24   uninterrupted rest breaks because I was never fully relieved of all of my duties.

25   I had to constantly be on my toes, ready to respond to patient calls or

26   emergencies.

27
28

             ## Inaccurate Employer Name

                              Page 4
             DECLARATION OF FILIPINAS FERNANDEZ ISO PLAINTIFFS' MOTION FOR
                              CLASS CERTIFICATION

1    11.    I did not know I was employed by UHS-Corona, Inc. My paystubs
2  indicate that my employer is Corona Regional Medical Center.
3        I declare under the penalty of perjury under the laws of the United States of
4  America that the foregoing is true and correct. Executed on February 13th, 2015, in
5  Riverside, California.
6
7                                    FILIPINAS FERNANDEZ
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28