**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARLYN SALI and DEBORAH SPRIGGS, on behalf of themselves, all others similarly situated and the general public, <br> *Plaintiffs-Appellants*, <br><br> v. <br><br> CORONA REGIONAL MEDICAL CENTER; UHS OF DELAWARE INC., <br> *Defendants-Appellees.* | No. 15-56460 <br><br> D.C. No. <br> 5:14-cv-00985- <br> PSG-JPR <br><br><br> ORDER AND <br> AMENDED <br> OPINION |

Appeal from the United States District Court
for the Central District of California
Phillip S. Gutierrez, District Judge, Presiding

Argued and Submitted February 16, 2018
Pasadena, California

Filed May 3, 2018
Amended November 27, 2018

Before: M. Margaret McKeown and Kim McLane
Wardlaw, Circuit Judges, and Salvador Mendoza, Jr.,[*]
District Judge.

Order;
Opinion by Judge Mendoza

## SUMMARY[**]

### Class Certification

The panel reversed the district court's denial of class
certification in a putative class action alleging employment
claims against Corona Medical Center and UHS of
Delaware, Inc; and remanded.

Plaintiffs Marlyn Sali and Deborah Spriggs moved for
certification of seven classes of Registered Nurses, alleging
they were underpaid by Corona as a result of certain
employment policies and practices.  The district court denied
certification under Fed. R. Civ. P. 23 of each of the proposed
classes on multiple grounds.

The panel held that the district court's determination,
that plaintiffs failed to demonstrate their injuries were
typical of the proposed classes, was premised on an error of

---

[*] The Honorable Salvador Mendoza, Jr., District Judge for the U.S.
District Court for the Eastern District of Washington, sitting by
designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

law.  The panel held that the district court erred by striking a declaration at this preliminary stage, and the district court may not decline to consider evidence solely on the basis that the evidence is inadmissible at trial.

The panel agreed with the district court's conclusion that plaintiff Spriggs was not an adequate class representative because she was not a member of any class she sought to represent.  The panel held, however, that plaintiff Sali was an adequate class representative, and Spriggs's inadequacy was not a valid basis to deny class certification.

The panel held that the district court abused its discretion by concluding that attorneys from the law firm Bisnar Chase could not serve as adequate class counsel.  The panel also held that at this early stage of the litigation, the district court's decision on this issue was premature, but the district court was not precluded from considering counsel's prior sanctions as evidence of inadequacy if they continue to neglect their duties.

The panel held that the district court erred by denying certification of the proposed rounding-time and wage-statement classes on the basis that they failed Rule 23(b)(3)'s predominance requirement.  First, the panel held that the district court's determination that individual questions predominated in the claims of the proposed rounding-time class was based on an error of law.  Under California law, the district court erred by interpreting time "actually worked" to mean only time spent engaged in work-related activities because time is compensable when an employee is working *or* under the control of his or her employer.  Second, the panel held that the district court's determination - that individual questions predominate in the claims of the proposed wage-statement class - was premised on legal

error.   The district court erred by concluding that damages for members of the wage statement class would require an individualized determination because California Labor Code specifies that a violation of § 226 is a per se injury.

## COUNSEL

Jerusalem F. Beligan (argued) and Brian D. Chase, Bisnar Chase LLP, Newport Beach, California, for Plaintiffs-Appellants.

Christina H. Hayes (argued), Khatereh Sage Fahimi, and Stacey E. James, Littler Mendelson P.C., San Diego, California, for Defendants-Appellees.

## ORDER

The opinion filed on May 3, 2018, and appearing at 889 F.3d 623 (9th Cir. 2018), is hereby amended.   An amended opinion is filed concurrently with this order.

## OPINION

MENDOZA, District Judge

Marlyn Sali and Deborah Spriggs ("Sali and Spriggs") appeal the district court's denial of class certification in this putative class action alleging employment claims against Corona Regional Medical Center and UHS of Delaware, Inc.

(collectively "Corona").[1] Sali and Spriggs moved for certification of seven classes of Registered Nurses ("RNs") they allege were underpaid by Corona as a result of certain employment policies and practices. The district court denied certification on the basis that (1) Federal Rule of Civil Procedure 23(a)'s typicality requirement is not satisfied for any of the proposed classes because Sali and Spriggs failed to submit admissible evidence of their injuries; (2) Plaintiff Spriggs and proposed class counsel have not demonstrated they will adequately represent the proposed classes; and (3) several proposed classes fail to satisfy Rule 23(b)(3)'s predominance requirement. Because the district court abused its discretion by relying on each of these reasons to deny class certification, we reverse.

## BACKGROUND

Corona operates a hospital in Southern California that employs hourly-wage RNs. Sali and Spriggs are RNs formerly employed by Corona. They assert that a number of Corona's employment policies and practices with respect to RNs violate California law and have resulted in underpayment of wages. They filed this putative class action in California State Court on behalf of "all RNs employed by Defendants in California at any time during the Proposed Class Period who (a) were not paid all wages at their regular rate of pay; (b) not paid time and a-half and/or double time for all overtime hours worked; and (c) denied uninterrupted,

---

[1] We refer to Corona Regional Medical Center and UHS of Delaware, Inc. collectively as the employer or former employer of the named plaintiffs and proposed class members. This does not reflect any judgment about the nature of the relationship between Corona Regional Medical Center and UHS of Delaware, Inc. or their relative share of potential liability, which have not been addressed by the district court and are not at issue on this appeal.

6          SALI V. CORONA REGIONAL MED. CTR.

'off-duty' meal-and-rest periods." They allege Corona violated California law by (1) failing to pay all regular hourly wages; (2) failing to pay time-and-a-half for all overtime; (3) failing to pay double time for all hours worked in excess of twelve hours in a day; (4) not providing compliant meal and rest breaks; (5) failing to timely pay all wages due to separated former employees within seventy-two hours of separation; and (6) failing to provide accurate itemized wage statements. Corona removed the case to the United States District Court for the Central District of California.

Sali and Spriggs moved for certification of the following seven classes:

1.  Rounding Time Class:

All current and former nurses who work or worked for Defendants during the Proposed Class Period who were not paid all wages due them, including straight time, overtime, double time, meal premiums, and rest premiums due to Defendants' rounding time policy.

2.  Short Shift Class:

All current and former nurses of Defendants who work or worked pursuant to an Alternative Workweek Schedule ("AWS") during the Proposed Class Period who were "flexed" between the 8th and 12th hour of work due to low patient census and not paid daily overtime.

SALI V. CORONA REGIONAL MED. CTR.          7

3.  Meal Period Class:

All current and former nurses of Defendants who work or worked pursuant to an AWS during the Proposed Class Period who signed an invalid meal period waiver, and (1) not provided a second meal break after 10 hours of work; (2) not provided meal periods before 5 and 10 hours of work; and/or, (3) not provided a second meal period after 12 hours of work.

4.  Rest Break Class:

All current and former nurses who work or worked for Defendants during the Proposed Class Period who were not relieved of all duty and therefore not authorized and permitted to take 10-minute, uninterrupted rest breaks for every four hours worked.

5.  Regular Rate Class:

All current and former nurses who work or worked for Defendants during the Proposed Class Period who were not paid at the correct regular rate for overtime, double time, meal premiums, and rest premiums.

6.  Wage Statement Class:

All current and former nurses who work or worked for Defendants during the Proposed Class Period who were not provided pay stubs that complied with Labor Code § 226.

7.   Waiting Time Class:

> All former nurses who worked for Defendants from August 23, 2010 who were not paid all wages due at the time of separation from their employment with Defendants.

The district court denied certification of each of the proposed classes on multiple grounds. First, the district court concluded that Sali and Spriggs's proposed rounding-time, short-shift, rest-break, and wage-statement classes failed to satisfy Rule 23(b)(3)'s predominance requirement. Second, the district court held that Rule 23(a)'s typicality requirement was not satisfied for any of the proposed classes because Sali and Spriggs failed to submit admissible evidence of their injuries. Third, the district court concluded that Spriggs was not an adequate class representative because she is not a member of the proposed class she is attempting to represent. Finally, the district court held the attorneys from the law firm Bisnar Chase had not demonstrated they will adequately serve as class counsel.

Sali and Spriggs appealed the district court's denial of class certification. Upon Sali and Spriggs's motion, we stayed proceedings in this appeal pending resolution in the California State Courts of *Gerard v. Orange Coast Memorial Medical Center*, a case involving issues related to certain of the proposed classes. *See* 381 P.3d 219 (Cal. 2016); 215 Cal. Rptr. 3d 778 (Ct. App. 2017). In light of the *Gerard* decision, Sali and Spriggs chose to appeal only the district court's denial of class certification with respect to the proposed rounding-time, regular-rate, wage-statement, and waiting-time classes.

## STANDARD OF REVIEW

We review a district court's class certification decision for abuse of discretion. *Parra v. Bashas', Inc.*, 536 F.3d 975, 977 (9th Cir. 2008). "[A]n error of law is a per se abuse of discretion." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013) (citing *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010)). Accordingly, we first review a class certification determination for legal error under a de novo standard, and "if no legal error occurred, we will proceed to review the . . . decision for abuse of discretion." *Yokoyama*, 594 F.3d at 1091. A district court applying the correct legal standard abuses its discretion only if "it (1) relies on an improper factor, (2) omits a substantial factor, or (3) commits a clear error of judgment in weighing the correct mix of factors." *Abdullah*, 731 F.3d at 956. Additionally, "we review the district court's findings of fact under the clearly erroneous standard, meaning we will reverse them only if they are (1) illogical, (2) implausible, or (3) without 'support in inferences that may be drawn from the record.'" *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)).

## DISCUSSION

A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. *In re Hyundai and Kia Fuel Econ. Litig.*, 881 F.3d 679, 690 (9th Cir. 2018) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2016). Additionally, a plaintiff seeking certification under Rule 23(b)(3) must demonstrate that "questions of law or

fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Hyundai*, 881 F.3d at 690–91 (quoting Fed. R. Civ. P. 23(b)(3)).

The issues on appeal here concern only Rule 23's typicality, adequacy, and predominance requirements: Sali and Spriggs appeal the district court's determinations that (1) Sali and Spriggs failed to demonstrate their injuries were typical of the proposed classes; (2) plaintiff Spriggs is not an adequate class representative; (3) attorneys from the firm Bisnar Chase have not demonstrated they will adequately serve as class counsel; and (4) the proposed rounding-time, wage-statement, and waiting-time classes fail Rule 23(b)(3)'s predominance requirement. We conclude that the district court abused its discretion in each of these determinations, excluding its finding that Spriggs was not an adequate class representative. And because plaintiff Sali remains as a representative plaintiff, Spriggs's inadequacy alone is not a basis to deny class certification. Accordingly, the district court abused its discretion by denying certification of the proposed rounding-time, regular-rate, waiting-time, and wage-statement classes.

## A. The district court's typicality determination was premised on an error of law.

The district court concluded that Sali and Spriggs "have not carried their burden of demonstrating that the injuries allegedly inflicted by Defendants on Plaintiffs are similar to the injuries of the putative class members because [they] do not offer any admissible evidence of [their] injuries in their motion for class certification." The district court further noted that the "motion does not contain sworn testimony from either of the named Plaintiffs." The district court

reached this decision after striking the declaration of Javier Ruiz—upon which Sali and Spriggs relied to demonstrate their individual injuries—on the basis that the declaration contained inadmissible evidence. This was error. At this preliminary stage, a district court may not decline to consider evidence solely on the basis that the evidence is inadmissible at trial.

### 1. The district court's decision to strike the Ruiz declaration

In support of their motion for class certification, Sali and Spriggs submitted a declaration by Javier Ruiz to demonstrate their injuries. Ruiz, a paralegal at Bisnar Chase, reviewed time and payroll records for the named plaintiffs to determine whether they were fully compensated under Corona's rounding-time pay practice, as well as to address several other questions that are no longer at issue on this appeal. The rounding-time practice itself is not disputed. Corona paid RNs an hourly wage based on the time they punched in and out, rounded to the nearest quarter hour. For example, if an RN clocked in at 6:53 a.m. or at 7:07 a.m., his or her time was rounded to 7:00 a.m. Sali and Spriggs allege that this policy, over time, resulted in failure to pay RNs for all of their time worked. To determine the policy's effect on Sali and Spriggs individually, Ruiz used Excel spreadsheets to compare Sali and Spriggs's rounded times with their actual clock-in and clock-out times using a random sampling of timesheets. Ruiz's analysis demonstrated that on average over hundreds of shifts, Corona's rounded time policy undercounted Sali's clock-in and clock-out times by eight minutes per shift and Spriggs's times by six minutes per shift.

Corona objected to the Ruiz declaration, arguing that (1) the declaration constituted improper lay opinion

testimony and must be excluded under Federal Rules of Evidence 701 and 702; (2) Ruiz's opinions were unreliable; (3) the declaration lacked foundation and Ruiz lacked personal knowledge of the information analyzed; and (4) the data underlying Ruiz's analysis was unauthenticated hearsay. In reply, Sali and Spriggs submitted declarations attesting to the authenticity and accuracy of the data and conclusions contained in Ruiz's declaration and the attached exhibits.

The district court agreed with Corona's arguments that the Ruiz declaration was inadmissible and struck the declaration on that basis. First, the district court concluded that "Ruiz cannot authenticate the manipulated Excel Spreadsheets and other data that he relied upon to conduct his analysis because he does not have personal knowledge to attest to the fact that the data accurately represents Plaintiffs' employment records." Second, the district court concluded that Ruiz's declaration offered improper opinion testimony. Third, the district court found that Ruiz's "manipulation and analysis of raw data to reach cumulative conclusions is the technical or specialized work of an expert witness," and that Ruiz lacked the qualifications to conduct this analysis. The district court further concluded that the declarations submitted by Sali and Spriggs were new evidence improperly submitted in reply, and the court declined to consider the declarations.

## 2. The district court erred by striking the Ruiz declaration on the basis of inadmissibility.

A plaintiff seeking class certification bears the burden of affirmatively demonstrating "through evidentiary proof that the class meets the prerequisites of Rule 23(a)." *In re Hyundai*, 881 F.3d at 690 (citing *Comcast Corp.*, 569 U.S. at 33). In other words, the plaintiff "must be prepared to

prove that there are *in fact* sufficiently numerous parties,
common questions of law or fact, etc." *Wal-Mart Stores, Inc.
v. Dukes*, 564 U.S. 338, 350 (2011). Accordingly, "[b]efore
certifying a class, the trial court must conduct a rigorous
analysis to determine whether the party seeking certification
has met the prerequisites of Rule 23." *In re Hyundai*,
881 F.3d at 690 (quoting *Zinser v. Accufix Research Inst.,
Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)).

For practical reasons, we have never equated a district
court's "rigorous analysis" at the class certification stage
with conducting a mini-trial. District courts "must determine
by order whether to certify the action as a class action" at
"an early practicable time after a person sues or is sued as a
class representative." Fed. R. Civ. P. 23(c)(1)(A). The
district court's class certification order, while important, is
also preliminary: "An order that grants or denies class
certification may be altered or amended before final
judgment." Fed. R. Civ. P. 23(c)(1)(C); *see also Coopers &
Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978) ("[A]
district court's order denying or granting class status is
inherently tentative."); *In re Zurn Pex Plumbing Prod. Liab.
Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) ("[A] court's
inquiry on a motion for class certification is 'tentative,'
'preliminary,' and 'limited.'" (quoting *Coopers & Lybrand*,
437 U.S. at 469 n.11)).

Applying the formal strictures of trial to such an early
stage of litigation makes little common sense. Because a
class certification decision "is far from a conclusive
judgment on the merits of the case, it is 'of necessity . . . not
accompanied by the traditional rules and procedure
applicable to civil trials.'" *Zurn Pex*, 644 F.3d at 613
(quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178
(1974)). Notably, the evidence needed to prove a class's case

often lies in a defendant's possession and may be obtained
only through discovery. Limiting class-certification-stage
proof to admissible evidence risks terminating actions before
a putative class may gather crucial admissible evidence. And
transforming a preliminary stage into an evidentiary
shooting match inhibits an early determination of the best
manner to conduct the action.

It follows that we have found an abuse of discretion
where a "district court limited its analysis of whether" class
plaintiffs satisfied a Rule 23 requirement "to a determination
of whether Plaintiffs' evidence on that point was
admissible." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,
982 (9th Cir. 2011). Although we have not squarely
addressed the nature of the "evidentiary proof" a plaintiff
must submit in support of class certification, we now hold
that such proof need not be admissible evidence.

Inadmissibility alone is not a proper basis to reject
evidence submitted in support of class certification.[2]

---

[2] Numerous district courts in this Circuit have long concluded that
it is appropriate to consider evidence at the class certification stage that
may ultimately be inadmissible. *See, e.g., Garter v. Cty. of San Diego*,
2017 WL 5177028, at *2 (S.D. Cal. Nov. 7, 2017) ("District [c]ourts may
consider all material evidence submitted by the parties and need not
address the ultimate admissibility of evidence proffered by the parties.");
*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 965 n.147 (C.D. Cal.
2015) ("[T]he court can consider inadmissible evidence in deciding
whether it is appropriate to certify a class."); *Arredondo v. Delano Farms
Co.*, 301 F.R.D. 493, 505 (E.D. Cal. 2014); *Keilholtz v. Lennox Hearth
Prods., Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010) ("On a motion
for class certification, the Court may consider evidence that may not be
admissible at trial."); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580,
599 (C.D. Cal. 2008) ("[A] motion for class certification need not be
supported by admissible evidence."); *Bell v. Addus Healthcare, Inc.*,
2007 WL 3012507, at *2 (W.D. Wash. Oct. 12, 2007) ("[Rule] 23 does

"Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies" Rule 23. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Therefore, in evaluating a motion for class certification, a district court need only consider "material sufficient to form a reasonable judgment on each [Rule 23(a)] requirement." *Id.* The court's consideration should not be limited to only admissible evidence.

Other circuits have reached varying conclusions on the extent to which admissible evidence is required at the class certification stage. Only the Fifth Circuit has directly held that admissible evidence is required to support class certification. *See Unger v. Amedisys Inc.*, 401 F.3d 316, 319 (5th Cir. 2005) (holding that the court's "findings must be made based on adequate admissible evidence to justify class certification").

The Seventh Circuit, in holding that a district court erred by giving an expert report "the weight . . . it is due" rather than ruling on the report's admissibility under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), has suggested that expert evidence submitted in support of class certification must be admissible. *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 812 (7th Cir. 2012) (quoting *In re Evanston Nw. Healthcare Corp. Antitrust Litig.*, 268 F.R.D. 56, 57 (N.D. Ill. 2010)). The Third Circuit has similarly held that a plaintiff may rely on challenged expert testimony to satisfy the requirements of Rule 23 only

---

not require admissible evidence in support of a motion for class certification . . . .").

if that expert testimony satisfies the evidentiary standard set out in *Daubert*. *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015).

We agree with the Eighth Circuit, however, which has held that a district court is not limited to considering only admissible evidence in evaluating whether Rule 23's requirements are met. *Zurn Pex*, 644 F.3d at 612–13. Contrary to other courts' conclusory presumptions that Rule 23 proof must be admissible, the Eighth Circuit probed the differences between Rule 23, summary judgment and trial that warrant greater evidentiary freedom at the class certification stage:

> Because summary judgment ends litigation without a trial, the court must review the evidence in light of what would be admissible before either the court or jury.
>
> In contrast, a court's inquiry on a motion for class certification is "tentative," "preliminary," and "limited." The court must determine only if questions of law or fact common to class members predominate over any questions affecting only individual members [and if] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. As class certification decisions are generally made before the close of merits discovery, the court's analysis is necessarily prospective and subject to change, and there is bound to be some evidentiary uncertainty.

*Id.* at 613 (internal citations and quotation marks omitted).
We find the Eighth Circuit's analysis persuasive.

The Supreme Court's guidance in the analogous field of
standing is also instructive. Like standing, Rule 23 presents
more than a "mere pleading standard." *Wal-Mart*, 564 U.S.
at 350. Because the elements of standing "are not mere
pleading requirements but rather an indispensable part of the
plaintiff's case, each element must be supported in the same
way as any other matter on which the plaintiff bears the
burden of proof, *i.e.*, with the manner and degree of evidence
required *at the successive stages of the litigation*." *Lujan v.
Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (emphasis
added). Hence, the proof required to establish standing
varies at the complaint, summary judgment and trial phases.
*Id.* Similarly, the "manner and degree of evidence required"
at the preliminary class certification stage is not the same as
"at the successive stages of the litigation"—*i.e.*, at trial.

The present case aptly illustrates why we license greater
evidentiary freedom at the class certification stage: By
relying on formalistic evidentiary objections, the district
court unnecessarily excluded proof that tended to support
class certification. Corona did not dispute the authenticity of
the payroll data underlying Ruiz's analysis, nor did it
directly dispute the accuracy of his calculations. Instead,
Corona argued that Ruiz's declaration and spreadsheet were
inadmissible because Ruiz extracted data without explaining
his methods, and the district court agreed. But by relying on
admissibility alone as a basis to strike the Ruiz declaration,
the district court rejected evidence that likely could have
been presented in an admissible form at trial. In fact, when
Sali and Spriggs submitted their own sworn declarations to
authenticate the payroll data and vouch for its accuracy, the
district court again leaned on evidentiary formalism in

striking those declarations as "new evidence" submitted in reply. That narrow approach tells us nothing about the satisfaction of the typicality requirement—"whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The district court should have considered the declarations of Ruiz, Sali, and Spriggs in determining whether the typicality prerequisite was satisfied.

When conducting its "rigorous analysis" into whether the Rule 23(a) requirements are met, the district court need not dispense with the standards of admissibility entirely. The court may consider whether the plaintiff's proof is, or will likely lead to, admissible evidence. Indeed, in evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth in *Daubert*. *Ellis*, 657 F.3d at 982. But admissibility must not be dispositive. Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage. This approach accords with our prior guidance that a district court should analyze the "persuasiveness of the evidence presented" at the Rule 23 stage. *Id*. The district court abused its discretion here by declining to consider the Ruiz declaration solely on the basis of inadmissibility. Because the district court applied the wrong standard for evaluating the plaintiffs' evidence, we do not reach whether the plaintiffs have in fact demonstrated typicality and leave it to the district court to resolve in the first instance.

**B.  Spriggs is not an adequate class representative, but Sali remains as an adequate representative plaintiff.**

The district court concluded that plaintiff Spriggs is not an adequate class representative because she is not a member of any class she seeks to represent. The district court reasoned that Spriggs cannot represent a class including "all current and former [RNs] of Defendants . . . *who were classified by Defendants as either full-time or full-time equivalent employees*," given that she was not classified as a full-time employee. We agree. A named plaintiff must be a member of the class she seeks to represent and Spriggs does not qualify. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). Nevertheless, because Plaintiff Sali remains as an adequate class representative, Spriggs's inadequacy is not a basis to deny class certification. *See* Fed. R. Civ. P. 23(a) ("*One or more* members of a class may sue or be sued as representative parties on behalf of all members . . . ." (emphasis added)).

**C.  The district court abused its discretion by concluding that attorneys from Bisnar Chase cannot serve as adequate class counsel.**

Determining whether representation is adequate requires the court to consider two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 111, 120 (9th Cir. 1998)). Adequacy of representation also depends on the qualifications of counsel. *In re N. Dist. Cal., Dalkon Shield IUD Prods Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982). "[T]he named representative's attorney [must] be qualified, experienced, and generally capable to

conduct the litigation . . . ." *Jordan v. L.A. Cty.*, 669 F.2d 1311, 1323 (9th Cir. 1982), *vacated on other grounds by Cty. of L.A. v. Jordan*, 459 U.S. 810 (1982). It is undisputed that there is no conflict here, so the only questions before the district court were whether proposed class counsel were qualified and would prosecute the action vigorously.

The district court concluded that proposed class counsel failed to demonstrate they would adequately serve as class counsel. The district court noted that "attorneys from Bisnar Chase failed to attend any of the depositions of Plaintiffs' putative class witnesses' (four scheduled depositions), failed to produce Plaintiffs' expert, Falkenhagen, for a deposition despite being ordered to do so by a Magistrate Judge,[3] and, as detailed in the typicality analysis, failed to submit any sworn testimony from Plaintiffs in support of the class certification motion." The court also noted that Bisnar Chase submitted nearly identical declarations from twenty-two putative class members attesting to their personal experiences with Corona's employment practices. The district court found that "Plaintiffs' counsel's 'lax approach' to personalizing declarations, ensuring that declarants knew and understood what they were signing, and verifying the accuracy of the statements is 'unacceptable' conduct."

The district court did not indicate what legal standard it relied on in evaluating the adequacy of class counsel. Moreover, the district court discussed only the apparent errors by counsel with no mention of the evidence in the record demonstrating class counsel's substantial and

---

[3] The district court sanctioned Bisnar Chase under Federal Rule of Civil Procedure 37 for failing to produce Falkenhagen at deposition after being ordered to do so. We affirmed the sanctions order. *See Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1225 (9th Cir. 2018).

competent work on this case. Bisnar Chase attorneys have incurred thousands of dollars in costs and invested significant time in this matter, including preparing dozens of interrogatories and requests for production, taking numerous depositions, retaining experts, defending the named plaintiffs' depositions and the deposition of the plaintiffs' expert economist, reviewing and analyzing thousands of documents, interviewing hundreds of class members, obtaining signed declarations, and preparing and filing a motion for class certification. Additionally, attorney Jerusalem Beligan has extensive experience litigating class-action cases in state and federal court.

At this early stage of the litigation, the district court's decision that attorneys from Bisnar Chase could not adequately serve as class counsel was premature and an abuse of discretion. However, the district court is not precluded from considering counsel's prior sanctions as evidence of inadequacy if Bisnar Chase attorneys continue to neglect their duties.

**D. The district court erred by denying certification of the proposed rounding-time and wage-statement classes on the basis that they failed Rule 23(b)(3)'s predominance requirement.**

Rule 23(b)(3)'s predominance inquiry is "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). When evaluating predominance, "a court has a 'duty to take a close look at whether common questions predominate over individual ones,' and ensure that individual questions do not 'overwhelm questions common to the class.'" *In re Hyundai*, 881 F.3d at 691 (quoting *Comcast Corp.*, 569 U.S. at 34). "The main concern of the predominance inquiry under Rule 23(b)(3) is 'the balance between individual and common

issues.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538,
545–46 (9th Cir. 2013) (quoting *In re Wells Fargo Home
Mortg. Overtime Pay Litig.*, 571 F.3d 935, 959 (9th Cir.
2009)).

Because the district court concluded that the
predominance requirement was met by the proposed regular-
rate class, and because the parties agree that the waiting-time
class is entirely derivative of other proposed classes, we
review the district court's predominance analysis with
respect to the rounding-time and wage-statement classes
only.

### 1. The district court's determination that individual questions predominated in the claims of the proposed rounding-time class was based on an error of law.

For the purpose of class certification, the parties do not
dispute how Corona's rounding-time pay system worked.
Corona used an electronic timekeeping system that tracked
when employees clocked in and clocked out and rounded the
time to the nearest quarter hour. Corona paid RNs an hourly
wage calculated based on that rounded time. For example, if
an RN clocked in at 6:53 a.m. or 7:07 a.m., his or her time
was rounded to 7:00 a.m. Kronos recorded both actual clock-
in and rounded times.

Sali and Spriggs allege that Corona's rounding-time
policy resulted in systematic underpayment of RNs. They
seek certification of a rounding-time class consisting of:

> All current and former nurses who work or
> worked for Defendants during the Proposed
> Class Period who were not paid all wages due
> them, including straight time, overtime,

double time, meal premiums, and rest premiums due to Defendants' rounding time policy.

The district court concluded that individualized issues predominate in determining Corona's liability with respect to the proposed rounding-time class because "whether [Corona's] rounding policy resulted in the underpayment of the proposed class members, and was thus against California law, depends on individual findings as to whether RNs were actually working when punched in." In support of this conclusion, the district court cited Corona's explanation that "time records are not a reliable indicator of the time RNs actually spent working because RNs frequently clock-in for work and then perform non-compensable activities, such as waiting in the break room, getting coffee, or chatting with their co-workers, until the start of their scheduled shift." Thus, the court reasoned, "determining whether [Corona] underpaid members of the Rounding Time Class would entail factualized inquiries into whether particular RNs were actually working during the grace period, and whether the rounding of time during this period resulted in the underpayment of hours actually worked—the only conduct that is prohibited under California law."

Sali and Spriggs first argue that whether RNs were "actually working" is a merits question that should not have been considered at the class certification stage. In the alternative, Sali and Spriggs argue that the district court's analysis was based on an error of California law because compensable time is not measured by time employees spend "actually working." Sali and Spriggs's argument that the district court improperly reached a merits question fails because the district court plainly did not attempt to resolve whether RNs were actually working on the merits. Instead,

the court merely concluded that, assuming clock-in times were on average rounded up to the shift-start time, individualized questions would predominate in determining whether RNs were "actually working" during any period between their clock-in time and the start of their shift. But the district court clearly misapplied California law in reaching that conclusion.

A rounding-time policy is permissible under California law if it "is fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have *actually worked*.'" *See's Candy Shops, Inc. v. Super. Ct.*, 148 Cal. Rptr. 3d 690, 704–05 (Ct. App. 2012) (quoting 29 C.F.R. § 785.48) (emphasis added). The district court therefore did not err by concluding that whether RNs were "actually working" during the time between their clock-in and shift-start time is a relevant inquiry in this case. But by suggesting that "non-compensable activities, such as waiting in the break room, getting coffee, or chatting with their co-workers" are categorically not time "actually worked," the district court incorrectly interpreted "actually worked" to mean only time spent engaged in work-related activities.

Under California law, compensable time is "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."[4]

---

[4] Both parties agreed in the district court and in this court that this standard for compensable time applies to Sali and Spriggs under California law. Corona's new argument in its petition for rehearing that a different standard applies is waived. *See Boardman v. Estelle*, 957 F.2d 1523, 1535 (9th Cir. 1992), *as supplemented on denial of reh'g* (Mar. 11, 1992).

*Morillion v. Royal Packaging Co.*, 995 P.2d 139, 141 (Cal. 2000) (quoting Cal. Code Regs., tit. 8, § 11140, subd. 2(G)). Both parties correctly interpret the term "actually worked" as used in *See's Candy* as referencing this compensable-time standard. The district court also nominally acknowledged "employer control" as part of the standard, but in doing so the court materially misstated the law. The district court stated that "[t]he punch times are only indicative of time 'actually worked' if RNs are working *and* under the control of their employer whenever they are punched into work." (emphasis added). In fact, under California law, time is compensable when an employee is working *or* under the control of his or her employer. *See Morillion*, 995 P.2d at 141.

California's compensable-time standard encompasses two categories of time. First, time is compensable if an employee is "under the control" of his or her employer, whether or not he or she is engaging in work activities, such as by being required to remain on the employer's premises or being restricted from engaging in certain personal activities. *See id.* at 145–47 (holding that compulsory travel time on bus from departure point to work site is compensable); *Aguilar v. Assn. of Retarded Citizens*, 285 Cal. Rptr. 515, 519–21 (Ct. App. 1991) (holding that time employees are required to be on premises is included in hours worked). Second, time is compensable if an employee "is suffered or permitted to work, whether or not required to do so." *Morillion*, 995 P.2d at 141 (citing Cal. Code Regs., tit. 8, § 11140, subd. 2(G)). This may include "time an employee is working but *is not* subject to an employer's control," such as "unauthorized overtime, which the employer has not requested or required." *Id.* at 145 (emphasis added).

The district court did not abuse its discretion to the extent it concluded that individualized questions predominate on whether the RNs fall within the second category, which amounts to a question of whether they engaged in work activities even if they were not required to do so. But the district court erred by assuming that was the only question to be decided. Under California law, the RNs were also actually working if they were subject to Corona's control even if they were not engaging in work activities—for example, if they were required to remain on the hospital premises during that time. *See Aguilar*, 234 Cal. Rptr. at 520. The district court failed to consider whether the RNs could establish on a class-wide basis that they were subject to Corona's control during the grace period even if the RNs were not always engaged in work-related activities during that time.

This "employer control" question necessarily requires an employer-focused inquiry into whether Corona had a policy or practice that restricted RNs in a manner that amounted to employer control during the period between their clock-in and clock-out times and their rounded shift-start and shift-end times. The types of activities RNs generally engaged in during this period are certainly relevant, but the activities of any particular RN are not dispositive of whether he or she was under Corona's control. Determination of this question does not depend on individualized factual questions and is capable of class-wide resolution. Accordingly, the district court abused its discretion by denying certification of the rounding-time class on the basis of predominance.

## 2. The district court's determination that individual questions predominate in the claims of the proposed wage-statement class was premised on legal error.

Corona issued wage statements to RNs that listed the employer as Corona Regional Medical Center, rather than Corona's corporate name, UHS-Corona, Inc. Sali and Spriggs allege this violated California law and seek certification of a class consisting of "[a]ll current and former nurses who work or worked for Defendants during the Proposed Class Period who were not provided pay stubs that complied with Labor Code § 226." The district court concluded that this proposed wage-statement class failed Rule 23(b)(3)'s predominance requirement because "demonstrating that each class member was damaged by the claimed inaccuracy in the wage statement is a critical individualized issue in determining liability that is not amenable to common systems of proof." In doing so, the district court noted that it agreed with Corona's argument that "common issues do not predominate 'because, in order to determine liability, each employee must prove for each paystub received during the relevant time period that he/she was damaged by the inadequate pay stub.'"

The California Labor Code requires that a wage statement include, among other things, "the name and address of the legal entity that is the employer." Cal. Lab. Code § 226(a)(8). The Code specifies the amount of damages for violation of this requirement.[5] The Code further

---

[5] California Labor Code § 226(e)(1) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to

provides that "[a]n employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required . . . and the employee cannot promptly determine from the wage statement alone . . . the name and address of the employer." *Id.* § 226(e)(2)(B)(iii).

The district court erred by concluding that damages for members of the wage statement class would require an individualized determination. Because the Code specifies that a violation of § 226 is a per se injury, there is no individualized issue of damages. If Corona knowingly and intentionally failed to provide the name of the legal entity that was the class members' employer, each class member was injured in precisely the same manner by each paystub in which Corona failed to provide that information. *See id.* Moreover, even if there is variation in the amount of each class members' damages, this is an insufficient basis by itself to deny certification. *See Yokoyama*, 594 F.3d at 1094 (the "amount of damages is invariably an individual question and does not defeat class action treatment" (quoting *Blackie*, 524 F.2d at 905)).

The district court abused its discretion by denying certification on the basis that individual questions

---

comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

SALI V. CORONA REGIONAL MED. CTR.          29

predominate in the claims of the proposed wage-statement
class.

## CONCLUSION

For the reasons discussed, the district court's denial of
class certification is **REVERSED** and **REMANDED** for
further proceedings consistent with this opinion.